**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ST. PAUL MERCURY INSURANCE )
  COMPANY )
385 Washington Street )
St. Paul, Minnesota  55102 )
     )
    Plaintiff )
    and Counter-Defendant, )    CIVIL ACTION NO. 02-3511
     )
    v. )
     )
PHILADELPHIA HOUSING )
AUTHORITY )
2012 Chestnut Street )    **JURY TRIAL DEMANDED**
Philadelphia, Pennsylvania  19154 )
     )
    Defendant )
    and Counter-Plaintiff. )

**PLAINTIFF ST. PAUL MERCURY INSURANCE COMPANY'S
PRETRIAL MEMORANDUM**

Plaintiff and Counter-Defendant St. Paul Mercury Insurance Company ("St.

Paul"), by its undersigned counsel, submits this Proposed Pretrial Order.

I.    <u>NATURE OF ACTION AND JURISDICTION OF COURT</u>

This is a civil action in which St. Paul seeks to recover from Defendant

Philadelphia Housing Authority ("PHA") sums St. Paul expended as surety on a

construction project concerning a PHA property, namely the Richard Allen Homes

public housing project.  St. Paul seeks to recover on claims for breach of surety

rights, breach of takeover agreement, negligence, breach of contract and third party

beneficiary.

TO1DOCS1#158231v7

Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a), because Plaintiff and Defendant are of diverse citizenship, and because the amount in controversy, exclusive of interest and costs, exceeds $75,000. This Court has personal jurisdiction over Defendant because it has its principal place of business in this district. Venue is proper under 28 U.S.C. § 1391(a)(1).

II.    <u>BRIEF STATEMENT OF FACTS</u>:

St. Paul serves as a surety with respect to construction projects. PHA owns and manages public housing projects in the Philadelphia area, including the Richard Allen Homes public housing project at issue in this case. On November 6, 1997, PHA and San Lucas Construction Company executed Contract Agreement No. 9589 ("the Contract"), which provided for renovation of existing single-family units and the construction or renovation of other buildings in Quadrants B-2 and B-3 of the Richard Allen Homes ("the Project"). PHA agreed to pay San Lucas $11,890,000 for general contracting services on the Project.

PHA appointed its employee, Ulise Rivera, to serve as PHA's construction manager for the Project. San Lucas, as principal, requested that St. Paul issue materialmen's and performance bonds. On or about October 16, 1997, St. Paul issued a performance bond and a materialmen's bond on the Project for the benefit of PHA.

San Lucas submitted multiple payment applications and PHA retained 10% of the progress payments at the outset. However, eventually, at San Lucas' request,

and despite severe and unresolved problems with the quality and timeliness of San Lucas' performance under the Contract, PHA reduced the retainage to 5%. Ultimately PHA paid a total of $9,357,531.08 to San Lucas.

By December 1999, however, PHA was aware of claims made by San Lucas' subcontractors for payment, as well as continuing problems with the quality and timeliness of San Lucas' performance under the Contract.  On December 10, 1999, PHA sent San Lucas a written Notice of Intent To Default.  After meetings took place among the parties, on January 13, 2000, PHA issued a Notice of Default to San Lucas.  PHA terminated the Contract with San Lucas on January 24, 2000.

San Lucas failed to complete its work on the Project, and St. Paul, under the performance bond, was required to complete San Lucas' work for the benefit of PHA.  Therefore, PHA and St. Paul entered into a Takeover Agreement dated April 6, 2000, and St. Paul awarded contracts to complete the Project to NDK Construction, Inc.

In connection with its takeover of the Project, St. Paul discovered that PHA, in addition to improperly reducing the retainage, paid San Lucas for a significantly higher percentage of the contract price than was justified by the work San Lucas actually performed.  In addition, PHA is improperly withholding approximately $200,000 in contract funds that it promised to pay St. Paul in the Takeover Agreement.  St. Paul is now seeking damages arising from PHA's overpayments to

San Lucas (including the improper retainage reduction) as well as the damages arising from the breach of the Takeover Agreement.

III.    DAMAGES OR OTHER RELIEF

St. Paul claims damages as follows:

(a) Contract funds improperly withheld in violation of Takeover Agreement: $200,000.

(b) Improper overpayments to San Lucas:  in accordance with, and in the total amount set forth in, the May 21, 2003 report of Trauner Consulting Services to Venable, Baetjer and Howard, LLP, which is attached hereto and incorporated by reference herein.

(c)  St. Paul also seeks pre- and post- judgment interest to the extent permitted by law.

IV.    WITNESSES

A)    Liability

Christine T. Alexander, Esquire
The St. Paul Companies, Inc.
5801 Centennial Way
Baltimore, Maryland  21209

Ms. Alexander is expected to testify about her responsibilities concerning St. Paul's involvement in the Project from Fall 1999 forward, including communications and agreements with PHA, the bidding process for completion of the contract, dealing with performance bond claims, the completion of the contract, and St. Paul's damages.

Tony Sienzenko
NDK General Contractors, Inc.
1512 E. Wheat Road
Vineland, NJ  08360

Mr. Sienzenko is expected to testify about NDK's completion of the Project after the termination of San Lucas and his observations of the status of the Project at that time.  Mr. Sienzenko also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project at the time San Lucas' contract was terminated.

Iggy Bik
NDK General Contractors, Inc.
1512 E. Wheat Road
Vineland, NJ  08360

Mr. Bik is expected to testify about NDK's completion of the Project after the termination of San Lucas, and his observations of the status of the Project at that time.  Mr. Bik also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project, at the time San Lucas' contract was terminated.

Gabe Caputo
NDK General Contractors, Inc.
1512 E. Wheat Road
Vineland, NJ  08360

Mr. Caputo is expected to testify about NDK's completion of the Project after the termination of San Lucas, and his observations of the status of the project at that time.  Mr. Caputo also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project at the time San Lucas' contract was terminated.

Bob Kahan
Contract Completion, Inc.
33 Rock Hill Road
Bala Cynwyd, PA 19004

Mr. Kahan is expected to testify about information obtained in connection with his employment with Contract Completion, Inc. about the status of the project when San Lucas' contract was terminated.  Mr. Kahan also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project at the time San Lucas' contract was terminated.  Mr. Kahan may testify about his assistance to St. Paul in connection with the bid process for completion of the project.

David Stembel
Wallace Roberts & Todd
260 South Broad Street
Philadelphia, PA  19102-5075

Mr. Stembel is expected to testify about his observations as to the progress and performance of San Lucas on the Project.

> Michael J. Leithead (by deposition)
> 15023 Poquessing Creek Lane
> Philadelphia, PA

Mr. Leithead's testimony concerns his knowledge of, and involvement in, the Project as, successively, PHA Director of Procurement, PHA General Manager of Procurements and Contracts, and PHA Senior Deputy Executive Director.

> Sheila Maxwell (by deposition)
> San Francisco/Oakland metropolitan area, California

Ms. Maxwell's testimony concerns her knowledge of, and involvement in, the Project as a former PHA contract administrator and contracting officer.

> Timothy S. Trzaska
> 14035 Kelvin Avenue
> Philadelphia, Pennsylvania 19116

Mr. Trzaska is expected to testify about his knowledge of, and involvement in, the Project (including his job responsibilities for Project inspection) as former project engineer for PHA.

> Galo A. Gutierrez, President
> San Lucas Construction Company, Inc.
> 534 South 15th Street
> Philadelphia, PA  19146

Mr. Gutierrez is expected to testify about his knowledge of, and involvement in, the Project as President of San Lucas, including San Lucas' cost control report and use of funds received from PHA.

Mr. Anthony B. Creamer III, CPA/ABV
Director
Navigant Consulting, Inc.
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania  19103

Mr. Creamer is expected to give expert opinion testimony, as a certified

public accountant, concerning the payments made by PHA to San Lucas, San Lucas'

expenses on the project as reflected by its business records, and San Lucas' bank

records to the extent they become available, as further set forth in his report dated

May 21, 2003, a copy of which is attached hereto and incorporated by reference.  A

detailed summary of his qualifications is as follows:

Mr. Creamer obtained his B.S. degree from Bloomsburg University and his

M.B.A. degree from Drexel University.  He has been practicing as a certified public

accountant since 1980, is accredited in business valuation by the American Institute

of Certified Accountants, and his areas of specialization include valuation and

appraisal services.  He has served as a guest lecturer at Drexel University and the

Wharton School (Executive Continuing Education Branch).  In June, 1997 he was

elected to a two-year term to the Council of Pennsylvania Institute of Certified

Public Accountants, and he currently serves on the Executive Committee of the

Philadelphia Chapter of that Council.  He is a member of the American and

Pennsylvania Institutes of Certified Public Accounts, and is a past president of the

Philadelphia Chapter of the Institute of Management Accountants (formerly the

National Association of Accountants).  He has provided expert testimony in lawsuits

in federal courts located in Pennsylvania and Delaware, and in the state courts of

Pennsylvania, California, Delaware, and New Jersey.

> Andrew J. Ruck, Esquire
> Duane, Morris & Heckscher
> 1650 Market Street
> One Liberty Plaza
> Philadelphia, Pennsylvania  19103-7396

Mr. Ruck is expected to testify about his involvement in the Project as legal

counsel to St. Paul, including but not limited to communications and agreements

with PHA and subcontractors, and the bidding process for completion of the

contract.

> William A. Manginelli, President
> Trauner Consulting Services, Inc.
> One Penn Center
> 1617 JFK Boulevard, Suite 600
> Philadelphia, PA  19103

Mr. Manginelli is expected to give expert opinion testimony concerning PHA's

overpayment of San Lucas, the bidding process for project completion, and St. Paul's

damages, as further set forth in his report dated May 21, 2003.

Mr. Manginelli obtained his B.S. degree in Marine (Mechanical) Engineering

from the United States Merchant Marine Academy.  He now is President of Trauner

Consulting Services, Inc., where he provides analytical and consulting services in

areas of specialization including construction management and inspection.  He has

performed construction management and inspection for the New Jersey Division of

Building and Construction, Department of Corrections, and has served as senior

project manager for the U.S. Army Corps of Engineers, Marine Design Center. He has testified in matters in Pennsylvania, California, Kentucky, New Jersey, and Virginia, and has given numerous seminars concerning construction project management and contract administration procedures.

     B)    <u>Damages</u>

> Christine T. Alexander, Esquire
> The St. Paul Companies, Inc.
> 5801 Centennial Way
> Baltimore, Maryland  21209

Ms. Alexander is expected to testify about her responsibilities concerning St. Paul's involvement in the Project from Fall 1999 forward, including communications and agreements with PHA, the bidding process for completion of the contract, dealing with performance bond claims, and the amount of and support for St. Paul's damages claims.

> Tony Sienzenko
> NDK General Contractors, Inc.
> 1512 E. Wheat Road
> Vineland, NJ  08360

Mr. Sienzenko is expected to testify about NDK's completion of the Project after the termination of San Lucas. Mr. Sienzenko also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project.

> Iggy Bik
> NDK General Contractors, Inc.

1512 E. Wheat Road
Vineland, NJ  08360

Mr. Bik is expected to testify about NDK's completion of the Project after the termination of San Lucas, and the failure of San Lucas to complete eighty-two percent of the Project as represented.  Mr. Bik also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project.

Gabe Caputo
NDK General Contractors, Inc.
1512 E. Wheat Road
Vineland, NJ  08360

Mr. Caputo is expected to testify about NDK's completion of the Project after the termination of San Lucas, and the failure of San Lucas to complete eighty-two percent of the Project as represented.  Mr. Caputo also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project.

Bob Kahan
Contract Completion, Inc.
33 Rock Hill Road
Bala Cynwyd, PA 19004

Mr. Kahan is expected to testify about information obtained in connection with his employment with Contract Completion, Inc.  Mr. Kahan also may present lay opinion testimony--which is rationally based on his perception, helpful to a clear

understanding of his testimony or a determination of a fact in issue, and not within the scope of Rule 702--on the percentage of completion of the project.

> David Stembel
> Wallace Roberts & Todd
> 260 South Broad Street
> Philadelphia, PA  19102-5075

Mr. Stembel is expected to testify about his observations as to the progress and performance of San Lucas on the Project.

> Mr. Anthony B. Creamer III, CPA/ABV
> Director
> Navigant Consulting, Inc.
> 1717 Arch Street, Suite 3610
> Philadelphia, Pennsylvania  19103

Mr. Creamer is expected to give expert opinion testimony, as a certified public accountant, concerning the payments made by PHA to San Lucas, San Lucas' expenses on the project as reflected by its business records, and San Lucas' bank records to the extent they become available as further set forth in his report dated May 21, 2003, a copy of which is attached hereto and incorporated by reference.  A detailed summary of his qualifications is as follows:

Mr. Creamer obtained his B.S. degree from Bloomsburg University and his M.B.A. degree from Drexel University.  He has been practicing as a certified public accountant since 1980, is accredited in business valuation by the American Institute of Certified Accountants, and his areas of specialization include valuation and appraisal services.  He has served as a guest lecturer at Drexel University and the Wharton School (Executive Continuing Education Branch).  In June, 1997 he was

elected to a two-year term to the Council of Pennsylvania Institute of Certified

Public Accountants, and he currently serves on the Executive Committee of the

Philadelphia Chapter of that Council.  He is a member of the American and

Pennsylvania Institutes of Certified Public Accounts, and is a past president of the

Philadelphia Chapter of the Institute of Management Accountants (formerly the

National Association of Accountants).  He has provided expert testimony in lawsuits

in federal courts located in Pennsylvania and Delaware, and in the state courts of

Pennsylvania, California, Delaware, and New Jersey.

> William A. Manginelli, President
> Trauner Consulting Services, Inc.
> One Penn Center
> 1617 JFK Boulevard, Suite 600
> Philadelphia, PA  19103

Mr. Manginelli is expected to give expert opinion testimony concerning PHA's

overpayment of San Lucas, as further set forth in his report dated May 21, 2003.

Mr. Manginelli obtained his B.S. degree in Marine (Mechanical) Engineering

from the United States Merchant Marine Academy.  He now is President of Trauner

Consulting Services, Inc., where he provides analytical and consulting services in

areas of specialization including construction management and inspection.  He has

performed construction management and inspection for the New Jersey Division of

Building and Construction, Department of Corrections, and has served as senior

project manager for the U.S. Army Corps of Engineers, Marine Design Center.  He

has testified in matters in Pennsylvania, California, Kentucky, New Jersey, and

Virginia, and has given numerous seminars concerning construction project management and contract administration procedures.

V.    Exhibits

1.    [Intentionally omitted]

2.    [Intentionally omitted]

3.    [Intentionally omitted]

4.    September 1993 HUD Guide Specifications for Public and Indian Housing (PHASP 27328-27336)

5.    October 5, 1993 Memo from C. Schroer re: Housing and Urban Development (HUD) Program (PHASP 27341-27348)

6.    February 5, 1994 Notice PIH 94-5, with attached documents (PHASP 27280-27303)

7.    March 10, 1994 PHA Memo from J. Herrmann re: Contract Modification Form (PHASP 007676-007678)

8.    April 11, 1994 Notice PIH 94-14 (HA) (PHASP 27337-27340)

9.    April 14, 1994 Memo from C. Schroer re: Housing and Urban Development (HUD) Program (PHASP 27304-27305)

10.   June 23, 1994 PHA memo from M. Fahringer to F. Purnell re: 504 Standards for All Modernization and Renovation Projects (PHASP 007702-007706)

11.   August 12, 1994 memo from C. Schroer re: Housing and Urban Development (HUD) Program, with attachments (PHASP 27275-27279)

12. February 22, 1995 Notice PIH 95-10 (HUD) (PHASP 27267-27274)

13. [Intentionally omitted]

14. [Intentionally omitted]

15. [Intentionally omitted]

16. [Intentionally omitted]

17. [Intentionally omitted]

18. [Intentionally omitted]

19. [Intentionally omitted]

20. [Intentionally omitted]

21. July 3, 1996 Memo from C. Schroer re: Housing and Urban Development

(HUD) HOPE VI Program (PHASP 027264-027265)

22. [Intentionally omitted]

23. [Intentionally omitted]

24. [Intentionally omitted]

25. [Intentionally omitted]

26. June 20, 1997 General Agreement of Indemnity between St. Paul and

San Lucas (SP010441- SP010444)

27. July 1997 Project Manual (SP823-SP1833)

28. [Intentionally omitted]

29. [Intentionally omitted]

30. [Intentionally omitted]

31.  August 29, 1997 PHA memo from J. Herrmann re: Liquidated Damages Procedure, and attached documents (PHASP 26258-26264)

32.  [Intentionally omitted]

33.  [Intentionally omitted]

34.  [Intentionally omitted]

35.  October 16, 1997 Performance Bond No. JX9663 (SP000249- SP000252)

36.  October 16, 1997 Materialmen's Bond No. JX9663 (SP000253- SP000255)

37.  November 6, 1997 Contract between PHA and San Lucas (Exhibit to Complaint, Doc. 00000740-00000742), including General Conditions of the Contract for Construction (Doc. 00000763-00000781), PHA General Conditions (Doc. 00000782-00000795), Special Contract Requirements (Doc. 00000693-00000708), Affirmative Action Section (Doc. 00000796-00000822); Resident Training & Employment Policy (Doc. 00000823-00000829;); Section Three Program section (Doc. 00000830-00000856); HUD General Conditions (Doc. 00000763-0000078); and all subsequent Modifications (Doc. 00000743-00000762)

38.  January 9, 1998 PHA notice to San Lucas to proceed with construction (Doc. 00000009-00000010)

39.  January 21, 1998 PHA records retention policies (PHASP 26500-26517)

40.  January 28, 1998 PHA notice to San Lucas re: schedule (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

41.  January 28, 1998 PHA notice to San Lucas re: weather protection (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

42.  January 28, 1998 PHA notice to San Lucas re: site security plan (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

43.  January 28, 1998 PHA notice to San Lucas re: site progress cleaning (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

44.  February 9, 1998 notice to San Lucas re: site security plan (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

45.  February 18, 1998 Contract Modification No. 4 (Doc. 0000749-0000750)

46.  February 20, 1998 San Lucas Richard Allen Homes project schedule. (PHA001306- PHA001315)

47.  March 9, 1998 PHA notice to San Lucas re: work quality issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

48.  March 11, 1998 PHA approval re: San Lucas Periodic Estimate #2 (PHASP 1949-1953)

49.  [Intentionally omitted]

50.  March 17, 1998 PHA notice to San Lucas re: attic insulation (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

51.  March 18, 1998 PHA notice to San Lucas re: work quality issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

52.  March 20, 1998 PHA notice to San Lucas re: insurance coverage (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

53.  March 25, 1998 City of Philadelphia notice to San Lucas subcontractor (J.M. Charal, Inc.) re: labor standards violation (Leithead dep. Ex. 3)

54.  April 17, 1998 (est.) PHA approval re: San Lucas Periodic Estimate #4 (PHASP 1931-1934)

55.  May 12, 1998  PHA notice to San Lucas re: work quality issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

56.  May 29, 1998 PHA notice to San Lucas re: work performance issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

57.  June 12, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

58.  [Intentionally omitted]

59.  June 16, 1998 PHA notice to San Lucas re: work quality issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

60.  June 16, 1998 PHA notice to San Lucas re: contract violation (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

61.  [Intentionally omitted]

62.  June 18, 1998 PHA notice to San Lucas re: brick restoration (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

63.  [Intentionally omitted]

64.  [Intentionally omitted]

65.  [Intentionally omitted]

66.  June 23, 1998 PHA memo from F. Purnell re: Action Memorandum's [sic]/Change Order Requests (PHASP 19514)

67. June 26, 1998 PHA notice to San Lucas re: safety issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

68. [Intentionally omitted]

69. July 6, 1998 PHA notice to San Lucas re: roofing felt (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

70. July 10, 1998  PHA notice to San Lucas re: roof shingles and delay (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

71. [Intentionally omitted]

72. [Intentionally omitted]

73. July 17, 1998  PHA notice to San Lucas re: safety issues (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

74. [Intentionally omitted]

75. July 23, 1998 periodical estimate checklist (Maxwell dep. Ex. 1)

76. July 23, 1998 PHA approval re: San Lucas Periodic Estimate #7 (PHASP 1898-1904)

77. July 23, 1998 PHA notice to San Lucas re: safety (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

78.  July 23, 1998 PHA notice to San Lucas re: construction quality (Ex. A3 to

St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's

Complaint)

79.  [Intentionally omitted]

80.  [Intentionally omitted]

81.  [Intentionally omitted]

82.  August 5, 1998 PHA Modernization Department Office Route Slip, and

attached documents (PHASP 21215-21223)

83.  [Intentionally omitted]

84.  August 10, 1998 memo from R. Bantum to M. Leithead, and attached

documents (PHASP 20946-20948)

85.  [Intentionally omitted]

86.  [Intentionally omitted]

87.  [Intentionally omitted]

88.  [Intentionally omitted]

89.  [Intentionally omitted]

90.  [Intentionally omitted]

91.  [Intentionally omitted]

92.  August 18, 1998 PHA approval re: San Lucas Periodic Estimate #8

(PHASP 1891-1897)

93.  August 21, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

94.  August 26, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

95.  [Intentionally omitted]

96.  September 16, 1998 memo from T. White re: Draft PHA Strategic Operational Plan, and attached documents (PHASP 20889-20924)

97.  September 21, 1998 PHA approval re: San Lucas Periodic Estimate #9 (PHASP 1879-1890)

98.  September 21, 1998 memo from L. Brown re: Project Manager for Richard Allen Homes (PHASP 20886)

99.  September 22, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

100.    September 22, 1998 PHA fax to U. Rivera (PHASP 20925-20933)

101.    October 12, 1998 PHA memo from R. Bantum to M. Leithead, and attached documents (PHASP 17020-17036)

102.    October 14, 1998 PHA notice to San Lucas re: power outage (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

103.    October 16, 1998 PHA notice to San Lucas re: insurance claims (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

104.    October 20, 1998 PHA notice to San Lucas re: damaged utilities (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

105.    October 20, 1998 PHA approval re: San Lucas Periodic Estimate #10 (PHASP 1872-1878)

106.    October 21, 1998 PHA memo from R. Bantum to M. Leithead, and attached documents (PHASP 16999-17015)

107.    [Intentionally omitted]

108.    November 10, 1998 Contract Modification #1 (Doc. 00000743-00000744)

109.    [Intentionally omitted]

110.    November 12, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

111.    November 17, 1998 PHA notice to San Lucas re: workers on jobsite (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

112.    [Intentionally omitted]

113.    November 26, 1998 Contract Modification #2 (Doc. 00000745-00000746)

114.    November 30, 1998 PHA approval re: San Lucas Periodic Estimate #11 (PHASP 1865-1871)

115.    December 7, 1998 PHA notice to San Lucas re: damages from electrical power loss due to pile installations (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

116.    December 7, 1998 PHA notice to San Lucas re: site security (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

117.    December 17, 1998 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

118.    [Intentionally omitted]

119.    December 23, 1998 PHA notice to San Lucas re: schedule (Maxwell dep. Ex. 12.)

120.    [Intentionally omitted]

121.    January 6, 1999 letter from S. Maxwell to San Lucas, and attached documents (PHASP 1596-1624)

122.    January 11, 1999 PHA approval re: San Lucas Periodic Estimate #12 (PHASP 1855-1864)

123.    [Intentionally omitted]

124.    January 12, 1999 City of Philadelphia notice to San Lucas re: payroll reports (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

125.    January 12, 1999 PHA routing sheet from C. Greene, and attached document (PHA 1248-1250)

126.    January 15, 1999 PHA notice to San Lucas re: attic access ways (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

127.    January 15, 1999 PHA notice to San Lucas re: rain leaders (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

128.    January 19, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

129.    [Intentionally omitted]

130.    [Intentionally omitted]

131.    [Intentionally omitted]

132.    January 27, 1999 PHA notice to San Lucas re: carbomastic application (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

133.    January 28, 1999 PHA notice to San Lucas re: water supplies (Maxwell dep. Ex. 15.)

134.    January 28, 1999  Wallace Roberts & Todd letter to PHA (Maxwell dep. Ex. 13.)

135.    January 29, 1999 PHA notice to San Lucas re: poor contract performance (Maxwell dep. Ex. 15.)

136.    February 1, 1999 Check List for Contract Modification (PHASP 1565-1595)

137.    February 2, 1999 letter from San Lucas to PHA (PHASP 006271)

138.    February 2, 1999 Contract Modification #3 (Doc. 00000747-00000748)

139.    February 3, 1999 PHA notice to San Lucas re: drywall finishes (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

140.    February 3, 1999 letter from PHA to San Lucas re: PHA Contract #9589 - Smoke Detector Changes

141.    February 5, 1999 PHA notice to San Lucas re: payroll reports (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

142.    February 5, 1999 letter from PHA to San Lucas re: PHA Contract #9589 - Building Permit/Zoning Permit (Doc 00000343)

143.    [Intentionally omitted]

144.    February 9, 1999 interoffice memorandum from T. Trzaska to file re: Construction Schedule (Maxwell dep. Ex. 16.)

145.    February 10, 1999 letter from San Lucas to PHA re: Comprehensive Modernization of Allen Homes (288 units) and proposed schedule (Doc 00000356-00000423)

146.    February 11, 1999  PHA notice to San Lucas re: damaged water boxes (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

147.    February 12, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

148.    February 15, 1999 PHA notice to San Lucas re: stair installation (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

149.    February 18, 1999 Contract Modification #4 (Doc. 00000749-00000750)

150.    February 18, 1999 PHA fax (PHASP 15046-15048)

151.    February 19, 1999 Memorandum from San Lucas to PHA re: Summary of Project Completion and revised project schedule (Doc. 00000344-00000350)

152.    February 19, 1999 Memorandum from U. Rivera to M. Leithead, and attached documents (PHASP 6367-6374)

153.    February 19, 1999 Memorandum from R. Bantum to S. Maxwell, cc to File #9589, and attached documents (PHASP 9383-9391)

154.    [Intentionally omitted]

155.    February 21, 1999 letter from PHA to San Lucas re: PHA Contract 9589 - Recovery Project Schedule dated 2/8/99 (Doc 00000430)

156.    February 22, 1999 PHA notice to San Lucas re: site security (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

157.    February 22, 1999 letter from PHA to San Lucas re: site security (Doc. 00000434)

158.    February 22, 1999 memo from U. Rivera to M. Leithead, and attached documents (PHASP 9481-9493)

159.    February 23, 1999 PHA notice to San Lucas re: temporary heating (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

160.    February 25, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

161.    February 25, 1999 Contract Modification #5 (Doc. 00000751-00000752)

162.    February 26, 1999 PHA approval re: San Lucas Periodic Estimate #13 (PHASP 1845-1854)

163.    March 5, 1999 memo from R. Bantum to S. Maxwell, and attached documents (PHASP 4196-4216)

164.    March 8, 1999 memo from S. Lalli re: Contract Modifications (PHASP 9379-9380)

165.    March 10, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

166.    March 11, 1999 memo from S. Lalli to U. Rivera, and attached documents  (PHASP 9033-9045)

167.    March 15, 1999 memo from S. Lalli to U. Rivera, and attached documents  (PHASP 9017-9032)

168.    March 15, 1999 memo from R. Bantum re: Contract Modification Issues, and attached documents  (PHASP 6362-6365)

169.    March 16, 1999 PHA notice to San Lucas re: kitchen cabinets (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

170.    March 16, 1999 PHA approval re: San Lucas Periodic Estimate #14 (PHASP 1837-1844)

171.    [Intentionally omitted]

172.    March 18, 1999 memo from NuMor Electric to PHA re: safety (00000470)

173.    [Intentionally omitted]

174.    March 31, 1999 U.S. Army Corps of Engineers Construction Management Report on project (Maxwell dep. Ex. 17.)

175.    April 2, 1999 San Lucas Letter No. 25--request to PHA to reduce retainage (Maxwell dep. Ex. 9)

176.    April 5, 1999 Check List for Contract Modification, with attached documents (PHASP 1414-1455)

177.    April 7, 1999 PHA letter to San Lucas re: reduction of retainage (Maxwell dep. Ex. 10; Doc. 00000497)

178.    April 15, 1999 PHA notice to San Lucas re: safety concerns (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

179.    April 20, 1999 Project periodical estimate checklist (PHASP 001827-001835)

180.    April 21, 1999 memo from T. Trzaska to M. Leithead (PHASP 008403)

181.    April 21, 1999 minutes of Job Progress Meeting. (PHASP 3762-3769)

182.    [Intentionally omitted]

183.    [Intentionally omitted]

184.    May 21, 1999 PHA approval re: San Lucas Periodic Estimate #16 (PHASP 1820-1826)

185.    May 22, 1999 Contract Modification 6 (PHASP 1520-1539)

186.    May 22, 1999 memo from R. Bantum to S. Maxwell, with attached documents (PHASP 4237-4251)

187.    May 26, 1999 letter from L. Trower to San Lucas, with attached documents (PHASP 1543-1564)

188.    [Intentionally omitted]

189.    June 7, 1999 PHA notice to San Lucas re: kitchen cabinets (Maxwell dep. Ex. 19.)

190.    [Intentionally omitted]

191.    June 9, 1999 PHA notice to San Lucas re: kitchen cabinets (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

192. June 9, 1999 PHA notice to San Lucas re: retainage (Maxwell dep. Ex. 18)

193. [Intentionally omitted]

194. [Intentionally omitted]

195. June 11, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

196. June 14, 1999 letter to San Lucas from PHA re: kitchen cabinets (PHASP 6288-6289)

197. June 15, 1999 PHA notice to San Lucas re: schedule (Maxwell dep. Exs. 18, 19; Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

198. June 21, 1999 PHA approval re: San Lucas Periodic Estimate #17 (PHASP1811-1819)

199. [Intentionally omitted]

200. July 2, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

201. July 15, 1999 PHA memorandum (reissued) re: Contract Modifications (SP13685-13694)

202. [Intentionally omitted]

203.    July 21, 1999 PHA approval re: San Lucas Periodic Estimate #18 (PHASP 1803-1810)

204.    July 27, 1999 PHA notice to San Lucas re: work quality (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

205.    July 28, 1999 PHA notice to San Lucas re: work quality and scheduling (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

206.    July 29, 1999 PHA notice to San Lucas re: site security (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

207.    July 29, 1999 Architectural Punch List (PHASP 12655-12674)

208.    [Intentionally omitted]

209.    August 5, 1999 memo from J. Warrick to J. Calhoun (PHASP 12650-12654)

210.    [Intentionally omitted]

211.    August 12, 1999 PHA memorandum from L. Trower to U. Rivera re: Field Visits & Training (Maxwell dep. Ex. 22.)

212.    PHA approval re: San Lucas Periodic Estimate #22 (PHASP 3621-3627)

213.     August 19, 1999 memo from L. Trower to S. Maxwell (Maxwell dep. Ex. 23)

214.     August 19, 1999 Letter No. 26 from San Lucas to PHA re: updated summary of completion dates (Maxwell dep. Ex. 24)

215.     August 23, 1999 letter to PHA from St. Paul (SP002320)

216.     [Intentionally omitted]

217.     September 14, 1999 letter from Subcontractor Eugene Pullins to PHA re: non-payment by San Lucas (Maxwell dep. Ex. 26.)

218.     September 15, 1999 (est.) PHA approval re: San Lucas Periodic Estimate #20 (PHASP 1787-1797)

219.     [Intentionally omitted]

220.     September 21, 1999 Contract Modification #7 (Doc. 00000755-00000756)

221.     September 21, 1999 memo from C. Mosely to S. Maxwell, with attached documents (PHASP 4159-4174)

222.     September 24, 1999 memo from C. Valentine to C. Greene, with attached documents (PHASP 7982-7986)

223.     September 27, 1999 Contract Modification #8 (Doc. 00000757-00000758)

224.     [Intentionally omitted]

225.     [Intentionally omitted]

226.    [Intentionally omitted]

227.    [Intentionally omitted]

228.    October 19, 1999 PHA notice to San Lucas re: problems with Building 42 (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

229.    October 20, 1999  Ross-Araco Corp. letter to PHA re: San Lucas causing delay (Maxwell dep. Ex. 27.)

230.    October 21, 1999 PHA notice to San Lucas re: failure to maintain construction schedule (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

231.    October 21, 1999 PHA approval re: San Lucas Periodic Estimate #21 (PHASP 1780-1786)

232.    [Intentionally omitted]

233.    [Intentionally omitted]

234.    [Intentionally omitted]

235.    October 26, 1999  PHA notice to San Lucas re: failure to maintain construction schedule (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

236.    [Intentionally omitted]

237.    November 2, 1999 PHA memo from U. Rivera to S. Maxwell (Maxwell Dep. Ex. 25)

238.    November 2, 1999 PHA notice to San Lucas re: site security (Ex. A3 to St. Paul's Opposition to PHA's Motion to Dismiss Counts I, III and IV of Plaintiff's Complaint)

239.    November 5, 1999 Construction Specialties, Inc. notice to PHA re: nonpayment by San Lucas (Maxwell dep. Ex. 28, PHA001280)

240.    November 5, 1999 Molly Construction Co. notice to PHA re: nonpayment by San Lucas (Maxwell dep. Ex. 29, PHA001290)

241.    [Intentionally omitted]

242.    November 9, 1999 Contract Modifications Form, with attached documents (PHASP 1501-1519)

243.    [Intentionally omitted]

244.     [Intentionally omitted]

245.    [Intentionally omitted]

246.    November 17, 1999 Fastrack Construction notice to PHA re: nonpayment by San Lucas (Maxwell dep. Ex. 30; PHA001296- PHA001297)

247.    [Intentionally omitted]

248.    [Intentionally omitted]

249.    [Intentionally omitted]

250.    [Intentionally omitted]

251.    November 22, 1999 Structural Restoration Services notice to San Lucas re: failure to pay (Maxwell dep. Ex. 31.)

252.    [Intentionally omitted]

253.    November 23, 1999 letter from Eagle Fence Company, Inc. to "San Paul Surety" (SP005731)

254.    November 24, 1999 Contract Modification #9 (Doc. 00000759-00000760)

255.    November 24, 1999 memo from C. Mosely to S. Maxwell, with attached document (PHASP 4777-4779)

256.    November 26, 1999 weekly activity report from Brown to S. Maxwell, with attached document (PHASP 19752-19762)

257.    [Intentionally omitted]

258.    [Intentionally omitted]

259.    December 2, 1999 fax to PHA from Eagle Fence (00001541-00001542)

260.    December 3, 1999 Contract Modification #10 (Doc. 00000761-00000762)

261.    December 3, 1999 letter from Carpenters Health & Welfare Fund of Philadelphia & Vicinity to PHA re: Sirius Inc. & San Lucas Construction Co. Inc. (PHA001232)

262.    December 3, 1999 memo from C. Mosely to S. Maxwell, with attachments (PHASP 4794-4797)

263.    December 3, 1999 memo from Brown to S. Maxwell, with attachments (PHASP 9333-9339)

264.    [Intentionally omitted]

265.    December 6, 1999 letter from Ross-Araco Corp. to PHA (PHASP 12710-12711)

266.    December 7, 1999 email from D. Smith to A. Brown, with attachment (PHASP 11871-11877)

267.    December 8, 1999 memo from S. Lucas to Public Housing Agencies (PHASP 27230)

268.    December 8, 1999 PHA memo from U. Rivera to S. Maxwell (Maxwell dep. Ex. 32)

269.    December 8, 1999 telecopy from U. Rivera to S. Maxwell (PHASP 4375-4380)

270.    December 9, 1999 fax from U. Rivera to C. Moseley/R. Panchwagh (PHASP 4370-4374)

271.    [Intentionally omitted]

272.    December 10, 1999 PHA approval re: San Lucas Periodic Estimate #23 (PHASP 1767-1772)

273.    December 10, 1999 (est.) letter from HUD to PHA, with enclosures (including Richard Allen Homes Report # 1) (PHASP 11365-11378)

274.    December 10, 1999 Notice of Intent to Default (PHASP 10717)

275.    [Intentionally omitted]

276.    [Intentionally omitted]

277.   [Intentionally omitted]

278.   December 14, 1999 fax from South Jersey Landscape Construction to PHA (00001527-00001529)

279.   December 21, 1999 letter to S. Maxwell from C. Alexander (PHASP 10624)

280.   December 15, 1999 memo from U. Rivera to R. Copes (PHASP 10722)

281.   [Intentionally omitted]

282.   [Intentionally omitted]

283.   [Intentionally omitted]

284.   [Intentionally omitted]

285.   December 17, 1999 letter from M. Leithead to HUD (unsigned), with attachment (PHASP 11361-11364)

286.   December 20, 1999 letter from HUD to PHA, with attachments (PHASP 11335-11348)

287.   December 21, 1999 handwritten meeting attendance list (PHASP 10536)

288.   December 21, 1999 St. Paul letter to PHA (Maxwell dep. Ex. 34)

289.   [Intentionally omitted]

290.    [Intentionally omitted]

291.   December 22, 1999 memo from R. Panchwagh re: Meeting with Leithead and Contracts Staff (PHASP 010179)

292.    Cost Control Report dated December 22, 1999 prepared by San Lucas (SL0000061-SL0000173)

293.    [Intentionally omitted]

294.    [Intentionally omitted]

295.    December 24, 1999 memo from Brown to S. Maxwell (PHASP 11851-11857)

296.    December 28, 1999 PHA memo from U. Rivera to R. Panchwagh, with attachments (PHASP 16359-16370)

297.    December 28, 1999 fax from U. Rivera to J. Davis (PHASP 16631-16642)

298.    December 29, 1999 correspondence from P. Iwaniw to U. Rivera (PHASP 11412-11424)

299.    [Intentionally omitted]

300.    [Intentionally omitted]

301.    [Intentionally omitted]

302.    January 3, 2000 Analysis of Schedule of Values (PHASP 12854-12875)

303.    [Intentionally omitted]

304.    [Intentionally omitted]

305.    [Intentionally omitted]

306.    January 5, 2000 memo from U. Rivera to S. Maxwell (PHASP 10137)

307.    January 7, 2000 memo from Brown to S. Maxwell (PHASP 11837-11838)

308.    [Intentionally omitted]

309.    [Intentionally omitted]

310.     [Intentionally omitted]

311.    [Intentionally omitted]

312.    January 12, 2000 San Lucas Subs Claims of Non-Payment (PHASP 10167)

313.    [Intentionally omitted]

314.    [Intentionally omitted]

315.    January 13, 2000 PHA Notice of Default to San Lucas (Maxwell dep. Ex. 38)

316.    [Intentionally omitted]

317.    [Intentionally omitted]

318.     [Intentionally omitted]

319.    [Intentionally omitted]

320.    [Intentionally omitted]

321.    January 21, 2000 letter from St. Paul to PHA (SP002083-002085)

322.    [Intentionally omitted]

323.    January 24, 2000 letter from S. Maxwell to G. Gutierrez terminating San Lucas' right to proceed under Contract for default. (PHASP 10180)

324.    January 28, 2000 NDK videotape footage of Richard Allen Homes[1]

325.    [Intentionally omitted]

326.     [Intentionally omitted]

327.    February 1, 2000 letter from PHA to St. Paul (SP002183)

328.    February 1, 2000 videotape footage of Richard Allen Homes

329.    [Intentionally omitted]

330.    [Intentionally omitted]

331.    February 7, 2000 letter from PHA to St. Paul (SP002113)

332.    February 10, 2000 memo from U. Rivera to R. Panchwagh (PHASP

12828-12853)

333.    [Intentionally omitted]

334.    February 11, 2000 letter from PHA to St. Paul (SP002115-SP002116)

335.    [Intentionally omitted]

336.    [Intentionally omitted]

337.    February 14, 2000 fax from NDK to C. Alexander (SP002170-

SP002171)

338.    [Intentionally omitted]

339.    [Intentionally omitted]

340.    [Intentionally omitted]

---

[1] For ease of technical use, St. Paul may transfer the videotape images to another format such as CD-ROM.

341.    February 17, 2000  PHA memo from U. Rivera to R. Panchwagh (PHASP 9977)

342.    February 18, 2000 PHA memo from R. Panchwagh to M. Leithead re Richard Allen cost estimate, and attached documents (PHASP 4650-4658)

343.    [Intentionally omitted]

344.    [Intentionally omitted]

345.    [Intentionally omitted]

346.    [Intentionally omitted]

347.    [Intentionally omitted]

348.    [Intentionally omitted]

349.    [Intentionally omitted]

350.    March 10, 2000 letter from A. Ruck to K. Hubbard (SP012103)

351.    [Intentionally omitted]

352.    [Intentionally omitted]

353.    [Intentionally omitted]

354.    March 17, 2000 letter to Delta Organization, Inc. from Christine Alexander [SP00038-SP00040];

355.    [Intentionally omitted]

356.    [Intentionally omitted]

357.    [Intentionally omitted]

358.    March 17, 2000 letter to NDK General Contractors, Inc. from Christine

Alexander [SP000044-SP000046]

359.    [Intentionally omitted]

360.    [Intentionally omitted]

361.    [Intentionally omitted]

362.    [Intentionally omitted]

363.    [Intentionally omitted]

364.    [Intentionally omitted]

365.    [Intentionally omitted]

366.    [Intentionally omitted]

367.    [Intentionally omitted]

368.    March 29, 2000 letter from NDK to Andrew Ruck, with attachments

[SP11789-11804]

369.    [Intentionally omitted]

370.    [Intentionally omitted]

371.    March 31, 2000 signed Proposal Forms from Delta Organization to St.

Paul (SP011722-11724)

372.    March 31, 2000 letter from A. Ruck to NDK re: Award of Completion of

Richard B. Allen Homes Quadrant B-3 (NDK 00838-00839, SP011265- SP011265)

373.    Executed Completion Contract(s) dated April 3, 2000 [SP00279-00289]

374.    [Intentionally omitted]

375.    [Intentionally omitted]

376.    April 6, 2000 letter from M. Hubbard to A Ruck, with attached documents (Doc. 0000733-0000739)

377.    April 6, 2000 Takeover Agreement between PHA and St. Paul. (Exhibit to Complaint, Doc. 00000734-00000739)

378.    April 6, 2000 letter from G. Caputo to A. Ruck (SP011742)

379.    April 6, 2000 letter from A. Ruck to NDK, with enclosed executed Completion Contract(s) dated April 3, 2000 (SP011743, SP00279-00289)

380.    April 6, 2000 letter from A. Ruck to S. Maxwell re: Takeover Agreement (SP011747)

381.    April 7, 2000 letter(s) to Delta Organization, Inc. from A. Ruck regarding award of completion contract of Richard B. Allen Homes (Quadrant B-2) (SP011267- SP011268)

382.    April 7, 2000 letter from PHA to HUD (PHASP 563)

383.    [Intentionally omitted]

384.    April 10, 2000 fax from Clair Odell Group to A. Ruck (SP011727-SP011728)

385.    April 11, 2000 letter to Delta Organization, Inc., from St. Paul regarding completion contract of Richard B. Allen Homes (Quadrant B-2) (SP011270- SP011271)

386.    April 11, 2000 memo from S. Maxwell to M. Leithead, with attached document (PHASP 596-597)

387.    [Intentionally omitted]

388.    April 11, 2000 letter from A. Ruck to Delta Organization, Inc. (SP011697- SP011698)

389.    April 11, 2000 letter from A. Ruck to K. Hubbard (SP013028)

390.    April 13, 2000 letter to St. Paul from Gabe Caputo (SP011711)

391.    April 13, 2000 letter to PHA from A. Ruck (SP011714- SP011715)

392.    [Intentionally omitted]

393.    April 14, 2000 letter from A. Ruck to NDK General Contractors, Inc., with attachment (PHASP 12907-12908)

394.    April 14, 2000 letter from A. Ruck to NDK General Contractors, Inc. (SP011707)

395.    April 14, 2000 letter from S. Maxwell to C. Alexander (SP011709)

396.    April 14, 2000 letter from A. Ruck to E. Seglias (SP013009- SP013010)

397.    April 18, 2000 fax memo from Atlantic Underwriting Agency, Inc. to C. Alexander (SP013148)

398.    April 24, 2000 letter from A. Ruck to NDK (SP011277- SP011279)

399.    April 19, 2000 memo for All HOPE VI Public Housing Directors from E. Bacon (PHASP 027213-027229)

400.    April 24, 2000 letter to NDK General Contractors, Inc. from A. Ruck regarding award for completion of Richard B. Allen Homes (Quadrant B-2) (NDK001028- NDK001029)

401.    April 25, 2000 letter to Cohen Seglias, Pallas & Greenhall regarding termination of award of completion contract of Richard B. Allen Homes (Quadrant B-2) (SP013141- SP013142)

402.    [Intentionally omitted]

403.    April 25, 2000 letter from A. Ruck to NDK (SP013069)

404.    [Intentionally omitted]

405.    Executed Completion Contracts for Quadrant B-2 dated April 25, 2000 (SP007141- SP007151)

406.    [Intentionally omitted]

407.    [Intentionally omitted]

408.    April 28, 2000 letter from PHA to C. Alexander (SP013076)

409.    May 2, 2000 letter from Atlantic Underwriting Agency to Delta Organization (SP013116)

410.    May 2, 2000 letter from A. Ruck to NDK, with enclosure(s) of fully executed Completion Contracts for Quadrant B-2 dated April 25, 2000 (SP013118, SP007141- SP007151)

411.    [Intentionally omitted]

412.    May 3, 2000 fax from W. Logan to C. Alexander (SP013128- SP013129, SP011287- SP011288)

413.    May 4, 2000 letter from A. Ruck to W. Logan (SP013139)

414.    [Intentionally omitted]

415.    [Intentionally omitted]

416.    [Intentionally omitted]

417.    [Intentionally omitted]

418.    [Intentionally omitted]

419.    [Intentionally omitted]

420.    [Intentionally omitted]

421.    [Intentionally omitted]

422.    [Intentionally omitted]

423.    [Intentionally omitted]

424.    [Intentionally omitted]

425.    [Intentionally omitted]

426.    [Intentionally omitted]

427.    [Intentionally omitted]

428.    [Intentionally omitted]

429.    [Intentionally omitted]

430.    [Intentionally omitted]

431.    [Intentionally omitted]

432.    [Intentionally omitted]

433.    [Intentionally omitted]

434.    [Intentionally omitted]

435.    [Intentionally omitted]

436.    [Intentionally omitted]

437.    Transcript of following portions of October 10, 2000 deposition of Ulise Rivera: p. 7 line 2 through p. 40 line 3; p. 40 line 10 through p. 41 line 4; p. 41 line 21 through p. 44 line 13; p. 40 line 20 through p. 49 line 1; p. 49 line 13 through p. 60 line 12; p. 60 line 15 through p. 66 line 10; p. 66 line 17 through p. 67 line 9; p. 67 line 14 through p. 85 line 9; p. 85 line 15 through p. 88 line 6; p. 88 line 12 through p. 110 line 23; p. 111 line 2 through p. 111 line 5; p. 112 line 5 through p. 119 line 23; p. 120 line 4 through p. 120 line 19; p. 121 line 8 through p. 126 line 22.

438.    [Intentionally omitted]

439.    [Intentionally omitted]

440.    [Intentionally omitted]

441.    [Intentionally omitted]

442.    [Intentionally omitted]

443.    [Intentionally omitted]

444.    [Intentionally omitted]

445.    [Intentionally omitted]

446.    [Intentionally omitted]

447.    [Intentionally omitted]

448.    [Intentionally omitted]

449.    [Intentionally omitted]

450.    [Intentionally omitted]

451.    [Intentionally omitted]

452.    [Intentionally omitted]

453.    [Intentionally omitted]

454.    [Intentionally omitted]

455.    [Intentionally omitted]

456.    [Intentionally omitted]

457.    [Intentionally omitted]

458.    [Intentionally omitted]

459.    [Intentionally omitted]

460.    [Intentionally omitted]

461.    [Intentionally omitted]

462.    [Intentionally omitted]

463.    [Intentionally omitted]

464.    [Intentionally omitted]

465.    [Intentionally omitted]

466.    [Intentionally omitted]

467.    [Intentionally omitted]

468.    [Intentionally omitted]

469.    [Intentionally omitted]

470.    [Intentionally omitted]

471.    [Intentionally omitted]

472.    [Intentionally omitted]

473.    [Intentionally omitted]

474.    [Intentionally omitted]

475.    [Intentionally omitted]

476.    [Intentionally omitted]

477.    [Intentionally omitted]

478.    [Intentionally omitted]

479.    [Intentionally omitted]

480.    [Intentionally omitted]

481.    Transcript of following portions of February 27, 2003 deposition of

Sheila A. Maxwell: p. 8 line 11 through p. 23 line 12; p. 23 line 16 through p. 36 line

2; p. 36 line 8 through p. 44 line 16; p. 45 line 8 through p. 57 line 13; p. 57 line 20

through p. 61 line 16; p. 61 line 20 through p. 68 line 6; p. 68 line 15 through p. 69

line 9; p. 68 line 15 through p. 69 line 9; p. 69 line 17 through p. 71 line 3; p. 71 line

8 through p. 71 line 16; p. 71 line 20 through p. 72 line 20; p. 72 line 24 through p.

75 line 19; p. 75 line 23 through p. 76 line 23; p. 77 line 6 through p. 82 line 7; p. 77

line 6 through p. 82 line 7; p. 82 line 13 through p. 90 line 17; p. 90 line 20 through

p. 94 line 2; p. 94 line 5 through p. 94 line 7; p. 94 line 15 through p. 95 line 8; p. 95

line 12 through p. 102 line 13; p. 102 line 21 through p. 108 line 25; p. 109 line 2

through p. 111 line 20; p. 111 line 23 through p. 118 line 23; p. 119 line 13 through

p. 121 line 5; p. 121 line 11 through p. 128 line 8; p. 128 line 12 through p. 129 line

1; p. 128 line 12 through p. 129 line 1; p. 129 line 11 through p. 135 line 6; p. 135 line 8 through p. 135 line 19; p. 135 line 23; p. 136 line 5 through p. 138 line 7; p. 138 line 10 through p. 141 line 15; p. 141 line 18 through p. 14 line 6; p. 142 line 11 through p. 144 line 11; p. 144 line 13 through p. 146 line 1; p. 146 line 3 through p. 149 line 14; p. 149 line19 through p. 161 line 3; p. 161 line 8 through p. 162 line 2; p. 165 line 4 through p. 166 line 15.

    482.    [Intentionally omitted]

    483.    [Intentionally omitted]

    484.    [Intentionally omitted]

    485.    [Intentionally omitted]

    486.    [Intentionally omitted]

    487.    [Intentionally omitted]

    488.    [Intentionally omitted]

    489.    [Intentionally omitted]

    490.    [Intentionally omitted]

    491.    [Intentionally omitted]

    492.    [Intentionally omitted]

    493.    [Intentionally omitted]

    494.    [Intentionally omitted]

    495.    [Intentionally omitted]

    496.    [Intentionally omitted]

497. [Intentionally omitted]

498. [Intentionally omitted]

499. [Intentionally omitted]

500. [Intentionally omitted]

501. [Intentionally omitted]

502. [Intentionally omitted]

503. [Intentionally omitted]

504. [Intentionally omitted]

505. [Intentionally omitted]

506. [Intentionally omitted]

507. [Intentionally omitted]

508. [Intentionally omitted]

509. [Intentionally omitted]

510. [Intentionally omitted]

511. [Intentionally omitted]

512. [Intentionally omitted]

513. [Intentionally omitted]

514. [Intentionally omitted]

515. [Intentionally omitted]

516. [Intentionally omitted]

517. [Intentionally omitted]

518.    Transcript of following portions of March 11, 2003 deposition of Michael J. Leithead:  p. 5 line 18 through p. 31 line 17; p. 31 line 22 through p. 47 line 3; p. 47 line 19 through p. 70 line 11; p. 71 line 11 through p. 74 line 5; p. 74 line 17 through p. 75 line 3; p. 75 line 9 through p. 102 line 18; p. 103 line 1 through p. 115 line 22; p. 116 line 8 through p. 130 line 6; p. 130 line 11 through p. 166 line 15; p. 167 line 2 through p. 170 line 1.

519.    [Intentionally omitted]

520.    [Intentionally omitted]

521.    [Intentionally omitted]

522.    [Intentionally omitted]

523.    [Intentionally omitted]

524.    [Intentionally omitted]

525.    [Intentionally omitted]

526.    [Intentionally omitted]

527.    [Intentionally omitted]

528.    [Intentionally omitted]

529.    [Intentionally omitted]

530.    Undated Summary of Performance Bond Costs and Expenses attached as Exhibit 9 to Motion for Summary Judgment of St. Paul Mercury Insurance Company filed on or about May 7, 2001.

531.    Undated Summary of Payment Bond Costs and Expenses attached as Exhibit 10 to Motion for Summary Judgment of St. Paul Mercury Insurance Company filed on or about May 7, 2001.

532.    [Intentionally omitted]

533.    [Intentionally omitted]

534.    [Intentionally omitted]

535.    [Intentionally omitted]

536.    [Intentionally omitted]

537.    [Intentionally omitted]

538.    [Intentionally omitted]

539.    [Intentionally omitted]

540.    [Intentionally omitted]

541.    [Intentionally omitted]

542.    [Intentionally omitted]

543.    Records received from Republic First Bank in response to St. Paul's April 15, 2003 Notice to Take Deposition Duces Tecum and subpoena (RFB 000001-000215).

544.    Records received from Hudson United Bank Corp. in response to St. Paul's April 15, 2003 Notice to Take Deposition Duces Tecum and subpoena, when received (no such documents have been received before filing of this proposed pretrial order, despite St. Paul's good faith efforts to obtain same).

545.   [Intentionally omitted]

546.   May 2003 Summary Expert Report of William A. Manginelli, with attachments

547.   May 20, 2003 Analysis of San Lucas Construction Company, Inc.'s Cost Control Reports & Periodic Estimates for Partial Payment by Navigant Consulting

548.   September 1998 PHA Procedures Manuals

549.   March 1998 PHA Capital Projects' Project Management Manual

VI.   <u>Estimated Number of Days Required for Trial</u>

St. Paul believes thirteen total days of trial time will be required. St. Paul believes it will require 6 days to present its case:  5 days for liability issues, and 1 day for damages issues.

VII.   <u>Special Comments Regarding Legal Issues, Stipulations, and Other Matters</u>

A)   <u>Legal Issues</u>

St. Paul raises the following legal issues as currently unresolved and requiring resolution before trial:

1)   In response to St. Paul's requests for production of documents, there are categories of responsive documents that PHA has produced incompletely or not at all.  These include:

(a)    Inspection reports and/or other documents relevant to the Project created and/or maintained by PHA's construction department, including the files of the late Bob Bantum;

(b)    Red-bound diaries maintained by Tim Trzaska and other PHA employees who inspected the project; and

(c)    Handwritten notes of Peter Iwaniw provided to PHA's on-site personnel

The appropriate remedy or resolution regarding these failures of production-- including a possible request by St. Paul for jury instructions permitting appropriate adverse inferences to be drawn against PHA--may need to be addressed before trial.

2)    The failure (as of the date of this submission) of Hudson United Bank Corp. to provide documents in timely response to St. Paul's Notice to Take Deposition Duces Tecum and subpoena may require relief in a form to be determined by the Court.

3)    A potential motion in limine by St. Paul to exclude evidence or argument concerning the prior criminal conviction of NDK employee David Kemenash.

4)    A potential motion in limine by St. Paul to exclude evidence or argument concerning alleged misconduct, including alleged receipt of kickbacks, on the part of Bob Kahan.

5)    A potential motion in limine by St. Paul to exclude evidence or argument concerning alleged flaws in the bid process concerning the contract for completion of the Project.

6)    Resolution of who bears the burden of proof on the issue of whether St. Paul was prejudiced by PHA's overpayments to San Lucas.

B)    <u>Proposed Stipulations</u>

St. Paul proposes that the parties stipulate to the following undisputed facts:

1.    St. Paul is a corporation that, among other lines of business, serves as a surety with respect to construction projects.

2.    PHA is a governmental authority that owns and manages public housing projects in the Philadelphia area, including the Richard Allen Homes public housing project.

3.    At all times relevant to this case, San Lucas Construction Company, Inc. ("San Lucas") was a construction business headquartered in Philadelphia.

4.    On November 6, 1997, PHA and San Lucas executed Contract Agreement No. 9589 ("the Contract"), which provided for renovation of existing single-family units and the construction or renovation of other buildings in Quadrants B-2 and B-3 of the Richard Allen Homes ("the Project").

5.    PHA agreed to pay San Lucas $11,890,000 for general contracting services on the Project.

6.      Article 3 of the Contract provides that PHA "shall pay [San Lucas] for the performance of the work provided for under this contract, in accordance with the bid made by [San Lucas] and accepted by [PHA] . . ."

7.      PHA agreed in paragraph 27 (b) of the General Conditions of the Contract for Construction to:

> make progress payments approximately every 30 days as the work proceeds, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by [PHA] . . .

8.      Under the terms of the Contract, PHA further agreed, among other things, to review progress payment estimates submitted by San Lucas showing the value of the work performed during each period.  PHA agreed to approve all such estimates "prior to payment."

9.      Also prior to making any payment, PHA was entitled under the Contract to:

> require [San Lucas] to furnish receipts or other evidence of payment from all persons performing work and supplying material to [San Lucas], if [PHA] determines such evidence is necessary to substantiate claimed costs.

10.      Where progress payments include "delivered material," PHA was entitled to require San Lucas to furnish documentation "to assure the protection of the PHA's/IHA's interest in such materials."

11.     The PHA General Conditions of the Contract are incorporated by reference as part of the Contract in Article 5, and provide with regard to payment for stored materials that:

> Notwithstanding the terms of Article 27, *Payments*, in HUD General Conditions 5370, no payment will be made to the contractor for materials not installed and approved by [PHA].

12.     Also under the terms of the Contract, PHA reserved its right to withhold payment for any deficiency in San Lucas's performance and

> shall notify [San Lucas] of its determination of the deficiency item in writing within 15 days of the date that the inspection revealing the deficiency item is made . . . if there is any other defect or impropriety in the periodical estimate or invoice, PHA shall give written notice to the contractor within 20 working days of receipt of the periodical estimate or invoice.

13.     The Special Contract Requirements are incorporated by reference as part of the Contract in Article 5, and under their terms PHA agreed to designate a PHA employee to function as Construction Manager to "provide the services necessary to manage and coordinate the construction of [the Project]."

14.     The duties of the Construction Manager, as set forth in the Contract, included, but were not limited to, inspecting San Lucas' work "for conformity to all requirements of this contract" and instructing San Lucas "to take such corrective measures as are necessary to bring [San Lucas's] performance of this contract into conformity with contract requirements."

15.     PHA appointed Ulise Rivera to serve as PHA's construction manager for the Project.

16.     In connection with the Project, San Lucas, as principal, requested that St. Paul issue materialmen's and performance bonds.

17.     Before issuing any bonds to San Lucas, St. Paul required that San Lucas, and its principals, Galo Gutierrez and Urkia Hernandez, individually, sign a General Agreement of Indemnity ("Indemnity Agreement") with St. Paul.  The Indemnity Agreement was executed on June 20, 1997.

18.     On or about October 16, 1997, St. Paul issued a performance bond on the Project for the benefit of PHA.

19.     On or about October 16, 1997, St. Paul issued a materialmen's bond on the Project for the benefit of all San Lucas's subcontractors and suppliers.

20.     San Lucas submitted multiple payment applications and PHA retained 10% of the progress payments at the outset.

21.     In about March 1999, San Lucas orally requested PHA to reduce the retainage on the Project from ten to five percent, but PHA refused this request.

22.     On or about April 2, 1999, San Lucas requested in writing that PHA reduce the retainage from 10% of the amount of progress payments to 5%.

23.      By December 6, 1999, the date of San Lucas's twenty-third progress payment application, PHA had approved eight change orders for Quadrant B-2 of the Project and eight change orders for Quadrant B-3 of the Project.  The eight change orders for Quadrant B-2 and eight change orders for Quadrant B-3 collectively increased the Contract value to $12,118,877.

24.     By December 6, 1999, according to the twenty-third payment application, San Lucas claimed to have completed work with a total value of $9,850,032.72, or eighty-two percent of the adjusted contract value.

25.     PHA paid a total of $9,357,531.08 to San Lucas.

26.     By December 1999, PHA was aware of certain claims made by San Lucas' subcontractors for payment.

27.     On December 10, 1999, PHA sent San Lucas a written Notice of Intent To Default (Complaint Ex. 8.)

28.     On December 20, 1999, representatives of PHA, San Lucas, and St. Paul had a meeting.

29.     On December 21, 1999, St. Paul sent letters to PHA and San Lucas demanding that PHA refrain from paying out any portion of the remaining contract balance to San Lucas or to anyone else without St. Paul's consent.

30.     On January 13, 2000, PHA issued a Notice of Default to San Lucas.

31.     PHA terminated the Contract with San Lucas on January 24, 2000.

32.     San Lucas failed to complete its work on the Project, and St. Paul, under the performance bond, was required to complete San Lucas' work for the benefit of PHA.

33.     PH and St. Paul entered into a Takeover Agreement dated April 6, 2000, at which time the Contract balance available to St. Paul to complete the work was $2,711,413.84.

34.     Under the terms of the Takeover Agreement, PHA agreed to pay to St. Paul "the remaining Contract Balance" of $2,711,413.84 "plus any amounts for extra work performed."

35.     St. Paul awarded contracts to complete the Project to NDK Construction, Inc. in the aggregate amount of $6,150,000.

36.     The documents listed in section V of this Pretrial Memorandum are admissible in this matter.

Respectfully submitted,

**VENABLE, BAETJER AND HOWARD, LLP**

By:_____
    Paul F. Strain
    James A. Dunbar
    1800 Mercantile Bank & Trust Building
    Two Hopkins Plaza
    Baltimore, Maryland  21201
    (410) 244-7400
    Attorneys for Plaintiff and Counter-Defendant St. Paul Mercury Insurance Company d/b/a The St. Paul Surety

**DEVLIN & DEVINE**

Dated:_____     By:_____
    William J. Devlin, Jr.
    Devlin & Devine
    100 West Elm Street, Suite 200
    Conshohocken, Pennsylvania  19428
    (610) 397-4600

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of May 2003, Plaintiff  St. Paul

Mercury Insurance Company's Pretrial Memorandum were hand-delivered to:

      Denis James Lawler, Esquire
      Daniel E. Rhynhart, Esquire
      Blank Rome Comisky & McCauley, LLP
      One Logan Square
      Philadelphia, PA  19103-6998
      Counsel for Defendant and Counter-Plaintiff
      Philadelphia Housing Authority


                _____
                William J. Devlin