IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : : : | CIVIL ACTION NO. 02-3511 |
| Plaintiff, | : : | |
| v. | : : | |
| PHILADELPHIA HOUSING AUTHORITY, | : : : | |
| Defendant. | : : : | |

## PRETRIAL MEMORANDUM OF DEFENDANT
## PHILADELPHIA HOUSING AUTHORITY

Defendant Philadelphia Housing Authority ("PHA"), by its undersigned counsel, submits this Pretrial Memorandum in accordance with Fed. R. Civ. P. 26 and Local Rule 16.1(c).

## I.    NATURE OF THE ACTION AND JURISDICTION OF THE COURT

Plaintiff St. Paul Mercury Insurance Company ("St. Paul") issued payment and performance bonds to San Lucas Construction Co., Inc. ("San Lucas") for a PHA construction project that commenced in early 1998. After San Lucas was terminated for default in January 2000, St. Paul took over the project and hired a completion contractor to finish the work. Although there was only $2.4 million remaining on the contract balance (and the U.S. Army Corps of Engineers agreed with PHA that the work was 82% complete), St. Paul paid a replacement contractor over six million dollars to complete the remaining

work.  Now, St. Paul seeks to recoup all of the out-of-pocket monies it expended (over $3 million) from PHA.    St. Paul asserts that PHA paid San Lucas for incomplete or deficient work, and improperly reduced the retainage withheld from San Lucas, leaving St. Paul with a diminished contract balance when it took over the contract.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because there is diversity of citizenship and the amount in controversy exceeds $75,000.

## II.  COUNTER-STATEMENT OF FACTS

St. Paul's claims arise out of a Contract for Construction relating to a project owned and managed by PHA, the Richard Allen Homes public housing project ("the Project"). Under the terms of the Construction Contract, San Lucas Construction Co., Inc. ("San Lucas") was to renovate certain existing single-family units and construct or renovate other buildings in the Project, for a fixed price of $11,890,000.  In connection with the Project, San Lucas requested that St. Paul, as surety, issue payment and performance bonds.   In exchange for payment of a $108,588.00 premium, St. Paul issued a Performance Bond and a Materialmen's Bond.

Under the terms of the Construction Contract, PHA was required to make progress payments to San Lucas "approximately every 30 days as the work progresses, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer."  Furthermore, San Lucas was required to submit to PHA periodic progress reports for approval before payment would be made.  By December 6, 1999, San Lucas had submitted to PHA twenty-three payment applications and estimated that eighty-two percent (82%) of the work under the contract was complete, with an

adjusted contract value of $9,850,032.72.  In response to those twenty-three applications, PHA had paid San Lucas a total of $9,357,531.08, which represented eighty-two percent (82%) of the adjusted contract value, less five percent (5%) in retainage.  PHA's decision to pay San Lucas that amount is supported by the U.S. Army Corps of Engineers' representative, who visited the Project monthly, and reported on the percentage of completion to HUD, which had contracted with the Corps to, among other things, make certain that HUD funds were only disbursed on account of work properly completed.  St. Paul alleges that San Lucas had at that time completed "materially less" than eighty-two percent (82%) of the work on the Construction Contract.

The PHA General Conditions also contain a provision providing for retainage, and authorizing the payment to the contractor of one-half of the retainage after half of the work has been completed, as follows:

**Contract Provision for Retainage**

PHA shall follow State Law with regard to retainage.  Ten percent shall be retained until 50% of the contract is completed.  When the contract is 50% completed, one-half of the amount retained by PHA shall be returned to the contractor:

Provided, That the architect or engineer approves the application for payment:  And provided further, That the contractor is making satisfactory progress and there is no specific cause for greater withholding. . . .

St. Paul further asserts that PHA improperly reduced its retainage in violation of the contract.

On January 24, 2000, after St. Paul demanded that PHA stop payment to San Lucas, and after San Lucas abandoned the Project, PHA terminated the Construction Contract with San Lucas.   PHA and St. Paul entered into a Takeover Agreement, after which St. Paul

-3-

engaged a completion contractor to complete the work.  The remaining balance under the Construction Contract at the time of San Lucas' termination was $2,711,413.84.  St. Paul hired a contractor to complete the work for $6,150,000.

St. Paul has filed suit against PHA principally to recoup alleged excess progress payments made by PHA to San Lucas, and for failing to maintain the ten percent (10%) retainage.  St. Paul contends that it should be compensated by PHA as a result of PHA's alleged deviations from the contract payment procedures.

However, St. Paul's bond waives any such right in the event of any forbearance on the part of PHA with respect to San Lucas, as follows, in pertinent part:

> The undersigned Principal Obligor and Surety hereby agree that no . . . forbearance on the part of either the Authority or of the Contractor to the other, either by the grant of an extension of time for the performance of the contract or otherwise, shall be deemed to release the undersigned or either of them, their or either of their heirs, executors, administrators, or assigns, from their liability thereunder, notice to the Surety of any such modification, alteration, extension or forbearance hereby being waived.

Moreover, the PHA General Conditions expressly provide that the failure or refusal of PHA to withhold monies from San Lucas will not effect a release of any of St. Paul's obligations under its bonds.  Here, St. Paul contends that PHA should have withheld monies from San Lucas because, it alleges, work which San Lucas claimed to have completed was either not done at all, or not done in accordance with contractual requirements.

Even if St. Paul could show that PHA had overpaid San Lucas, i.e. that it had failed to withhold monies from San Lucas, that alleged failure cannot have any effect on St. Paul's obligations, as follows:

> The PHA shall not (1) determine or adjust any claims for payment or disputes arising thereunder between the Contractor and its subcontractors or material

-4-

suppliers; or, (2) withhold any moneys for the protection of the subcontractors or material suppliers.  <u>The failure or refusal of the PHA to withhold moneys from the Contractor shall in nowise impair the obligations of any surety or sureties under any bonds furnished under this contract.</u>

Despite this clear contractual language, St. Paul filed a four-count Complaint, demanding money damages from PHA in an amount in excess of $3,000,000.   Although St. Paul has variously described its claim as being in contract (Count I), for negligence (Count III), or as a third party beneficiary of the construction contract (Count IV),  all of these claims are premised on the same allegations of overpayments for deficient work.  As a result, Counts I, III and IV fail for the same reason, <u>i.e.,</u> St. Paul agreed that PHA could forbear from demanding strict compliance with the contract, when it agreed that PHA could extend "forbearance" to San Lucas, "either by the grant of an extension of time . . . <u>or</u> <u>otherwise</u>"; and it could fail or refuse to withhold moneys from San Lucas; all with no effect on St. Paul's liability under its performance bond.

## III.  <u>DAMAGES CLAIMED</u>

PHA denies that St. Paul is entitled to any damages in this action.  Upon resolution of the dispute concerning the actual balance remaining on the contract, which involves the issue in Count II of Plaintiff's Complaint, PHA will pay those funds to St. Paul, in the approximate sum of $115,000.

IV.    **WITNESSES**

A.    **Live Testimony**

During its case-in-chief, PHA reserves the right to call the following witnesses:

| PERSON | SUBJECT OF INFORMATION |
|---|---|
| 1.  James A. Fratoni<br>Former PHA Project Engineer<br>4617 Blagden Avenue NW<br>Washington, DC 20011-3711<br> 301-913-5210 | Liability and damages; expected to testify about his actions on-site during the course of construction, including without limitation his role in reviewing pay estimates from San Lucas; the process for approval of such submissions; preparation of minutes of job meetings; conversations with contractors, other PHA representatives, and the architect, including approval of reduction of retainage; status of completion of construction; St. Paul takeover of Contract and subsequent events, including without limitation notice of default and termination of contractor. |
| 2.  Greg Hampson<br>PHA Project Engineer<br>2012 Chestnut Street<br>Philadelphia, PA  19154 | Liability and damages; may call if needed on same matters as Fratoni. |
| 3.  Timothy S. Trzaska<br>Former PHA Project Engineer<br>14035 Kelvin Ave.<br>Philadelphia, PA 19116 | Liability and damages; may call if needed on same matters as Fratoni, as well as any matters covered at his deposition. |

100847.00610/21158950v1

|   **PERSON**   |   **SUBJECT OF INFORMATION**   |
|---|---|
| 4. Clarence Mosely<br>PHA Project Manager, Capital Projects<br>2012 Chestnut Street<br>Philadelphia, PA 19154 | Liability and damages; expected to testify that he hired Rivera as project manager; worked together with Rivera as a project manager and familiar with his capability; supervised Rivera, Trzaska and Fratoni as Asst. G.M., Construction; preparation of pencil copies of pay estimates by San Lucas, and review by PHA representatives; meeting with representatives of St. Paul in which it refused to act until San Lucas was terminated; status of completion of construction. |
| 5. Lyncoln Trower<br>PHA Contract Administrator<br>2012 Chestnut Street<br>Philadelphia, PA 19154 | Liability and damages; expected to testify about his experience in construction industry for over thirty years; PHA Construction Contract Coordinator starting in April 1999; handled contract modifications and payment requests; familiar with qualifications and experience of S. Maxwell as contracting officer; present when wrong cabinets arrived and were rejected by Rivera; Takeover Agreement; Modifications to the Contract, including Modification No. 11. |
| 6. James Conlin<br>PHA Contracts Administrator<br>2012 Chestnut Street<br>Philadelphia, PA 19154 | Liability and damages; expected to testify about administration of contract within PHA; payment requests and process for approval of pay estimates; Takeover Agreement; Modifications to Contract, including Modification No. 11. |
| 7. Albert J. Novack<br>Former PHA Contracts Director<br>2012 Chestnut Street<br>Philadelphia, PA 19154 | Liability and damages; expected to testify about administration of contract within PHA; payment requests and process for approval of pay estimates; Takeover Agreement; Modifications to Contract, including Modification No. 11. |

100847.00610/21158950v1

| **PERSON** | **SUBJECT OF INFORMATION** |
|---|---|
| 8.  Joyce Freeman<br>PHA Contract Specialist<br>2012 Chestnut Street<br>Philadelphia, PA  19154 | Liability and damages; may call if needed to describe her role in preparation and approval process for pay estimates. |
| 9.  Ramesh V. Panchwagh<br>Former PHA General Manager,<br>Design and Construction<br>2012 Chestnut Street<br>Philadelphia, PA  19154 | Liability and damages; expected to testify to matters consistent with his memo of February 17, 2000, Pl. Exh. 302.  Takeover Agreement; Modifications to Contract, including Modification No. 11. |
| 10.  Vince Mancini<br>PHA Contract Administration<br>2012 Chestnut Street<br>Philadelphia, PA  19154 | Liability and damages; expected to testify about administration of contract within PHA; payment requests and process for approval of pay estimates; Takeover Agreement; Modifications to Contract, including Modification No. 11. |

| **PERSON** | **SUBJECT OF INFORMATION** |
|---|---|
| 11. Larry Woods<br>Former PHA HOPE VI<br>Program Manager<br>515 W. Chelten Ave.<br>Apt. 1008<br>Philadelphia, PA 19144 | Liability and damages; expected to testify that he had office on-site and was present on a daily basis through Oct. 1998, then less often; description of HOPE VI; projects; responsibilities as HOPE VI Program Manager; supervised Project Manager and Project Engineers; prior experience with managing construction projects; familiar with qualifications and knowledgeability of Rivera; work performed by contractors, progress and status of completion of work on the Project; San Lucas' advance purchase of materials stored on site and damages by workers and elements before time for installation in project; participated in inspection of work by San Lucas and disallowed payments for, e.g., studs which were only screwed in at the top, and later snap-on studs, and therefore not complete; refused payment for drywall installed which improperly covered up electrical outlets; rejected nonconforming kitchen cabinets; St. Paul's refusal to take any action until PHA issued San Lucas a formal notice of default; his desire that St. Paul would assist San Lucas in completion of the contract; St. Paul takeover of contract and subsequent events, including notice of default and termination of contractor. |
| 12. L. Anthony Brown<br>Former PHA HOPE VI Representative<br>4234 S. 50th Street<br>Philadelphia, PA 19143 | Liability and damages; expected to testify that he worked for PHA from 1973 to 2001; work performed by contractors, progress and status of completion of work on the Project; familiar with Rivera as a talented and experienced construction expert; familiar with Rivera's forbearance with San Lucas; St. Paul takeover of contract and subsequent events, including notice of default and termination of contractor. |

| **PERSON** | **SUBJECT OF INFORMATION** |
|---|---|
| 13.  Michael Leithead<br>PHA Sr. Executive Director<br>2012 Chestnut Street<br>Philadelphia, PA  19154 | Liability and damages; expected to testify about approval of pay estimates; reduction in retainage; any matters covered at his deposition. |
| 14.  Dave Stembel<br>Wallace Roberts & Todd<br>260 South Broad St<br>Philadelphia, PA 19102-5021 | Liability and damages; expected to testify about his actions as architect throughout the course of planning and construction of the project, in particular with respect to the percentage of completion by San Lucas, the satisfactory nature of its work, and the basis for reduction of the retainage. |
| 15.  Galo Gutierrez<br>President, San Lucas<br>534 South 15th Street<br>Phila., PA 19146 | Liability and damages; expected to tesify about his actions as principal of San Lucas, its construction activities, the percentage of completion at the time of termination, preparation and submission of pay estimates, his interaction with PHA representatives, in particular Mr. Rivera, actions of St. Paul, his willingness to complete the project, his claims against PHA and St. Paul, and the settlement of those claims. |
| 16.  Clinton Biddle<br>San Lucas<br>534 South 15th Street<br>Philadelphia, PA  19146 | Liability and damages; may call if need arises on same issues as Mr. Galo Gutierrez. |
| 17.  George Gomez<br>Foreman, San Lucas<br>534 South 15th Street<br>Philadelphia, PA  19146 | Liability and damages; may call if need arises on same issues as Mr. Galo Gutierrez, as well as payments from NDK to affiliate of Kahan based on payments from St. Paul to NDK. |

| **PERSON** | **SUBJECT OF INFORMATION** |
|---|---|
| 18. Walter J. Logan<br>President<br>The Delta Organization, Inc.<br>Trinity Corporate Center<br>72 East Swedesford Road, Suite 214<br>Malvern, PA 19355-1488 | Damages; expected to testify with respect to his bid for the completion contract, its acceptance by St. Paul, his efforts to obtain bonding, and the reasonable cost of completion. |
| 19. Douglas S. Hansen<br>Vice President<br>Atlantic Underwriting Agency, Inc.<br>320 King of Prussia Road<br>Radnor, PA 19087 | Damages; expected to testify about his efforts to obtain bonding for Delta, interaction and communications with Delta, St. Paul and St. Paul's counsel. |
| 20. Peter Iwaniw<br>U.S. Army Corps of Engineers<br>Philadelphia District<br>Wanamaker Building<br>100 Penn Square East<br>Phila., PA 19107-3390 | Liability and damages; expected to testify about his actions as representative of the U.S. Corps of Engineers, in particular with respect to the contract between HUD and the ARMY; the documents defining that relationship and the scope of his duties, his inspection reports, his opinion on the percentage of completion at the time of termination of San Lucas, and the knowledgeability of Mr. Rivera as Project Manager. |
| 21. Cyryl Edwards<br>De Nofa Construction<br>1137 E. Venango Street<br>Philadelphia, PA 19134 | Liability and damages; may call if the need arises to testify with respect to his stage of completion and its relationship to San Lucas' stage of completion. |
| 22. Leonard Nucero, Jr.<br>Jack Balawich<br>Nu-Mor Electric<br>2201 Hunter Road<br>Philadelphia, PA 19134 | Liability and damages; may call if the need arises to testify with respect to his stage of completion and its relationship to San Lucas' stage of completion. |

100847.00610/21158950v1

| **PERSON** | **SUBJECT OF INFORMATION** |
|---|---|
| 23.  Jim Gory<br>Joe Mastrangelo<br>James J. Gory Mechanical<br>Contracting, Inc.<br>4692 York Road<br>P.O. Box 580<br>Buckingham, PA  18912 | Liability and damages; may call if the need arises to testify with respect to his stage of completion and its relationship to San Lucas' stage of completion. |
| 24.  Alan J. Ross<br>Richard Widmeier<br>Ross-Araco Corporation<br>4110 Butler Pike<br>Suite A-105<br>Plymouth Meeting, PA  19462 | Liability and damages; may call if the need arises to testify with respect to his stage of completion and its relationship to San Lucas' stage of completion. |
| 25.  Bob Kahan<br>Contract Completion, Inc. ("CCI")<br>33 Rock Hill Road<br>Bala Cynwyd, PA  19004 | Damages; may call if the need arises with respect to financial arrangements between his company CCI, his other companies, and NDK. |
| 26.  David Kemenash<br>NDK Contractors, Inc. ("NDK")<br>1512 E. Wheat Road<br>Vineland, NJ 08360 | Damages; may call if the need arises with respect to financial arrangements between Kahan, CCI, Kahan's other companies and NDK, as well as to various judgments, convictions and bankruptcies of NDK and its principals. |
| 27.  Robert Seals<br>Michael Saulsbury<br>Marsh USA, Inc.<br>1255 23rd Street, NW<br>Suite 400<br>Washington, D.C.  20037 | Liability and damages; see report filed simultaneously herewith. |

### B.    Deposition Testimony

During its case-in-chief, PHA reserves the right to present the testimony of the following witnesses by deposition, and, with respect to Ms Maxwell, by videoconference or live in court:

| PERSON | SUBJECT OF INFORMATION |
|---|---|
| 1.  Ulise Rivera (deceased)<br>    PHA Project Manager | Liability and damages; Plaintiff has indicated that it intends to use designated portions in its case in chief, to which PHA has no objection.  PHA does not intend to offer any additional portions. |
| 2.  Sheila A. Maxwell<br>    Former PHA Contracting Officer<br>    465 Canyon Oaks Dr.<br>    Oakland, CA 94605-3842 | Plaintiff has indicated that it intends to use designated portions in its case in chief, to which PHA has stated its objections below. PHA does not intend to offer any additional portions, other than the cross-examination described in the objections below. |
| 3.  Christine Alexander, Esquire<br>    Plaintiff St. Paul | Liability and damages; deposition at page 23 lines 14 to 24; page 25, lines 3 to 6; page 24 line 15 to page 25 line 9; page 35 lines 4 to 9; page 35 line 22 to page 36 line 8; page 54 lines 11 to 14; page 56 line 17 to page 57 line 17; page 61 line 5 to line 24; page 62 line 22 to page 63 line 6; page 64 lines 9 to 17; page 65 lines 4 to 19; page 67 line 7 to page 68 line 7; page 90 lines 13 to 24; page 102 line 11 to page 103 line 10; page 103 line 16 to page 105 line 9; page 106 line 20 to page 107 line 16; page 114 lines 9 to 13; page 142 lines 5 to 17; page 143 line 12 to page 144 line 1; page 144 line 22 to page 145 line 20; page 146 line 1 to page 147 line 1; page 147 lines 15 to 20; page 154 line 15 to page 155 line 6; page 157 line 4 to page 159 line 17; |

Defendant objects to the following portions of depositions designated by St. Paul, for the reasons stated:

1.      **Michael J. Leithead**

Page 6 line 13 to page 7, line 1 (irrelevance of identities of plaintiffs in former actions in which witness was deposed)

Page 46 line 5 (mistaken "never")

Page 49 line 15 to page 52 line 6 (irrelevant and inflammatory questions with respect to shredders at PHA)

Page 70 line 6 to page 76 line 7 (contract is best evidence of requirements with respect to architect or engineer approval)

Page 81 line 21 to page 84 line 6; and page 85 line 3 to page 86 line 21; page 91 line 11 to page 93 line 3; page 103 lines 19-23; (irrelevance of timeliness of completion as of a date one year prior to termination)

Page 110 line 2 to page 126 line 3; page 127 line 7 to page 132 line 15; page 145 line 5 to page 146 line 9 (question of general contractor's failure to pay subcontractors is explicitly stated to not affect surety's liability on bonds)

Page 168 line 12 to page 169 line 18 (past payment by PHA for work not done on other unrelated contract over thirteen years ago not relevant)

2.      **Sheila A. Maxwell**

Page 22 lines 8 to 11, first word (no question);

Page 40 lines 19 to 22 (missing "else");

Page 78 line 6 ("ward" should be "award");

Page 81 line 25 to page 82 line 1 ((comment of counsel);

Page 83 lines 15 to 19 (misleading and mistaken; likely to confuse jury);

Page 82 line 13 to page 84 line 3; page 84 lines 7 to 13; page 84 line 24 to page 85 line 24; page 86 line 24 to page 89 line 20 (remote in time);

Page 123 line 20 to page 128 line 3; page 128 line 5 contains a mistaken reference to three "years"; page 129 line 11 to page 135 line 23 (question of general contractor's failure to pay subcontractors is explicitly stated to not affect surety's liability on bonds);

PHA further objects to use of the deposition testimony of this witness unless the cross-examination section, from page 162 line 8 to page 164 line 23, is included.

## V.    **EXHIBITS TO BE OFFERED AT TRIAL**

During its case-in-chief, PHA reserves the right to offer the following exhibits:

1.    Contract Agreement between PHA and San Lucas (including all component parts identified in Article 5);

2.    Contract Modifications Nos. 1-11;

3.    Contract Change Order Log;

4.    General Agreement of Indemnity between St. Paul and San Lucas, Gutierrez, Hernandez;

5.    Performance Bond of the St. Paul Mercury Insurance Company issued on behalf of San Lucas Construction Company, Inc., October 16, 1997;

6.    Materialmen's Bond of the St. Paul Mercury Insurance Company issued on behalf of San Lucas Construction Company, Inc., October 16, 1997;

7.    U.S. Army Corps of Engineers Construction Management Reports, Physical Inspection Reports, Contract Administration Reports for HUD, 4/98–1/01, with attachments;

8.      Memorandum of Agreement between the Department of Housing and Urban Development and the Department of the Army, effective September 24, 1993;

9.      Amendment No. 1 to Memorandum of Agreement between the Department of Housing and Urban Development and the Department of the Army, effective September 24, 1993;

10.     Implementing Instructions: Guidance for Executing the Memorandum of Agreement between The Department of Housing and Urban Development and The Department of the Army, effective January 4, 1994;

11.     Implementing Instructions:  Guidance for Executing the Memorandum of Agreement between The Department of Housing and Urban Development and The Department of the Army, effective August 31, 1998;

12.     HUD Work Plan for Army Corps of Engineers;

13.     Notice from the U.S. Department of Housing and Urban Development, Office of Public and Indian Housing, Notice PIH 98-53(HA), issued October 28, 1998, expires September 30, 1999;

14.     Notice from the U.S. Department of Housing and Urban Development, Office of Public and Indian Housing, Notice PIH 99-50(HA), issued December 8, 1999, expires November 30, 2000;

15.     HUD Work Orders, Nos. 97-02, 98-03, 99-03-Q1, 99-03-Q2, 99-03-Q3, 99-03-Q4, 2000-02-Q1, 2000-02-Q2, 2000-02-Q3, 2000-02-Q4;

16.     Periodic Estimates for Partial Payment submitted by San Lucas, Nos. 1-24, with attachments (Schedule of Amounts for Contract Payments, Certification of Contractor, Progress Payment Requests, Payment Request Approval and Tracking Form);

17.     Periodic Estimates for Partial Payment submitted by Ross-Araco Corp., Nos. 1-24, with attachments;

18.     Periodic Estimates for Partial Payment submitted by James J. Gory Mechanical Contracting, Inc., Nos. 1-24, with attachments;

19.     Periodic Estimates for Partial Payment submitted by Nu-Mor Electric, Nos. 1-24, with attachments;

20.     Periodic Estimates for Partial Payment submitted by De Nofa Construction, Nos. 1-24, with attachments;

21.     PHA PE Register, through PE 27;

22. PHA Richard Allen Homes Daily Progress Reports and Daily Field Reports;

23. PHA Richard Allen Homes Minutes of Job Progress Meetings (weekly);

24. PHA Richard Allen Homes Monthly Construction Reports;

25. April 6, 2000 Takeover Agreement between PHA and St. Paul, with attachments;

26. Photographs of Project (SL 36-60);

27. Videotapes of Project (PHA SP 26267-26276);

28. San Lucas Preliminary Cost-Loaded CPM Schedule

29. October 16, 1998 Status Inquiry from St. Paul to PHA, showing 35% of contract amount completed;

30. April 2, 1999 letter from G. Gutierrez to Rivera re: request that PHA reduce its retainage on the project from 10% to 5%;

31. April 7, 1999 letter from Rivera to G. Gutierrez, San Lucas: PHA refused to reduce the retainage because it was "very uncomfortable" due to the many contract issues that remained unresolved, including untimely performance;

32. April 19, 1999 notation of U. Rivera ("Approved") on April 2, 1999 letter from G. Gutierrez re: request that PHA reduce its retainage on the project from 10% to 5%;

33. August 10, 1999 list of attendees at meeting of PHA, San Lucas and St. Paul;

34. August 23, 1999 letter from Paula Ilkhanoff, Esquire, St. Paul, to K. Hubbard at PHA re: confirming result of 8/10/99 meeting that she attended: no claim against bond, San Lucas will submit a recovery schedule, and parties will continue to work toward amicable resolution of issues and successful completion of project;

35. September 14, 1999 letter from G. Gutierrez to S. Maxwell re: submission of signed "Certification for Progress Payment" and request for prompt processing of Payment Request No. 20, to allow for payment to subcontractors and alleviate some of the pressures on San Lucas;

36. December 8, 1999 inter-office memo from U. Rivera to S. Maxwell, PHA Contract Administration, re: request to put surety on notice due to San Lucas' failure to maintain schedule, with attachments;

37. December 10, 1999 PHA Notice of Intent to Default, directed to San Lucas;

-17-

38.    December 16, 1999 letter from M. Roberts, Director, Office of Public Housing, HUD, to Carl R. Greene, Executive Director, PHA, re: interim inspection by U.S. Army Corps of Engineers (Report #2, 11/15/99);

39.    December 17, 1999 letter from Sheila Maxwell to Alexander, St. Paul, re: change of meeting date;

40.    December 20, 1999 Meeting Attendance Sheets (2pp.);

41.    December 21, 1999, letter from Christine Alexander, Esquire, St. Paul, to PHA, demanding that PHA refrain from paying out any portion of the remaining contract balance without the express written consent of St. Paul;

42.    December 21, 1999, letter from C. Alexander to G. Gutierrez, San Lucas, requesting that San Lucas provide documentation in support of its defenses to numerous subcontract payment bond claims; St. Paul notified San Lucas that, in light of the numerous issues regarding the project, it had retained an accountant and an engineer to evaluate the project;

43.    January 3, 2000 San Lucas "Analysis of the Schedule of Values";

44.    January 10, 2000 San Lucas "Work in Place History Progress Payment Request Through PE 24";

45.    January 10, 2000 letters from G. Gutierrez to U. Rivera and C. Alexander re: St. Paul's "surprise letters" of December 21, 1999; San Lucas was "frozen" because St. Paul had prohibited PHA from paying San Lucas' invoices; San Lucas could no longer continue to provide labor and materials without payment from PHA; San Lucas would cease all work that afternoon and maintain site security and supervision until the following day;

46.    January 12, 2000 letter from G. Gutierrez to U. Rivera re: San Lucas will maintain site security until January 13, 2000, and site supervision until January 14, 2000;

47.    January 13, 2000 letter from G. Gutierrez to C. Alexander re: St. Paul prematurely froze funds due to San Lucas unilaterally, without confirming its facts; questioning the legitimacy and extent of subcontractor payment bond claims;

48.    January 13, 2000 PHA Notice of Default to San Lucas;

49.    January 13, 2000 letter from G. Gutierrez to C. Alexander re: response to January 12, 2000 letter;

50.    January 14, 2000 letter from Debra Sandifer, Esquire, PHA, to C. Alexander re: San Lucas default; request that St. Paul ensure the performance of the San Lucas contract;

51.    January 18, 2000 letter from G. Gutierrez to PHA re: request for meeting with PHA and St. Paul;

52.    January 18, 2000 St. Paul Technical Consultant Confirmation of Engagement with CCI (Kahan);

53.    January 18, 2000 letter from C. Alexander to PHA re: St. Paul's consent required for all contract payments; utilization of joint checks;

54.    January 20, 2000 letter from G. Gutierrez to PHA re: request for meeting with PHA and St. Paul;

55.    January 24, 2000 PHA Notice of Termination directed to San Lucas;

56.    January 24, 2000 San Lucas Construction Progress Report (draft);

57.    January 28, 2000 letter from San Lucas to PHA and St. Paul re: termination of contract and actions of Bob Kahan;

58.    January 31, 2000 San Lucas "Work to be completed in Quadrant B-3" and "Work to be completed in Quadrant B-2" lists;

59.    February 1, 2000 letter from G. Gutierrez to C. Alexander re: St. Paul's directions freezing all progress payments;

60.    February 2, 2000 letter from G. Gutierrez to C. Alexander re: St. Paul's decision to "arbitrarily and unilaterally" take over the project;

61.    February 3, 2000 letter from M. MacBean, Trauner Consulting Services, re: communications with Kahan re: strategy for completing work at Richard Allen Homes; Trauner is positioned to provide assistance to CCI on an as-needed basis;

62.    February 9, 2000 letter from T. Trzaska, PHA, to C. Ruck, St. Paul, re: site security fence is poorly maintained and general lack of security on site; site security is responsibility of St. Paul;

63.    February 14, 2000 facsimile transmission from NDK to C. Alexander, attaching invoice directed to B. Kahan re: $48,950 invoice for work performed at Richard Allen Homes ("OK" notation from C. Alexander dated 2/14/00);

64.     February 16, 2000 letter from G. Gutierrez, San Lucas, to C. Alexander re: "your actions precipitated PHA to fire me . . . ."; with attachments: Index of Specifications; Work to be Completed in Quadrant B-3; "Cost to Complete as of the Termination Date of January 27, 2000";

65.     February 17, 2000 PHA Inter-Office Memo from U. Rivera to R. Panchwagh re: Estimate for Work to be Completed Under PHA Contract #9589, with attachments;

66.     February 17, 2000 PHA Inter-Office Memo from U. Rivera to R. Panchwagh re: Explanation of Estimate for Work to be Completed Under PHA Contract #9589, with attachments (PHA SP 4659-4730);

67.     February 18, 2000 PHA Inter-Office Memorandum from R. Panchwagh to M. Leithead re: Richard Allen Cost Estimate;

68.     February 21, 2000 facsimile transmission from C. Alexander to Central Security Agency, with Central Security Agency Service Authorization and Terms of Service, to provide security at Richard Allen Homes;

69.     February 24, 2000 submission from NDK to St. Paul re: Schedule of Values for Items to be Completed in Quadrant B-3, Schedule for Completion of B-3 and Lump Sum Bid to Complete Quadrant B-2 ($5,400,000); Total Bid $6,680,000;

70.     March 10, 2000 letter from G. Gutierrez to C. Alexander re: total cost of $1,945,137.55 to complete entire project; separate cost to complete for Quadrant B-3 ($154,468) and B-2 ($1,790,671); with attached revised "Cost to Complete" chart segregated by PHA's Index of Specifications;

71.     March 15, 2000 letter from Alexander, St. Paul, to San Lucas re: response to March 13, 2000 letter;

72.     March 16, 2000 letter from San Lucas to Alexander, St. Paul, re: response to March 15, 2000 letter; St. Paul's actions in freezing San Lucas' funds;

73.     March 17, 2000 letters from C. Alexander to various potential bidders re: invitation to bid on Quadrant B-2;

74.     March 17, 2000 letter from David Lebor, Esquire, to Andrew Ruck, Esquire, re: mark-up of the revised Takeover Agreement (with enclosure);

75.     March 21, 2000 facsimile transmittal sheet from Andrew Ruck, Esquire, to David Lebor, Esquire, re: black line changes to Takeover Agreement (with attachment);

76. March 21, 2000 letter from M. Roberts, Director, Office of Public Housing, HUD, to Carl R. Greene, Executive Director, PHA, re: interim inspection by U.S. Army Corps of Engineers (Reports #3 and 4, 12/28/99 and 2/2/00);

77. March 31, 2000 Proposal Form from NDK to C. Alexander, to complete Quadrant B-2 for $5,750,000;

78. March 31, 2000 letter from K. Logan, Delta Organization, Inc., to C. Alexander, re: proposal for B-2 section of Project; Delta had recently acquired a new surety company, St. Paul;

79. March 31, 2000 Proposal Form from Delta to C. Alexander, to complete Quadrant B-2 for $3,378,347;

80. March 31, 2000 letter from C. Alexander to NDK re: St. Paul has accepted NDK's bid to complete Quadrant B-3 for $750,000;

81. Completion Contract between St. Paul and NDK (undated);

82. April 4, 2000 letter from C. Alexander to San Lucas re: response to March 16, 2000 letter;

83. April 5, 2000 facsimile transmission from C. Alexander to D. Hansen, Atlantic Underwriting, re: request for performance and payment bonds from a surety with "A-" or better rating by April 7, 2000;

84. April 7, 2000 letter from A. Ruck to K. Logan, Delta, re: St. Paul has accepted Delta's bid to complete Quadrant B-2 for $3,378,347; request for payment and performance bonds and insurance;

85. April 11, 2000 letter from A. Ruck to K. Logan, Delta, re: St. Paul has accepted Delta's bid to complete Quadrant B-2 for $3,378,347; enclosing copies of Completion Contract to be signed; St. Paul has received Delta's insurance information;

86. April 14, 2000 letter from G. Gutierrez to C. Alexander re: response to April 4, 2000 letter; St. Paul's interference with San Lucas' contract with PHA;

87. April 14, 2000 letter from A. Ruck to Edward Seglias, Esquire, re: St. Paul has not received signed Completion Contract or bonds from Delta; if not received by April 19, St. Paul must award to another offeror;

88. April 18, 2000 facsimile transmission from D. Hansen, Atlantic Underwriting, to C. Alexander re: possible structure for providing a bond to Delta; "we appreciate Delta giving us some additional time for the bid review to take place";

89.    April 21, 2000 letter from S. Maxwell to C. Alexander re: request for construction progress schedule on Quadrant B-3 and status of selection of contractor for B-2;

90.    April 24, 2000 letter from A. Ruck to D. Kemenash, NDK, re: St. Paul has accepted NDK's bid to complete Quadrant B-2 for $5,400,000; St. Paul must furnish payment and performance bonds;

91.    April 25, 2000 letter from A. Ruck to Edward Seglias, Esquire, re: St. Paul terminates the contract between St. Paul and Delta for failure to sign the contract and to provide bonds;

92.    April 25, 2000 letter from G. Gutierrez to C. Alexander re: following up letter of April 14, 2000; St. Paul's plans for completion of project;

93.    April 25, 2000 Payment and Performance Bonds issued by American Manufacturers Mutual Insurance Co. to NDK for $5,400,000, with attached Financial Statement dated 12/31/99;

94.    May 1, 2000 letter from C. Alexander to S. Maxwell re: NDK is completion contractor for B-2 and B-3;

95.    May 1, 2000 letter from U. Rivera to C. Alexander, enclosing PE # 24, for work completed by San Lucas during the period 12/7/99-1/3/00 but not paid by PHA, per St. Paul's request;

96.    May 2, 2000 letter from D. Hansen, Atlantic Underwriting, to W. Logan, Delta, re: pleased to inform that Atlantic Underwriting has reached an agreement in principle to provide Delta bonds for the Project subject to listed conditions;

97.    May 3, 2000 letter from W. Logan to C. Alexander re: enclosing Atlantic Underwriting's commitment for furnishing bonds for the project;

98.    May 4, 2000 letter from A. Ruck to W. Logan re: St. Paul terminated Delta contract on April 25;

99.    May 5, 2000 letter from M. Roberts, Director, Office of Public Housing, HUD, to Carl R. Greene, Executive Director, PHA, re: interim inspection by U.S. Army Corps of Engineers (Reports #5 and 6, 3/15/00 and 4/20/00);

100.   May 8, 2000 letter from A. Ruck to American Manufacturers Mutual Insurance Co. re: inquiring whether bonds issued to NDK for Quadrant B-3 for $750,000 are in full force and effect;

101.    July 25, 2000 letter from G. Gutierrez, San Lucas, to C. Alexander, St. Paul, re: concern that St. Paul may have placed contracts in the amounts of $750,000 for work not worth more than $100,000 (Quadrant B-3) and $5.7 million for work not worth more than $1.8 million (Quadrant B-2);

102.    December 11, 2000 facsimile transmission from T. Trzaska to C. Alexander re: request to sign attached Modification No. 11 to delete work;

103.    December 11, 2000 facsimile transmission from C. Alexander to T. Trzaska re: returning signed modification;

104.    Contract Modification No. 11, dated December 11, 2000, signed by C. Alexander, St. Paul, with attachments;

105.    Memorandum of Negotiation for Contract Modification No. 11;

106.    Progress Payment Request No. 32, reflecting $83,060 item not completed;

107.    February 11, 2001 Memorandum from L. Trower, PHA, to C. Alexander re: Modification Nos. 9, 10, 11 will need to be done over to correct mathematical errors;

108.    June 26, 2001 letter from B. Kahan to C. Alexander, enclosing invoice for services relating to project;

109.    Summary of Payments to San Lucas Pursuant to PRE 1006;

110.    Jefferson Bank records for San Lucas account (Statements of Account, copies of checks);

111.    First Republic Bank records (and any additional records received pursuant to subpoena);

112.    Hudson United Bank records (when received pursuant to subpoena);

113.    San Lucas Cost Control Report;

114.    Complaint, San Lucas Construction Company, Inc. v. St. Paul Mercury Ins. Co., et al., Feb. Term, 2000, No. 002190, Philadelphia Court of Common Pleas;

115.    Settlement Agreement dated November 6, 2002 between St. Paul Mercury Insurance Company on the one hand, and Galo Gutierrez, San Lucas Construction Company, Inc., and Urkla Hernandez;

116.    Summary of Data from US Army Corps of Engineers Construction Management Reports for HUD (2 pages);

-23-

117.    Docket entries and complaint in USA for the use and benefit of J & G Acoustical Co. v. NDK General Contractors, Inc and RLI Insurance Co., No. 01-CV-621 (D. Del.), filed January 3, 2001

118.    Docket entries and complaint in USA for the use and benefit of Wyoming Concrete Inc., Inc. v. NDK General Contractors, Inc. et al., No. 98-CV-499 (D. Del.), filed August 21, 1998

119.    Amended Judgment in a Criminal Case, United States v. David Kemenash, No. 90-573(AET) (D. N.J.), filed August 16, 1992 reflecting a jury verdict of conviction on seven counts of false statements on loan application, one count of bribery of federal agent to procure loan, one count of conspiracy to make false statements on loan application and one count of interstate travel to promote bribery.

120.    Docket entries, Notice of Motion to Vacate Sentence and Stipulation approved by the court on January 21, 1997 reducing Kemenash's sentence from 57 to 45 months of incarceration in David Kemenash v. United States, Civil No. 94-4264(AET) (D. N.J.).

121.    Schedule of Money Paid to San Lucas After Depositing the Retainage Amount (in order by date check was written)

122.    Schedule of Money Paid to San Lucas After Depositing the Retainage Amount (in order by date Check cleared)

## VI.    ESTIMATED NUMBER OF DAYS FOR TRIAL

PHA estimates that it will take 4 days to put on its case-in-chief; since plaintiff has estimated 6 days for its case, it would follow that the trial will take a total of 10 days.

## VII.    SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS, AND OTHER MATTERS

### A.    Legal Issues

#### 1.    St. Paul's Waiver of Claims

PHA filed a motion to dismiss Counts I, III and IV of St. Paul's Complaint at the outset of this case, which the Court denied, without prejudice to PHA's right to reassert the argument at summary judgment.    PHA has filed today such a summary judgment motion.    St. Paul seeks to be discharged from its liabilities under its performance bond,

supposedly because PHA advanced excessive monies to the contractor for incomplete or deficient work.  However, under its performance bond, St. Paul waived its right to be released from liability in the event of any forbearance by PHA in favor of San Lucas.  St. Paul alleges such forbearance by PHA, in that PHA supposedly failed to withhold monies from the contractor.  Furthermore, under the plain language of the HUD General Conditions of the construction contract, which are incorporated into the bond by reference, the failure or refusal of PHA to withhold monies from the contractor cannot affect St. Paul's obligations under its bonds.

### 2.    St. Paul's Negligence Claim Should Be Dismissed

PHA's motion for judgment on the pleadings also seeks dismissal of Count III of St. Paul's Complaint.  St. Paul has no basis to assert that cause of action for negligence when the "gist of the action" is clearly the alleged non-performance of a contract.  St. Paul's negligence count is merely a re-casting of its other causes of action, which are primarily based upon the contractual relations of the parties.

### 3.    Motion *in Limine*

PHA has filed a motion *in limine* to preclude the expert testimony of the two experts for whom St. Paul has provided reports in its pretrial memorandum.

### B.    Stipulations

PHA agrees to St. Paul's proposed stipulations, Nos. 1-7 11, 13-21, 24-25, 27-33, and 35.

C.    **Objections to Exhibits Identified by St. Paul**

PHA objects to the admissibility of the following documents identified by plaintiff in its Pretrial Memorandum:  4, 7, 9, 10, 31, 39, 42, 44, 66, 73, 77-78, 82, 84, 96, 101-04, 106, 115-16, 156-57, 159, 164, 168, 178, 180, 201, 206, 217, 238-40, 246, 251, 253, 259, 261, 265-66, 292, 307, 312, 321, 327, 331, 334, 350, 399, 531, 548, 549.

PHA reserves the right to object to additional of plaintiff's proposed exhibits in the event that the court were to grant summary judgment in favor of defendant on any of the claims set forth in the complaint, since documents which might arguably be relevant to one or more of the claims pending at this time might not be relevant to claims remaining at the time of trial.  For example, St. Paul has identified many proposed exhibits which evidence claims by subcontractors of San Lucas; since PHA was expressly prohibited by section 27(k) of the General Conditions from getting involved in disputes between San Lucas and its subcontractors, all of those proposed exhibits should be excluded as irrelevant.

St. Paul has listed as an exhibit practically every notice from PHA to San Lucas over the entire period of its construction activity.  PHA objects to any document which merely evidences a complaint by PHA directed to San Lucas about some aspect of its activities on the Project, except those within a month of the reduction in the retainage.  PHA suggests that it would be helpful if the Court would set a date prior to which complaints by PHA to San Lucas are not relevant to the claims herein.  Since the principal issue has to do with percentage completion, as compared to payments made, <u>at the end of San Lucas' performance in January 2000</u>, PHA believes that such correspondence throughout 1998, and much of 1999 is irrelevant, and likely to unnecessarily extend the trial.

-26-

St. Paul identified exhibits 1 to 549, but has chosen not to identify any documents for 286 of them.

### D.    PHA E-Mail

During the course of document production, in the course of which PHA produced tens of thousands of pages of documents to St. Paul, St. Paul inquired as to whether there were, in addition to the paper documents produced, e-mails relating to the Project.  On Friday afternoon, June 20, 2003, counsel for PHA were advised that there are such e-mails, but have not yet had an opportunity to determine the manner of collection, the number of e-mails involved, or the burden involved in reviewing such communications for relevance and privilege.

No e-mails were included in documents produced by St. Paul to PHA.

BLANK ROME LLP

BY:    _____
        DENIS JAMES LAWLER
        DANIEL E. RHYNHART
        One Logan Square
        Philadelphia, PA 19103-6998
        (215) 569-5500

        Attorneys for Defendant,
        Philadelphia Housing Authority

Dated:  June 23, 2003

## CERTIFICATE OF SERVICE

I, Lisa F. Troilo, hereby certify that I am an employee of Blank Rome LLP, as secretary to Denis James Lawler, Esquire, and that a true and correct copy of the foregoing Pretrial Memorandum of Defendant Philadelphia Housing Authority was served this 23rd day of June, 2003 by Federal Express upon counsel of record as noted below:

> James Dunbar, Esquire
> Venable Baetjer & Howard, LLP
> 1800 Merchantile Bank & Trust B
> 2 Hopkins Plaza
> Baltimore, MD  21201-2978
>
> William J. Devlin, Jr., Esquire
> Devlin & Devine
> 100 West Elm Street, Suite 200
> Conshohocken, PA  19428

_____
Lisa F. Troilo