IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY | CIVIL ACTION NO. 02-3511 |
| Plaintiff, | |
| v. | |
| PHILADELPHIA HOUSING AUTHORITY | |
| Defendant. | |

**DEFENDANT PHILADELPHIA HOUSING AUTHORITY'S
RESPONSE TO PLAINTIFF ST. PAUL MERCURY INSURANCE COMPANY'S
<u>MOTION REQUESTING PRETRIAL RULING ON BURDEN OF PROOF</u>**

Plaintiff, St. Paul Mercury Insurance Company ("St. Paul"), has asked this Court to make a pretrial ruling with respect to the burden of proof at trial on the issue of whether St. Paul must show that it was prejudiced by what it contends are overpayments made by the Philadelphia Housing Authority ("PHA") to San Lucas Construction Company ("San Lucas"). St. Paul had issued a performance bond guaranteeing San Lucas' performance on a construction project for PHA.

In its four-page memorandum in support of its motion, St. Paul argues that "no previous decisions of this Court or the Pennsylvania courts decide this issue." PHA respectfully suggests that this issue has been addressed by the Pennsylvania Supreme Court and the United States Court of Appeals for the Third Circuit and that the burden of proof rests with St. Paul.

**I.**   <u>**Pennsylvania law will supply the rule of decision.**</u>

Both parties are in agreement that Pennsylvania law would apply to this dispute between a bonding company which had issued a performance bond for work on a project in the City of

Philadelphia under contract with the Philadelphia Housing Authority.  In addition, at oral argument held October 21, 2002 on the motion to dismiss filed by PHA in this matter, the court confirmed to counsel for both parties that "this case is determined under Pennsylvania law…." [Tr. at 2].

II.     **The Pennsylvania Supreme Court has addressed this issue in a case involving the alleged failure of an owner to withhold retainage.**

In <u>Trustees of Methodist Episcopal Church v. Equitable Surety Co.</u>, 112 A. 551, 269 Pa. 411 (Pa. 1921), a corporate compensated surety, such as St. Paul, contended that the property owner (in the position of PHA in this matter) had relieved the surety of liability "because of a failure on the part of the [owner] to retain 10 per cent of the amount payable to one of the subcontractors, as provided by the contract,…." 269 Pa. at 415.  The <u>Methodist Episcopal Church</u> case held that a corporate compensated surety, such as St. Paul, "will be relieved only if the variance in the terms of the contract is material and <u>worked to its damage</u>;…." <u>Id</u>. (emphasis added).  The court went on to state in language highly relevant to this dispute that:  "where, as here, the payment of the retained percentage was not to the injury of the surety, but really to its advantage, -- because, if the payment had not been made, work on the building would have stopped, to its greater loss, it being responsible for completion, -- it cannot escape liability because of such payment." <u>Id</u>.  In addition, despite the fact that the bond contained a provision that it would be construed strictly as one of suretyship only, the court made clear that, in Pennsylvania at least, as a matter of its declared public policy, bonds of this character "are to be so construed as to protect the obligee,…." <u>Id</u>. at 416.  The <u>Methodist Episcopal Church</u> case was referred to in the article "Reclaiming the Law of Suretyship", 21 S. Ill. U. L. J. 449, 456 n.27 (1997):  "In <u>one well-known case</u>, even an agreement to the contrary left this canon of

2

construction [that such a bond should be construed against the surety and so as to protect the obligee] unaffected." (emphasis added).

The Supreme Court of Pennsylvania has held that the surety must prove prejudice in order to be released from its obligations under a bond. City of Philadelphia v. Fidelity & Deposit Co., 80 A. 62, 63, 231 Pa. 208, 212 (1911); Sokoloff v. Fidelity & Casualty Co., 135 A. 746, 288 Pa. 211 (1927); Butz & Clader v. U.S. Metal Products Co., 99 A. 169, 170, 255 Pa. 53, 55 (1916).

In City of Philadelphia, a paid surety argued that it was released from its obligations under a performance bond by extensions of time granted to the contractors. The Supreme Court of Pennsylvania held that a surety was not released where it failed to allege "material harm actually suffered." City of Philadelphia, 80 A. at 63. The court held:

> We find no direct averment in the affidavits of defense that the surety was actually harmed by the extensions granted to the contractors, and the facts as stated therein are not sufficient in themselves to raise such a presumption. For all that appears, the contractor may have paid every cent of the cash received to other materialmen or mechanics who did work upon the building. In a case of this kind, there is no presumption that the surety company is harmed, the prejudice must be made to appear, and the suggestion of mere contingencies or possibilities is not enough.

Id. (emphasis added). The burden is clearly placed on the surety to come forward with evidence of prejudice.

In Phillips v. American Liability & Surety Co., 162 A. 435, 309 Pa. 1 (1932),[1] the Supreme Court addressed a case in which there was a factual dispute with respect to whether the contractor had been overpaid. In fact, the dispute was rather similar to the fact pattern in this matter: "There was considerable variance in the testimony as to the proportion of the work

---

[1] This case is cited to by the Sixth Circuit in its opinion in Ramada Development Co. v. United States Fidelity & Guaranty Company, 626 F.2d 517 (6th Cir. 1980). Ramada is one of the cases specifically cited to by the Chichester Court in its footnote on burden of persuasion, 2000 WL 1052055 at *14 n.20.

3

completed when [the contractor] quit; the estimates given by different witnesses ranging from 60 percent to 90 percent." 162 A. at 436, 309 Pa. at 5. The lower court had charged the jury in accordance with a point submitted by the surety that if the owner failed to retain in his hands the percentage of the contract price required by the contract, the surety was entitled to a credit for all overpayments. 162 A. at 437, 309 Pa. at 7. Under such instructions, the court held that "the jury, in rendering a verdict for plaintiff in the full amount of his claim, must be considered to have found as a fact that no overpayments were made." 162 A. at 438, 309 Pa. at 10. Since no overpayments were made, the case did not present the issue with respect to burden of proof of damage where overpayments had been made. With respect to prejudice, the court noted that "this departure [paying the contractor without vouchers] from the terms of the contract was really to [surety's] advantage, for, had these payments not been made, work on the building would have ceased at an even earlier date, to the greater loss of the surety responsible for its completion." 162 A. at 438, 309 Pa. at 10.

**III.    The Third Circuit has addressed the relevant Pennsylvania authority.**

The United States Court of Appeals for the Third Circuit in <u>Pennsylvania R. Company v. Fidelity & Deposit Co. of Maryland</u>, 81 F.2d 526 (3d Cir. 1935), has addressed the problem. The Third Circuit cited to <u>Philadelphia v. Fidelity and Deposit Co.</u>, 80 A. 62, 231 Pa. 213 (1911) ("…there is no presumption that the surety company is harmed, the prejudice must be made to appear….") In addition, the Third Circuit cited and quoted from the opinion of the Supreme Court in <u>Sokoloff v. Fidelity & Casualty Co.</u>, 135 A. 746, 288 Pa. 211 (1927). Within that quotation, the Supreme Court of Pennsylvania stated that, to release a surety, there must have been some substantial change in the terms of the contract, and that "'<u>it</u> <u>must</u> <u>prove</u> also that the change is material and prejudicial.'" citing further to the <u>Methodist Episcopal Church</u> case and others. (emphasis added).

4

The Third Circuit then cited to its own opinion in <u>Piel Const. Co. v. Commonwealth of Pennsylvania, to Use of Hendricks</u>, 35 F.2d 265, 267 (3d Cir. 1929), which, following the Pennsylvania holdings, stated that a change in the performance of an assured contract <u>which would relieve a personal surety</u>, which had not consented, "<u>will not relieve a commercial surety unless it shows that it was injured by the change</u>." <u>Id</u>. at 267 (emphasis added). Accordingly, the Third Circuit in the <u>Pennsylvania Railroad</u> case, held that "[i]n view of these holdings and many others that could be cited," the lower court had been in error in granting a non-suit in favor of the surety. "The case should have been proceeded in [sic], and <u>if the surety proved it was damaged by such release and the quantum of such damage, then its liability under the bond was to that extent lessened.</u>" <u>Id</u>. at 529 (emphasis added).

**IV.    Discussion of non-Pennsylvania authority.**

The decision of Magistrate Judge Smith in the <u>Chichester</u> case adverted to the issue of the burden of persuasion, but deferred the question until a later date. <u>North American Specialty Insurance Co. v. Chichester School District</u>, 2000 WL 1052055 at *14 n. 20 (E.D. Pa., July 20, 2000).

    **A.    <u>Gibbs</u> supports PHA's position in this issue.**

Although St. Paul cites <u>Gibbs v. Hartford Accident & Indemnity Co.</u>, 62 So.2d 599 (Fla. 1952), in support of its position, <u>Gibbs</u> actually holds to the contrary. Specifically, the Supreme Court of Florida quoted from, and <u>adopted as the law of Florida</u>, the following: "There can be no injustice <u>in requiring a paid surety</u>, when in the business for profit, <u>to prove that alleged delinquencies or misconduct on the part of the indemnified resulted, not only in damage to the surety, but the extent of such damage</u>." <u>Id</u>. at 604 (emphasis added). The language relied upon by St. Paul (and quoted in its memorandum) does appear in the case, but arises out of the fact

5

that <u>Gibbs</u> was a case in which the owner completed the project, and then sued the surety for his damages. In this case, the surety completed the project, and has now sued the owner seeking damages. In <u>Gibbs</u>, the owner, as plaintiff on retrial, would, of course, be required to prove that the money which he had expended on completion had gone into construction of the house, that the house was constructed in accordance with the plans and specs which had been bonded and, furthermore, that the costs which he incurred to do so were usual, customary and prevailing. It is respectfully submitted that St. Paul has misstated the actual holding of the Supreme Court of Florida in <u>Gibbs</u> on this issue.

      B.      **The <u>Escambia County School Board</u> case is inapposite.**

St. Paul cites to <u>School Board of Escambia County, Fla. v. TIG Premier Insurance Co.</u>, 110 F.Supp.2d 1351, 1354 (N.D. Fla. 2000), suggesting that PHA should bear the burden of proof because St. Paul did not have the opportunity to gather the data necessary to show prejudice. The <u>Escambia County School Board</u> case involved a situation in which the School Board learned that its demolition contractor, Southco, which had been bonded by TIG Premier, had left behind 12,000 cubic yards of demolition debris in deep isolated pits 20 to 30 feet below grade. Without notifying TIG Premier, the School Board issued a change order to the construction contractor building its new school, to remove the material, and simply sought to hold TIG Premier liable for the cost thereof. The School Board admitted that it did not perform its obligation to notify TIG Premier of Southco's breach of the demolition contract. In fact, it did not do so until after the breach had been discovered and cured. Under those circumstances, the court held that the School Board had deprived the surety of an opportunity to evaluate the condition, cure the breach or perform the contract. Accordingly, the performance bond was declared null and void.

6

The Escambia County School Board case bears no resemblance to this case. In this case, both PHA and St. Paul were aware of claims by subcontractors that they were not being paid. As set forth at length in PHA's Motion for Partial Summary Judgment, the PHA/San Lucas contract explicitly prohibited PHA from withholding funds from San Lucas on account of such disputes. Furthermore, because St. Paul was itself receiving claims from unpaid subcontractors, it was on notice with respect to potential problems on this job and had every opportunity to investigate the project.

  C. **This court should follow the reasoning of the Argonaut case.**

Perhaps the most interesting discussion of this problem appears in Judge Posner's decision in Argonaut Insurance Co. v. Town of Cloverdale, 699 F.2d 417 (7th Cir. 1983). Judge Posner set forth the rationale for the pro tanto discharge rule noting, however, that "[b]oth parts of this rationale, however, are questionable," citing to the Arant article from the University of Pennsylvania Law Review in 1932. Id. at 419. Judge Posner explained:

> The principal's default may be and usually is unrelated to any slackening off due to unauthorized advances and may indeed be retarded rather than accelerated by them. And whether the advances increase the surety's risk depends on what the principal did with them; if he used them on the project the amount at risk to the surety may be unaffected.

Id.

Judge Posner referred to the "shaky foundations" of the rule with respect to unauthorized advances. Id. He then explained that Indiana law (unlike Pennsylvania law) on the subject was unclear. Id. at 420. In Argonaut, the underlying contract, like the contract between PHA and San Lucas, specified requirements that the owner was to observe in making prepayments, "but they appear to be for the town's protection rather than anyone else's." Id. As in this case, the contract in Argonaut "contains a good deal of evidence, direct and indirect, that overpayments

7

based on the engineer's estimates were not to affect the town's rights against the surety. It states that 'no payment …, final or otherwise, shall operate to release the Contractor or his Sureties from any obligation upon or under this contract or the Contractor's Bond.'" Id. In fact, where rough estimation is allowed, the Argonaut court held that payment based on an overestimate is not a contract breach at all and is not an alteration of which a surety may complain, citing to Ruckman and Hansen, Inc. v. Contracting & Material Co., Inc., 328 F.2d 744 (7th Cir. 1964).

      Section 27 (b) of the HUD General Conditions directed PHA to make progress payments "on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer." See Complaint, Exhibit 2 at Bates No. 00000771, or Exhibit B to PHA's Motion for Partial Summary Judgment. Section 27 (c) provides that before the first progress payment is made, San Lucas was to furnish, "in such detail as requested by the Contracting Officer, a breakdown of the total contract price showing the amount included therein for each principal category of the work, which shall substantiate the payment amount requested in order to provide a basis of determining progress payments." Id. It was Ulise Rivera's responsibility, as PHA's Construction Manager, to review each Prime Contractor's requests for progress payments and final payment and recommend action thereon "as may be deemed appropriate to PHA." Special Contract Requirements, attached to Complaint as Exhibit 4, paragraph 5 (B)(10), at page D-31. Pursuant to the PHA General Conditions, PHA reserved the "right to withhold payment for deficiency items…." PHA General Conditions attached to Complaint as Exhibit 3, paragraph 25, "Contractor Payment", at page D-9-2. St. Paul's position would turn this right of PHA into an obligation to withhold payments, at the risk of resulting in a reduction of the liability of the bonding company.

100847.00610/21173541v5

As Judge Posner explained, the surety is in the business of insuring construction contracts, and if it was unhappy with the structure for how progress payments were to be made, "it did not have to agree to insure the contract." Id.  Because Argonaut had failed to show actual damages, the Court of Appeals set aside the judgment of the district court, which had entered a directed verdict in favor of Argonaut after the jury had been hung, and instead directed the district court to enter judgment for the balance of the contract price only, "and nothing more." Id. at 421.

## CONCLUSION

St. Paul has a new advertising campaign this year.  As described on its website, the "message is simple – at The St. Paul, we do what we say we will do, no matter what."  The new tagline on St. Paul's ads is "Consider it done".  Again, as explained on the St. Paul website, "[t]hat short phrase tells our … policyholders that they can rely on us to deliver on our commitments….  We keep our word.  In business today, that means something."

St. Paul should be held to the standard which it trumpets in the marketplace.  It should be held fully liable under its performance bond.  It should not be given any reductions in that liability, because it had agreed that that liability would not be affected by any forebearance on the part of PHA in favor of San Lucas, nor by the failure or refusal of PHA to withhold monies from San Lucas.

9

In accordance with the foregoing authority, St. Paul bears the burden of proof concerning the issue of prejudice resulting from PHA's alleged premature payments to San Lucas.

                                      Respectfully submitted,

                                      **BLANK ROME LLP**

Date: _____   BY: _____
                                              DENIS JAMES LAWLER
                                              DANIEL E. RHYNHART
                                              One Logan Square
                                              Philadelphia, PA 19103-6998
                                              (215) 569-5500

                                              Attorneys for Defendant,
                                              Philadelphia Housing Authority

## **CERTIFICATE OF SERVICE**

   I, Lisa F. Troilo, hereby certify that I am an employee of Blank Rome LLP, as secretary to Denis James Lawler, Esquire, and that a true and correct copy of the foregoing Defendant Philadelphia Housing Authority's Response To Plaintiff St. Paul Mercury Insurance Company's Motion Requesting Pretrial Ruling On Burden Of Proof was served this _____ day of July, 2003 by United States First Class Mail, postage prepaid, upon counsel of record as noted below:

James Dunbar, Esquire
Paul Strain, Esquire
Venable Baetjer & Howard, LLP
1800 Merchantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD  21201-2978

William J. Devlin, Jr., Esquire
Devlin & Devine
100 West Elm Street, Suite 200
Conshohocken, PA  19428

                                                        _____

                                                       Lisa F. Troilo