## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY,<br><br>               **Plaintiff,**<br><br>         **v.**<br><br>PHILADELPHIA HOUSING AUTHORITY,<br><br>             **Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:   **CIVIL ACTION NO. 02-CV-3511**<br>:<br>:<br>:<br>:<br>:<br>: |

## DEFENDANT PHILADELPHIA HOUSING AUTHORITY'S
## RESPONSE TO PLAINTIFF ST. PAUL'S MOTION TO COMPEL

Defendant Philadelphia Housing Authority ("PHA"), by its undersigned attorneys, hereby opposes the Motion to Compel of Plaintiff St. Paul Mercury Insurance Company ("St. Paul") on the grounds that it is untimely and that St. Paul has itself failed to produce electronic mail messages relevant to the facts and circumstances of this case.

PHA respectfully requests that the Court deny St. Paul's Motion. Alternatively, PHA respectfully requests that the Court enter an Order that applies equally to <u>both</u> parties, establishing a protocol for retrieving e-mails from <u>each</u> party's electronic data backup system. If PHA alone will be undertaking the burden of retrieving backup tapes and restoring and reviewing e-mails, PHA respectfully requests that the Court shift the cost of this effort to St. Paul, the requesting party.

A form of Order containing a proposed protocol is attached to PHA's Motion to Compel discovery of St. Paul's e-mails, which is being filed concurrently with this Response.

In support of its Response, PHA relies upon the attached Memorandum of Law in Opposition to St. Paul's Motion to Compel, the Affidavit of Michael Tate, Network Administrator of PHA, and the Counter-Certification of Counsel Regarding Good Faith Efforts to Resolve Discovery Dispute.

Dated:  August 8, 2003

Respectfully submitted,

BLANK ROME LLP

By: _____
DENIS JAMES LAWLER
Attorney I.D. No. 17154
CHRISTOPHER A. LEWIS
Attorney I.D. No. 29375
DANIEL RHYNHART
Attorney I.D. No. 78248
One Logan Square
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Defendant*
*Philadelphia Housing Authority*

## CERTIFICATE OF SERVICE

I, Christopher A. Lewis, hereby certify that on this 8th day of August, 2003, I did cause to

be served a true and correct copy of the foregoing Defendant Philadelphia Housing Authority's

Response to Plaintiff St. Paul's Motion to Compel by facsimile and U.S. First Class Mail,

postage prepaid, upon counsel of record as follows:

William J. Devlin, Jr. Esquire
Devlin & Devlin
100 West Elm Street, Suite 200
Conshohocken, PA 19428

Paul F. Strain, Esquire
James A. Dunbar, Esquire
Venable Baetjer & Howard, LLP
18900 Merchantile Bank &Trust B
2 Hopkins Plaza
Baltimore, MD 21201-2978

Christopher A. Lewis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : <br> : <br> : |
| Plaintiff, | : |
| | : |
| v. | :    CIVIL ACTION NO. 02-CV-3511 |
| | : |
| PHILADELPHIA HOUSING AUTHORITY, | : <br> : |
| | : |
| Defendant. | : |
| | : |

### ORDER

AND NOW, this _____ day of August, 2003, upon consideration of Plaintiff St. Paul Mercury Insurance Company's Motion to Compel and Defendant Philadelphia Housing Authority's response thereto, IT IS HEREBY ORDERED that said Motion be, and the same hereby is, DENIED.

BY THE COURT:

_____

Shapiro, S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY | : : : | CIVIL ACTION NO. 02-CV-3511 |
| v. | : : : | |
| PHILADELPHIA HOUSING AUTHORITY | : : : | |

## COUNTER-CERTIFICATION REGARDING GOOD FAITH EFFORTS TO RESOLVE DISCOVERY DISPUTE

I, DENIS JAMES LAWLER, counsel for defendant, Philadelphia Housing Authority, hereby respond to the Certification of Good Faith filed by James A. Dunbar, Esquire in this matter as follows:

1.      It is true that PHA first disclosed the existence of e-mails in its Pretrial Memorandum dated June 23, 2003.  In contrast, St. Paul has consistently denied the existence of any relevant e-mails.  At each time when counsel for St. Paul has given such advice to me, I have advised him that:

a)      It is impossible to imagine that a company such as the St. Paul Mercury Insurance Company does not maintain a system of backup tapes of electronic documents, including deleted e-mails;

b)      That the testimony at deposition of Christine Alexander that such e-mails were not available, did not exist and could not be produced was inherently incredible.  Her testimony was:

> Q.    During the course of this lawsuit
> 19    though, have you done any search of your emails
> 20    or do you know of any search of anyone's emails
> 21    to find communications relating to the plan of

22    action that Saint Paul took?
23            MR. DUNBAR:  Objection.
24            Go ahead.

                    ALEXANDER          50
1             THE WITNESS:  Well, I do recall
2        that at various times in this litigation
3        and prior litigation there were
4        discovery requests and we did those
5        searches at those times.
6    BY MR. RHYNHART:
7    Q.    So there has been a search of emails
8    done?
9    A.    Yes.
10   Q.    Were you able to find anything that was
11   turned over to your attorneys?
12   A.    The only thing that the attorneys would
13   have received would have been when they became
14   involved copies of the file.  It's not
15   necessarily a practice or a custom to print out
16   the emails and our system is such that they're
17   not retained for more than 30 days.  <u>So the</u>
18   <u>only way that you would come up with an email</u>
19   <u>that's over 30 days old would be if it's</u>
20   <u>something someone happened to print out and put</u>
21   <u>into a file.</u>
22   Q.    And in this case I guess you don't
23   believe that that happened?
24            MR. DUNBAR:  Objection.

                    ALEXANDER          51
1             Go ahead.
2             THE WITNESS:  I don't remember.
3        Whatever we have produced that's not
4        privileged is what we came up with.

(Emphasis added).

     c)    I advised Mr. Dunbar that I would pursue information with respect to

PHA's e-mails, but would require that any production of e-mailed documents be made

reciprocal.

     2.    I have no idea as to when Mr. Dunbar was on vacation;

     3.    I received Mr. Dunbar's letter to me dated July 1, 2003, which is attached as

Exhibit 2 (rather than Exhibit B) to the motion.

2

4.      It is not accurate to state that I did not respond to that request.  Rather, I had telephone conversations with Mr. Dunbar relating to St. Paul's request for PHA e-mail documentation, each of which was essentially as set forth above.

5.      I spoke with Mr. Dunbar on July 30, 2003.  He did state that he wanted to receive a response by the next day, since he was going on vacation and wanted to file any required motion in anticipation of the conference in this matter on August 19, 2003.  I again reiterated to Mr. Dunbar that I would address St. Paul's request for PHA e-mails, but would insist that any arrangement relating to production of e-mails be made reciprocal.  Mr. Dunbar persisted in his position that St. Paul had no such e-mail traffic, had no back-up tapes and, therefore, had nothing to produce.

6.      I did not respond to Mr. Dunbar within the one-day period provided, since I had no further information to provide in that period.

BLANK ROME LLP

BY:      _____
DENIS JAMES LAWLER
Attorney I.D. No. 17154
DANIEL E. RHYNHART
Attorney I.D. No. 78248
One Logan Square
Philadelphia, PA  19103-6998
Telephone:  (215) 569-5500

Attorneys for Defendant
Philadelphia Housing Authority

Dated: August __5__, 2003

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 02-CV-3511 |
| | : | |
| PHILADELPHIA HOUSING AUTHORITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

COMMONWEALTH OF PENNSYLVANIA :
                                                        : SS
COUNTY OF PHILADELPHIA          :


## AFFIDAVIT

MICHAEL TATE avers the following, subject to the penalties provided by 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities:

      1.     I am employed by the Philadelphia Housing Authority ("PHA") as its Network Administrator.

      2.     In that capacity, I am responsible for supervising and directing the operations and maintenance of PHA's computer networks, including implementing technologies for backing up emails and other electronic business records. As PHA's Network Administrator, I am familiar generally with the various technologies firms employ to safeguard their electronic data from loss or corruption, though these practices necessarily vary from firm to firm.

3.    PHA began using email in August of 1999 and started backing up emails only in December of 2000.

4.    PHA uses the software "Lotus Notes" for email communications.  To back up the email files, along with other electronic files such as word processing and calendaring, PHA uses a software program called "Arcserve."

5.    The Arcserve program is designed to permit PHA to recover from a disaster, rather than to archive all communications that may have been transmitted electronically. Using the program, each user's computer is backed up via a 40 gigabyte tape, which records a "snapshot" of the user's mailbox (including the inbox, outbox and deleted items) as of the specific date and time the backup was run.  If a communication was not in the user's mailbox at the time of the "snapshot," it will not be stored on the tape backup.  This could occur, for example, if the user permanently discarded a deleted item, or if the user's mailbox had reached its full capacity and the user deleted an item from his inbox.  On the other hand, if the used did not permanently delete an email (that is, delete the email from the "deleted items" section of the mailbox), it is likely that the tape backups will contain multiple "snapshots" of the same email, creating significant duplication.

6.    A disadvantage of tape backup is that tape drives are sequential access devices.  In order to read any particular block of data, all preceding blocks of data must be read. Consequently, retrieving emails from the tape backup requires a multi-step process:

(A)    First, someone must designate the particular individuals whose mailboxes will be retrieved;

(B)    Second, the organization must then locate and identify the tapes that contain the mailbox files of the designated employees;

-2-

      (C)     Third, the tapes must then be "read" in their entirety, and the mailboxes of the designated individuals restored;

      (D)     Fourth, once restored, the mailboxes must be searched for those emails that relate to the subject matter of the litigation;

      (E)     Fifth, duplicate emails must be identified and removed;

      (F)     Sixth, the emails that are relevant must be reviewed to remove privileged communications, if any; and

      (G)     Finally, the nonprivileged, relevant emails must be produced, either electronically via disk or via hard paper copy.

7.     PHA's backup tapes are maintained off-site by a third party vendor, Advanced Records Management Company.

8.     Using the Arcserve program, PHA performs its backups on both a daily and monthly basis; however, daily tapes are retained only for a period of 45 days. Consequently, PHA has no daily backups for the period at issue in this dispute.

9.     In connection with this dispute, PHA designated nine individuals whose mailboxes should be retrieved, to the extent possible. The nine individuals are:

> Albert Novack (Contract Administrator)
> Clarence Mosley
> Greg Hampson (Project Engineer)
> James Fratoni (former Project Engineer)
> Larry Woods (former HOPE VI Program Manager)
> Lyncoln Trower (Contract Administrator)
> Michael Leithead (Contracting Officer)
> Shiela Maxwell (former Contracting Officer)
> Tim Trzaska (former Project Engineer)
> Ulise Rivera (Project Manager) (deceased)

10.    At my direction, PHA requested that Advanced Records Management Company provide to PHA the monthly tape backups for the period December 2000, when the backup system was first implemented, through July of 2001.

11.    In response to this request, Advanced Records Management Company delivered to PHA backup tapes for the following months:  December, 2000; January, 2001; February, 2001; March 2001; and July, 2001.  Advanced Records Management Company could not locate backup tapes for the months of April through June of 2001.

12.    The backup for each month consisted of seven or eight tapes.  PHA restored each of these tapes to locate the mailboxes of the nine designated individuals.

13.    Under my supervision, the mailboxes of seven of the nine individuals for the months in question were located, copied onto PHA's server, and then transferred to compact disks (CDs).  In all, six (6) disks have been made, with each disk having the capacity of 650 megabytes, roughly the equivalent of an encyclopedia's worth of paper information.

14.    I have not yet undertaken the task of searching the CDs to retrieve the emails that relate to the subject matter of this litigation or of devising a protocol to identify privileged communications.

15.    The tasks of identifying, restoring, retrieving and processing emails from the backup tapes imposes a substantial burden on PHA's information technology staff.

_____
Michael Tate

-4-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 02-CV-3511 |
| | : | |
| PHILADELPHIA HOUSING AUTHORITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO COMPEL OF PLAINTIFF ST. PAUL

Defendant, Philadelphia Housing Authority ("PHA"), by its undersigned attorneys, hereby submits this Memorandum of Law in Opposition to the Motion to Compel production of electronic mail ("e-mail") messages filed by Plaintiff, St. Paul Mercury Insurance Company ("St. Paul").

PHA submits that St. Paul's Motion to Compel is untimely and that St. Paul has itself failed to produce electronic mail messages relevant to the facts and circumstances of this case.

PHA respectfully requests that the Court deny St. Paul's Motion. Alternatively, PHA respectfully requests that the Court enter an Order that applies equally to both parties, establishing a protocol for retrieving e-mails from each party's electronic data backup system. If PHA alone will be undertaking the burden of retrieving backup tapes, and restoring and reviewing e-mails, PHA respectfully requests that the Court shift the cost of this effort to St. Paul, the requesting party.

## PRELIMINARY STATEMENT

Both parties ostensibly agree that e-mails are discoverable under the Federal Rules of Civil Procedure and that the document requests served in this matter (which in many respects mirror each other) request their production.

Where the parties disagree is over the burden each must sustain to retrieve e-mails maintained in inaccessible format on electronic data backup systems and whether St. Paul, which avowedly has made no effort to identify and search its backup systems for e-mail, may nonetheless impose this burdensome obligation on PHA.

As explained more fully below, fulfilling its obligations under Rule 34 of the Federal Rules of Civil Procedure, PHA has at least undertaken a thorough examination of its tape backup system and preliminarily determined that electronic mailboxes containing voluminous quantities of e-mail -- which may or may not be relevant to this litigation -- do exist for certain individuals who were involved with the Project.

PHA maintains that it should not have to undergo the further burden of extracting the e-mails from the mailboxes, searching them for relevance and privilege, eliminating duplicates, and responding to challenges by St. Paul about the methodological choices made in retrieving and screening the data, unless St. Paul is willing to do the same. Moreover, the complicated process of restoring and producing the e-mails will necessarily delay placing this case in the civil jury trial pool, which the Court has already scheduled for August 20, 2003. St. Paul's Motion is thus untimely.

What is sauce for the goose is sauce for the gander. Consistent with the facts and argument set forth below, PHA respectfully requests that the Court either deny St. Paul's Motion

outright or, alternatively, enter an Order imposing <u>reciprocal</u> obligations on both parties to follow a protocol for retrieving and producing e-mail from their electronic data backup systems.

**STATEMENT OF FACTS**

On October 30, 2002 and March 3, 2003, respectively, St. Paul and PHA served their first requests for production of documents.[1]  PHA acknowledges that St. Paul's document request calls for production of electronic mail messages relevant to the Richard Allen Homes Construction Project (the "Project"), and inasmuch as PHA's First Request for Production of Documents contains identical requests and defines the term "document" as broadly as Rule 34 allows, St. Paul must necessarily concede that PHA's document request likewise does the same.

On June 23, 2003, in its Pretrial Memorandum, PHA highlighted the subject of e-mail production as an issue remaining to be resolved among counsel for the parties.  More specifically, the Pretrial Memorandum reported that no e-mails were included in documents produced by St. Paul to PHA.  Further, the Pretrial Memorandum stated that in addition to the tens of thousands of pages of documents that PHA had already produced to St. Paul during the course of document production, counsel for PHA had been advised on Friday afternoon, June 20, 2003, that e-mails of relevant witnesses did exist, but that PHA had not yet had an opportunity to determine the manner of collection, the number of e-mails involved, or the burden involved in reviewing such communications for relevance and privilege:

> "D.    PHA E-Mail
>
> During the course of document production, in the course of which PHA produced tens of thousands of pages of documents to St. Paul, St. Paul inquired as to whether there were, in addition to the paper documents produced, e-mails relating to the Project.  On Friday afternoon, June 20, 2003, counsel for PHA were advised that there are such e-mails, but have not yet had an opportunity to determine the manner of collection, the number of e-

---

[1] For the convenience of the Court, copies of these requests are attached hereto as Exhibits 1 and 2.

mails involved, or the burden involved in reviewing such communications for relevance and privilege.

No e-mails were included in documents produced by St. Paul to PHA."

Recognizing its obligation to inquire as to whether e-mails could be retrieved, PHA undertook a thorough examination of its electronic data backup system. Like most businesses and governmental agencies, PHA maintains a disaster recovery program. *See* Affidavit of Michael Tate, Network Administrator of PHA, ¶5.[2] Using a software program called "Arcserve," which is common for organizations that rely on "Lotus Notes" for e-mail communications, PHA performs monthly backups of users' mailboxes. Tate Affidavit, ¶¶4 and 5. Through Arcserve, each user's computer is backed up via a 40 gigabyte tape, which records a "snapshot" of the user's mailbox (including the inbox, outbox and deleted items) as of the specific date and time the backup was run. *Id.*, at ¶5. If a particular e-mail communication was not in the user's mailbox at the time of the "snapshot," it will not be stored on the tape backup. *Id.* Conversely, if the user did not permanently delete an e-mail (that is, delete the e-mail from the "deleted items" section of the mailbox), it is likely that the tape backups will contain multiple "snapshots" of the same e-mail, creating significant duplication. *Id.*

Retrieving e-mails of a particular user is not a simple task. PHA's backup tapes are maintained off-site by a third party vendor, Advanced Records Management Company ("ARM"). *Id.* The backup for each month consists of seven or eight tapes, which include the mailboxes of thousands of PHA employees. *Id.* Because tape drives are sequential access devices, in order to read any particular block of data, all preceding blocks of data must be read,

---

[2] The Affidavit of Michael Tate is attached to PHA's Response to St. Paul's Motion to Compel Discovery as Exhibit "A."

necessitating restoration of the entire tape. *Id.* Consequently, retrieving e-mails from the tape backup requires a multi-step process:

First, someone must designate the specific individuals whose mailboxes will be retrieved;

Second, the organization must then locate and identify the tapes that contain the mailbox files of the designated employees;

Third, the tapes must then be "read" in their entirety, and the mailboxes of the designated individuals restored;

Fourth, once restored, the mailboxes must be searched for those e-mails that relate to the subject matter of the litigation;

Fifth, duplicate e-mails must be identified and removed;

Sixth, the e-mails that are relevant must be reviewed to remove privileged communications, if any; and

Finally, the nonprivileged, relevant e-mails must be produced, either electronically via disk or via hard paper copy.

Tate Affidavit, ¶6.

To fulfill its obligations under Rule 34 and to determine the burden of retrieving e-mail relevant to this litigation, PHA requested that its off-site vendor, ARM, provide it with the backup tapes for the period December 2000, when the backup system was first implemented, through July of 2001. *Id.* In response, ARM delivered to PHA backup tapes for December, 2000, January through March of 2001 and July of 2001; ARM could not locate backup tapes for the months of April through June of 2001. *Id.*

PHA restored the data on these tapes and transferred to compact disk ("CD") copies of the mailboxes of seven individuals who had been identified as key witnesses relating to the Project. *Id.* In all, six (6) disks were made, with each disk having the capacity of 650 megabytes, or roughly the equivalent of an encyclopedia's worth of paper information. *Id.* PHA has not yet undertaken the task of searching the mailboxes for those e-mails that are relevant to the litigation, removing duplicates, or identifying and removing privileged communications. *Id.*

Contrary to the representation made in St. Paul's Memorandum that PHA has not responded to St. Paul's requests for the e-mails, counsel for PHA has <u>always</u> advised counsel for St. Paul that the issue of retrieving e-mails would be pursued, but that any production of e-mails would have to be reciprocal. *See* Counter-Certification Regarding Good Faith Efforts to Resolve Discovery Dispute, ¶1.[3] In response to PHA's insistence on reciprocity, and in marked contrast to PHA's good faith effort under Rule 34, St. Paul's counsel has taken the convenient position that St. Paul simply has no e-mails and, therefore, has nothing to produce. *Id.*, at ¶6. St. Paul's counsel has not come forward with any specific facts regarding the nature of St. Paul's electronic data backup system, its disaster recovery program, or its document retention and destruction policies.

St. Paul's use and retention of e-mails were probed during the deposition of Christine Alexander, Senior Surety Attorney for St. Paul. She testified that St. Paul did use e-mail communication, but that the system did not "retain" them for more than 30 days:

> Q.  During the course of this lawsuit
> 19   though, have you done any search of your e-mails
> 20   or do you know of any search of anyone's e-mails
> 21   to find communications relating to the plan of

---

[3]  The Counter-Certification Regarding Good Faith Efforts to Resolve Discovery Dispute has been executed by counsel for PHA, Denis J. Lawler, Esquire, and is attached to PHA's Response to St. Paul's Motion to Compel Discovery as Exhibit "B."

22   action that Saint Paul took?
23       MR. DUNBAR:  Objection.
24       Go ahead.

             ALEXANDER            50
1        THE WITNESS:  Well, I do recall
2        that at various times in this litigation
3        and prior litigation there were
4        discovery requests and we did those
5        searches at those times.
6    BY MR. RHYNHART:
7    Q.    So there has been a search of e-mails
8    done?
9    A.    Yes.
10   Q.    Were you able to find anything that was
11   turned over to your attorneys?
12   A.    The only thing that the attorneys would
13   have received would have been when they became
14   involved copies of the file.  It's not
15   necessarily a practice or a custom to print out
16   the e-mails and our system is such that they're
17   not retained for more than 30 days.  So the
18   only way that you would come up with an e-mail
19   that's over 30 days old would be if it's
20   something someone happened to print out and put
21   into a file.
22   Q.    And in this case I guess you don't
23   believe that that happened?
24       MR. DUNBAR:  Objection.

             ALEXANDER            51
1        Go ahead.
2        THE WITNESS:  I don't remember.
3        Whatever we have produced that's not
4        privileged is what we came up with.

Counter-Certification, at ¶1.

    While Ms. Alexander's testimony may be accurate, insofar as e-mail may be unavailable

to a particular computer user at St. Paul after 30 days, it is inherently incredible that a regulated

entity like St. Paul would not have an electronic data backup system either for archival purposes

or for disaster recovery.  Indeed, this Court can take judicial notice of the fact that, as many a

-7-

miscreant who has erased a computer file has learned to his dismay, "deleting" computer files and eradicating them are two different things; even after deletion, electronic data generally remains available somewhere else—either on the hard drive, a server or on some back-up medium.

For this reason, St. Paul's unsupported assertion that it has no e-mail is dubious at best. In reality, St. Paul simply has not made the effort to examine its electronic data back-up systems to ascertain the extent to which copies of e-mails may still exist and the burden associated with restoring and retrieving them. Yet, this is the very burden that St. Paul would compel PHA to shoulder.

**ARGUMENT**

Coming as it does on the eve of trial and after the filing of an essentially dispositive Motion for Partial Summary Judgment, St. Paul's Motion is untimely and should be denied. Alternatively, the Court should enter an Order placing a reciprocal obligation on both parties to restore, retrieve and produce their e-mails.

**I.        St. Paul's Motion to Compel is Untimely.**

It is well-established that a motion to compel discovery may be denied where the movant has unduly delayed seeking relief from the Court. In *Rossetto v. Pabst Brewing Co. Inc.*, 217 F. 3d 539 (7th Cir. 2000), for example, the Seventh Circuit Court of Appeals ruled that the district court did not err in denying a discovery motion filed by plaintiffs two months after the date set by the court for completion of discovery. Likewise, in *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999), the court opined that while a motion to compel may be filed after the close of discovery, absent unusual circumstances, it should be filed before the scheduled date for dispositive motions.

-8-

The overarching considerations are whether the moving party has unduly delayed in filing the motion and whether the delay has caused substantial prejudice:

> " 'If the moving party has unduly delayed, the court may conclude that the motion [to compel] is untimely.' 8A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2285 (1994 & Supp. 1998). '[T]he requesting party cannot delay a motion to compel with impunity.' The Rutter Group, *Federal Civil Procedure Before Trial*, ¶ 11.753 (1998). This latter treatise further opines that '[i]f the delay results in 'substantial prejudice' to the party to whom it was directed…, the court may hold that the requesting party has waived the right to compel response and disclosure. [See, *Kendrick v. Heckler* (5th Cir. 1985) 779 F.2d 253; *Byrnes v. Jetnet Corp.* (M.D.N.C. 1986) 111 F.R.D. 68].' *Id.*"

*Gault v. Nabisco Biscuit* Co., 184 F.R.D. at 622.

If a party is hindered in its preparation for trial, substantial prejudice exists, but even where this is not the case, substantial prejudice may occur if consideration of the motion to compel would delay resolution of the action, thereby causing the court to fail in its fundamental obligation under Federal Rule of Civil Procedure 1 "to secure the just, speedy and inexpensive determination of every action." *Gault*, 184 F.R.D. at 622.

In the instant case, St. Paul's First Request for Production of Documents was served nearly a year ago, on October 30, 2002, and PHA produced tens of thousands of documents in response to the First Request as long ago as February of 2003. By Order of the Court dated April 9, 2003, the discovery deadline in this matter, as extended upon the joint request of the parties, was May 22, 2003. On June 23, 2003, PHA itself flagged for St. Paul the outstanding issue of e-mail production, raising this matter as a discrete issue in PHA's Pretrial Memorandum, and on the same day, PHA filed its Motion for Partial Summary Judgment which, if granted, would effectively conclude this litigation. Pursuant to the Court's Order dated July 11, 2003, this case is scheduled to be placed in the jury trial pool on August 20, 2003, subject to call on 48 hours' notice in accordance with the standing rule of the court.

Plaintiff's Motion to Compel was filed on August 1, 2003, less than three weeks before the case will be placed in the jury trial pool. PHA believes that the process of searching, retrieving, and culling, relevant, nonprivileged e-mails from the six CDs already made will take at least a month. Were the Court to require the production of e-mails relating to individuals whose mailboxes are not on the CDs, PHA would need to restore the backup tapes all over again, and the process of retrieving the desired e-mails would be even longer. Inasmuch as St. Paul has not even identified what its electronic data backup system is, and how it works, PHA can only speculate as to how long it would take St. Paul to restore e-mails from its disaster recovery system.

In these circumstances, St. Paul's Motion to Compel can be granted only with a concomitant delay in placing this case in the trial pool. Because granting the Motion to Compel will necessarily delay the final resolution of this litigation, substantial prejudice exists, and this Court should deny the Motion at this late date.

## II.    The Court Should Require Reciprocal Production of E-mails

The advent of the "information age" has spawned a raft of litigation over the extent to which inaccessible electronic data is discoverable and who should pay for its production. *See, e.g., Zubulake v. UBS Warburg, LLC* ("*Zubulake I*"), No. CIV. 1243, 2003 WL 21087884 (S.D.N.Y., May 13, 2003) (holding that electronic information stored in readily usable format should be produced without cost-shifting and articulating a seven factor test for determining whether cost-shifting is appropriate for the discovery of inaccessible electronic data); *Zubulake v. UBS Warburg, LLC, ("Zubulake II"),* No. CIV. 1243, 2003 WL 21714957 (S.D.N.Y. July 24, 2003) (applying the seven factor test); *Murphy Oil USA, Inc. v. Fluor Daniel, Inc.*, No. CIV.A. 99-3564, 2002 WL 246439 (E.D.La. Feb 19, 2002); (holding that cost of retrieving e-mail messages should be shifted to requestor pursuant to six factor test set out in *Rowe, infra*);

-10-

*McPeek v. Ashcroft*, 202 F.R.D. 31, (D.D.C. 2001) (ordering limited "test run" restoration of

computer backup tapes to determine cost and benefit of retrieving e-mails); *McPeek v. Ashcroft*,

212 F.R.D. 33, 34 (D.D.C. 2003) (analyzing whether and to what extent a search of backup tapes

was appropriate); *Rowe Ent't., Inc. v. William Morris Agency, Inc.* 205 F.R.D. 421, (S.D.N.Y.

2002) (holding that e-mails should be produced, but articulating a six-factor balancing approach

for determining whether costs of production should be shifted).

 While the approaches adopted by the courts have varied, the cases have in common a

central theme: "[a]s individuals and corporations increasingly do business electronically—using

computers to create and store documents, make deals, and exchange e-mails—the universe of

discoverable material has expanded exponentially.  The more information there is to discover,

the more expensive it is to discover all the relevant information until, in the end, 'discovery is

not just about uncovering the truth, but also about how much of the truth the parties can afford to

disinter.'" *Zubulake I, at *1, quoting, Rowe, supra,* 205 F.R.D. at 423.

 The difficulty of reconciling these competing considerations was noted, with a dash of

whimsical frustration, in *McPeek v. Ashcroft:*

> "There is certainly no controlling authority for the proposition that
> restoring all backup tapes is necessary in every case.  The Federal Rules of Civil
> Procedure do not require such a search, and the handful of cases are idiosyncratic
> and provide little guidance.  The one judicial rationale that has emerged is that
> producing backup tapes is a cost of doing business in the computer age.  *In re
> Brand Name Prescription Drugs,* 1995 WL 360526 at *3 (N.D.Ill., June 15,1995).
> But, that assumes an alternative.  It is impossible to walk ten feet into the office of
> a private business or government agency without seeing a network computer,
> which is on a server, which, in turn, is being backed up on tape (or some other
> media) on a daily, weekly or monthly basis.  What alternative is there?  Quill
> pens?
>
>  Furthermore, making the producing party pay for all costs of restoration as
> a cost of its 'choice' to use computers creates a disincentive for the requesting
> party to demand anything less than all of the tapes.  American lawyers engaged in
> discovery have never been accused of asking for too little.  To the contrary, like

the Rolling Stones, they hope that if they ask for what they want, they will get what they need. They hardly need any more encouragement to demand as much as they can from their opponent." (Footnote omitted.)

202 F.R.D. at 31-34.

These twin considerations—the proliferation of electronic data and the burden of retrieving it from inaccessible sources—apply vigorously to the instant dispute. Despite the fact that it is an insurance company--a highly regulated entity, St. Paul denies that its e-mails have been stored on any backup medium. This assertion is simply incredible, and the Court should require St. Paul to provide specific facts explaining the nature of its disaster recovery program, its electronic data backup systems, and its document destruction and retention policies.

Conversely, in fashioning an Order concerning the production of PHA's e-mails, the Court should consider the burden of restoring them from backup tapes. In *Zubulake I*, Judge Scheindlin categorized the storage media for electronic data and concluded that backup tapes are an inaccessible medium, second only to "erased, fragmented or damaged data" in the difficulty of restoration:

"In fact, whether the production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible or inaccessible* format (a distinction that corresponds closely to the expense of production). In the world of paper documents, for example, a document is accessible if it is readily available in a usable format and reasonably indexed. Examples of inaccessible paper documents could include (a) documents in storage in a difficult to reach place; (b) documents converted to microfiche and not easily readable; or (c) documents kept haphazardly, with no indexing system, in quantities that make page-by-page searches impracticable. But in the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible.

Whether electronic data is accessible or inaccessible turns largely on the media on which it is stored. Five categories of data, listed in order from most accessible to least accessible, are described in the literature on electronic data storage:

1.    *Active, online data*:

* * *

2.    *Near-line data*:

* * *

3.    *Offline storage/archives:*

* * *

4.    *Backup tapes:* 'A device, like a tape recorder, that reads data from
and writes it onto a tape.  Tape drives have data capacities of
anywhere from a few hundred kilobytes to several gigabytes.
Their transfer speeds also vary considerably... The disadvantage of
tape drives is that they are sequential-access devices, which means
that to read any particular block of data, you need to read all of the
proceeding blocks.'  As a result, '[t]he data on a backup tape are
not organized for retrieval of individual documents or files
[because]...the organization of the data mirrors the computer's
structure, not the human records management structure.'  Backup
tapes also typically employ some sort of data compressions,
permitting more data to be stored on each tape, but also making
restoration more time-consuming and expensive, especially given
the lack of uniform standard governing data compression.

5.    *Erased, fragmented or damaged data:*

* * *

Of these, the first three categories are typically identified as accessible,
and the later two as inaccessible.  The difference between the two classes
is easy to appreciate.  Information deemed "accessible" is stored in a
readily usable format.  Although the time it takes to actually access the
data ranges from milliseconds to days, the data does not need to be
restored or otherwise manipulated to be usable.  'inaccessible' data, on the
other hand, is not readily usable.  Backup tapes must be restored using a
process similar to that previously described, fragmented data must be de-
fragmented, and erased data must be reconstructed, all before the data is
usable.  That makes such data inaccessible."

*Zubulake I,* at *7-8.  Indeed, the difficulty and expense associated with restoring the e-mails from

back-up tapes were noted in *Rowe,* where one of the defendants used the same backup software

program that PHA uses—Arcserve.  The court observed that, to perform an initial search limited

to a sample of one backup session for each quarter of 1998 and 1999, for a total of eight sessions,

the defendant would have to engage in a three-step process of cataloguing, restoring and

processing the e-mails:

> "In May 1998, WMA's Music Department converted to Lotus Notes for e-mail communications. (Porter Aff. ¶ 6). It backs up its e-mail files along with other electronic files such as word processing and spreadsheet documents give times each week, using a software program called Arcserve (Porter Aff. ¶¶ 8,9).
>
> The plaintiffs agreed, at least as a first cut, to limit their discovery demands to e-mail generated or received by 56 WMA employees located in the defendant's New York and Beverly Hills offices. (Porter Aff. ¶ 4). Likewise, they proposed an initial search limited to a sample of one back-up session for each quarter of 1998 and 1999, for a total of eight sessions. (Affdavid of Sandra C. McCalliion dated Sept. 19, 2001, ¶ 10). According to WMA, in order to comply with this request, it must engage in a three-step process: cataloguing, restoring, and processing. (Porter Aff. ¶ 18). Cataloguing involves identifying the tapes that contain the mailbox files of the designated employees and marking them for restoration. (Porter Aff. ¶¶ 18, 19). Restoration consists of saving all e-mails from the identified files to a master database and then removing all duplicates. (Porter Aff. ¶ 21). Finally, each file must be processed so that it is not only readable on a computer screen, but also may be printed and Bates-stamped. (Porter Aff. ¶ 24). Where an e-mail contains an attached file such as a word processing document, WMA proposes converting the attachment into a Tagged Image File Form or "TIFF" file. (Porter Aff. ¶27). According to WMA, this would be necessary in order to make any redactions. (Reply Declarations of Sandra C. McCallion dated Nov. 12, 2001, ¶ 12)."

*Rowe,* 205 F.R.D. at 424. The computer consultant in *Rowe* projected that these projects would

cost $7,864 for cataloguing, $8,960 for restoration, and $379,944 for processing, to a total of

$395,944. *Id.,* at 425.

PHA has not yet determined whether it will be able to use its own information technology

personnel or outside vendors to perform the restoration. Regardless, the effort will necessarily

consume the time of PHA's staff and will not be insubstantial. Under the case law cited above,

because, among other things, PHA maintains the backup tapes only in case of emergency and for

no current business purposes, a strong argument can be made that the cost of restoring the tapes

and retrieving the e-mails should be shifted to St. Paul. Moreover, wholly apart from the issue of cost, the parties need to agree on, or the Court must define, the parameters that will govern the retrieval, restoration and review processes.

If PHA alone will be producing e-mail, then PHA respectfully requests that the Court order St. Paul to bear the cost of this effort. Inasmuch as PHA believes that St. Paul, too, possesses backups of its electronic data, PHA suggests that an equitable solution to the present dispute is for the Court to impose reciprocal obligations on both parties to retrieve e-mails from their electronic data backup systems, with each party to bear its own costs. A suggested protocol for this effort is set forth in the form of Order proposed by PHA.

### III.    CONCLUSION

For all the foregoing reasons, defendant PHA respectfully requests that the Court deny St. Paul's Motion to Compel and grant PHA's Motion to Compel production of e-mails.

Dated:    August 8, 2003

Respectfully submitted,

BLANK ROME LLP

By: _Christopher A. Lewis_

DENIS JAMES LAWLER
Attorney I.D. No. 17154
CHRISTOPHER A. LEWIS
Attorney I.D. No. 29375
DANIEL RHYNHART
Attorney I.D. No. 78248
One Logan Square
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Defendant*
*Philadelphia Housing Authority*

-15-

## CERTIFICATE OF SERVICE

I, Christopher A. Lewis, hereby certify that on this 8th day of August, 2003, I did cause to be served a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion to Compel of Plaintiff St. Paul by facsimile and U.S. First Class Mail, postage prepaid, upon counsel of record as follows:

> William J. Devlin, Jr. Esquire
> Devlin & Devlin
> 100 West Elm Street, Suite 200
> Conshohocken, PA 19428
>
> Paul F. Strain, Esquire
> James A. Dunbar, Esquire
> Venable Baetjer & Howard, LLP
> 18900 Merchantile Bank &Trust B
> 2 Hopkins Plaza
> Baltimore, MD 21201-2978

Christopher A. Lewis

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE<br>  COMPANY<br>385 Washington Street<br>St. Paul, Minnesota 55102 | ) ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION NO. 02-3511 |
| v. | ) ) | |
| PHILADELPHIA HOUSING AUTHORITY<br>2012 Chestnut Street<br>Philadelphia, Pennsylvania 19154 | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant | ) | |

### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. Rule of Civ. P. 34, Plaintiff St. Paul Mercury Insurance Company ("St. Paul"),

by its undersigned attorneys, requests that Defendant, Philadelphia Housing Authority ("PHA"), produce

and permit St. Paul to inspect and copy the documents identified below at or before 10:00 a.m. on

December 2, 2002, at the offices of Devlin & Devine, 100 West Elm Street, Suite 200, Conshohocken,

Pennsylvania 19428, or such other convenient time and place mutually agreed upon by the parties.

### INSTRUCTIONS

A.     Your written response shall state, with respect to each item or category, that inspection

and related activities will be permitted as requested, unless the request is refused, in which event the

reasons for refusal shall be stated. If the refusal relates to part of an item or category, the part shall be

specified.

B.     The documents shall be produced as they are kept in the usual course of business, or you

shall organize and label them to correspond with the categories in this request.

C.    These requests encompass all items within your possession, custody or control.

D.    These requests are continuing in character so as to require you to promptly amend or supplement your response if you have obtained further material information.

E.    If in responding to these requests, you encounter any ambiguity in construing any request, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

F.    To the extent that you object to any of the following requests, you should respond to the portion that is not objectionable, and state separately the portion of each request to which you object, including the grounds for each objection.

G.    If any documents are not available for production because they have been misplaced, discarded, or destroyed, identify which documents or categories of documents cannot be produced for these reasons, and state fully in writing the reasons that said documents are unavailable. As to each such document, state the date and the title of the document, its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, and a summary of the substance of the document.

H.    If any documents are not available for production because they are in the custody or control of a third person, identify such documents or categories of documents and identify the third person in whose possession or control said documents are to be found.

I.    If you object to the production of any documents on the claim of privilege or attorney work product, identify each document for which the privilege is claimed and provide the following information with respect to each document:

1.    Describe the type of document (e.g., letter, memorandum, report, etc.) and state the date of the document;

2.    Identify the person who prepared or authorized the document and the person to whom the document is directed;

3.    Identify all persons receiving copies of the document;

4.    State the number of pages in the document;

5.    Describe the subject matter of the document;

6.    State the basis on which the privilege is claimed; and

7.    State whether you would be willing to produce the documents *in camera*.

J.    If you contend that any documents that are responsive to any request have been previously produced to St. Paul in Case No. 002190, *San Lucas Construction Company, Inc. v. St. Paul Mercury Insurance Company, et al.,* in the Philadelphia County Court of Common Pleas (hereafter, "the State Court Action"), rather than reproduce these documents, please identify the range of bates numbers affixed to the responsive documents by your counsel in that action.

## DEFINITIONS

As used in these requests, the following terms are to be interpreted in accordance with these definitions:

(a)    The term "person" includes any individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, its agencies or political subdivisions, any court, or any other governmental entity.

(b)    The terms "you," "your," "Philadelphia Housing Authority," and "PHA" include the persons to whom these Requests are addressed, and all of those persons' agents, employees, representatives, and/or attorneys.

-3-

TO1DOCS1#136906 v1

(c)     The terms "document" or "documents" includes all writings, drawings, graphs, charts, photographs, recordings, and any other data compilation from which information can be obtained, translated, if necessary, by you through detection devices into reasonably useable form.

(d)     "Or" shall be construed either constructively or disjunctively to bring within the scope of this discovery any information which might otherwise be construed to be outside its scope.

(e)     "Relating to" or "relates to" or "related to" means referring to, concerning, responding to, commenting on, regarding, discussing, showing, describing, reflecting, implying, analyzing, and constituting.

(f)     The term "Plaintiff" and/or "St. Paul" refers to the Plaintiff named in this lawsuit and any of its agents, representatives, and/or attorneys.

(g)     The term "Project" refers to the Richard B. Allen Homes Modernization of Blocks B-2 and B-3, Philadelphia, PA, PHA-PA2-03, located between Poplar Street and Fairmount Avenue, and between 12th Street and 9th Street in Philadelphia, PA, pursuant to PHA Contract Nos. 9589, 9590, 9591, 9592, and 9593.

## CATEGORIES OF DOCUMENTS REQUESTED

1.     Each and every document that constitutes, refers, relates, or makes reference to the Project.

2.     Each and every document that constitutes, refers, relates, or makes reference to any contracts, agreements, and/or understandings involving St. Paul, NDK, San Lucas, and/or PHA in connection with the Project, whether written or oral, including, but not limited to, any completion contracts, addenda, supplements, change orders or extra work orders (approved or pending) issued pursuant to any other contracts, agreements, or understandings in connection with the Project.

-4-

3.      Each and every document that constitutes, refers, relates, or makes reference to any contracts, subcontracts, agreements, understandings, and/or communications between or involving any and all prime contractors, subcontractors, suppliers, and/or materialmen with respect to the Project, whether written or oral, including, but not limited to, any addenda, completion contracts, supplements, change orders or extra work orders (approved or pending) issued pursuant to those contracts, subcontracts, agreements, and/or understandings.

4.      Each and every document that constitutes, refers, relates, or makes reference to any communications, written or oral, between PHA and San Lucas regarding the Project.

5.      Each and every document that constitutes, refers, relates, or makes reference to any communications, written or oral, between or involving NDK and any of its subcontractors, suppliers, and/or materialmen regarding labor, equipment and materials provided by NDK's subcontractors, suppliers, and/or materialmen on the Project and/or regarding monies allegedly due NDK or any of its subcontractors, suppliers, and/or materialmen for that labor, equipment, and materials.

6.      Each and every document that constitutes, refers, relates, or makes reference to any communications, written or oral, between or involving St. Paul and anyone else, including NDK, San Lucas, PHA and/or any other entity, regarding monies owed in connection with the Project, and/or labor, equipment, and/or materials provided to the Project.

7.      Each and every document that constitutes, relates, or refers to any invoices, bills, statements of account, payment requisitions or payment applications and/or releases or lien waivers sent in connection with the Project.

8.      Each and every document that constitutes, relates, refers, or makes reference to any bond(s) obtained by any person or entity in connection with the Project.

TO1DOCS1#136906 v1

9.    Each and every document that constitutes, relates, refers, or makes reference to any reports, notes, correspondence, or other documents, including drafts of those documents, prepared by any person whom you expect to call as an expert witness at trial, and any communications, written or oral, between you and any person whom you expect to call as an expert witness at trial.

10.    Each and every document consulted, reviewed, or relied upon by any person whom you expect to call on as an expert at trial.

11.    Each and every document that constitutes, relates, refers, or makes reference to any and all schedules and drafts of schedules for the Project, including bid schedules, resource loaded schedules, schedule updates, look-ahead schedules, as-built or actual schedules, CPM schedules for the Project, and San Lucas's schedule of values.

12.    Each and every document that constitutes, relates, refers, or makes reference to job performance on the Project, including but not limited to, progress documentation, daily reports, project meeting minutes, requests for information, progress reports, progress photographs, and daily logs, diaries, and journals for the Project.

13.    Each and every document that constitutes, relates, refers, or makes reference to PHA's decisions to pay San Lucas, including but not limited to, progress documentation, daily reports, inspections, evaluations, audits of San Lucas' work, and time of payment.

14.    Each and every document that relates, refers, or makes reference to policies or procedures used by PHA relating to the payment or non-payment of contractors' payment applications.

15.    Each and every document that constitutes, relates, refers, or makes reference to PHA's finding San Lucas in default or termination of San Lucas's contract, including but not limited to, any

and all policies and procedures that relate, refer, or reference defaults and termination of construction contracts by PHA.

16.    Each and every videotape, picture, diagram, model, CD-Rom disc and/or photograph that constitutes, relates, refers, or makes reference to the Project.

17.    Each and every document that constitutes, relates, refers, or makes reference to PHA's inspection, monitoring, evaluating, auditing and/or supervising San Lucas's work on the Project.

18.    Each and every document that constitutes, relates, refers, or makes reference to the personal files on the Project of any and all PHA present or former employees, including all individuals identified on PHA's Rule 26 disclosure statement filed in this action.

19.    Each and every document that constitutes, relates, refers, or makes reference to any and all communications, written or oral, between or involving PHA or any other entity in relation to the Project.

20.    Each and every document that constitutes, relates, refers, or makes reference to any and all contracts, agreements, and/or understandings between or involving PHA and San Lucas on any projects other than the Project that is the subject matter of this lawsuit.

21.    Each and every document which supports or upon which you rely for, or that relates, refers, or makes reference to, any and all affirmative defenses in your Answer.

22.    If you contend that St. Paul paid more than a reasonable amount to complete San Lucas's work on the Project, each and every document that constitutes, relates, refers to or supports that contention.

23.    If you contend that the contract between San Lucas and PHA was in any way modified to permit payments to San Lucas in excess of the amount of the work it actually performed, all documents that relate, refer to or support that contention.

24.    Each and every document that constitutes, relates, refers, or makes reference to PHA's decision to reduce the retainage with respect to San Lucas from 10% to 5%.

25.    Any and all documents that support, relate, refer or make reference to your Answers to Interrogatories.

Respectfully submitted,

Paul F. Strain
James A. Dunbar
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland  21285-5517
(410) 494-6200

Attorneys for Plaintiff,
St. Paul Mercury Insurance Company

-8-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ST. PAUL MERCURY INSURANCE    )
  COMPANY    )
385 Washington Street    )
St. Paul, Minnesota  55102    )
    )
       Plaintiff    )
    )    CIVIL ACTION NO.  02-3511
      v.    )
    )
PHILADELPHIA HOUSING AUTHORITY )
2012 Chestnut Street    )    **JURY TRIAL DEMANDED**
Philadelphia, Pennsylvania  19154    )
    )
       Defendant    )

## CERTIFICATE OF SERVICE

I hereby certify that on this __30ᵗʰ__ day of __October__, 2002, a copy of Plaintiff's First

Request for Production of Documents to Philadelphia Housing Authority was telecopied and sent by

first-class U.S. mail to:

       Dennis Lawler, Esquire
       Blank Rome Comisky & McCauley, LLP
       One Logan Square
       Philadelphia, PA  19103-6998

       Counsel for Defendant

Paul F. Strain
James A. Dunbar
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland  21285-5517
(410) 494-6200

Attorneys for Plaintiff,
St. Paul Mercury Insurance Company

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ST. PAUL MERCURY INSURANCE : 
COMPANY : CIVIL ACTION
 : 
          Plaintiff, : NO. 02-CV-3511
     v. : 
 : 
PHILADELPHIA HOUSING : 
AUTHORITY : 
 : 
          Defendant. : 
 : 
 : 

## DEFENDANT PHILADELPHIA HOUSING AUTHORITY'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 34, Defendant Philadelphia Housing Authority ("PHA"), by its undersigned counsel, requests that Plaintiff St. Paul Mercury Insurance Company ("St. Paul") produce and permit PHA to inspect and copy the documents identified below within the time frame specified by the Federal Rules of Civil Procedure:

## INSTRUCTIONS

A.      Your written response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is refused, in which event the reasons for refusal shall be stated. If the refusal relates to part of an item or category, the part shall be specified.

B.    The documents shall be produced as they are kept in the usual course of business, or you shall organize and label them to correspond with the categories in this request.

C.    These requests encompass all items within your possession, custody or control.

D.    These requests are continuing in character so as to require you to promptly amend or supplement your response if you have obtained further material information.

E.    If in responding to these requests, you encounter any ambiguity in construing any request, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

F.    To the extent that you object to any of the following requests, you should respond to the portion that is not objectionable, and state separately the portion of each request to which you object, including the grounds for each objection.

G.    If any documents are not available for production because they have been misplaced, discarded, or destroyed, identify which documents or categories of documents cannot be produced for these reasons, and state fully in writing the reasons that said documents are unavailable.  As to each such document, state the date and the title of the document, its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, and a summary of the substance of the document.

2

H.    If any documents are not available for production because they are in the custody or control of a third person, identify such documents or categories of documents and identify the third person in whose possession or control said documents are to be found.

I.    If you object to the production of any documents on the claim of privilege or attorney work product, identify each document for which the privilege is claimed and provide the following information with respect to each document.

    1.    Describe the type of document (e.g., letter, memorandum, report, etc.) and state the date of the document;

    2.    Identify the person who prepared or authorized the document and the person to whom the document is directed;

    3.    Identify all persons receiving copies of the document;

    4.    State the number of pages in the document;

    5.    Describe the subject matter of the document;

    6.    State the basis on which the privilege is claimed; and

    7.    State whether you would be willing to produce the documents *in camera.*

100847.00610/21123209v1

## DEFINITIONS

As used in these requests, the following terms are to be interpreted in accordance with these definitions:

(a)    The term "person" includes any individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, its agencies or political subdivisions, any court, or any other governmental entity.

(b)    The terms "you," "your," "St. Paul Mercury Insurance Company," and "St. Paul" include the named Plaintiff in this action and the persons to whom these Requests are addressed, and all of those persons' agents, employees, representatives, and/or attorneys.

(c)    The terms "document" or "documents" include all writings, drawings, graphs, charts, photographs, recordings, and any other data compilation from which information can be obtained, translated, if necessary, by you through detection devices into reasonably useable form.

(d)    "Or" shall be construed either constructively or disjunctively to bring within the scope of this discovery any information which might otherwise be construed to be outside its scope.

(e)    "Relating to" or "relates to" or "related to" means referring to, concerning, responding to, commenting on, regarding, discussing, showing, describing, reflecting, implying, analyzing, and constituting.

4

(f)    The term "Defendant" and/or "PHA" refers to the Defendant named in this lawsuit, the Philadelphia Housing Authority, and any of its agents, employees representatives, and/or attorneys.

(g)    The term "San Lucas" refers to San Lucas Construction Company and any of its agents, employees, representatives and/or attorneys.

(h)    The term "NDK" refers to NDK Contractors, Inc., and any of its agents, employees, representatives and/or attorneys.

(i)    The term "Project" refers to the Richard B. Allen Homes Modernization of Blocks B-2 and B-3, Philadelphia, Pennsylvania, PHA-PA2-03, located between Poplar Street and Fairmount Avenue, and between 12th Street and 9th Street in Philadelphia, Pennsylvania, pursuant to PHA Contract Nos. 9589, 9590, 9591, 9592, and 9593.

## CATEGORIES OF DOCUMENTS REQUESTED

1.    All documents relating to the Project.

2.    All documents relating to any contracts, agreements, understandings, negotiations and communications between St. Paul and San Lucas, whether written or oral, in connection with the Project.

3.    All documents relating to any contracts, agreements, understandings, negotiations and/or communications between St. Paul and PHA, whether written or oral, with respect to the Project, including without limitation the takeover and completion of work.

4.    All documents relating to communications between St. Paul and any of San Lucas' subcontractors, materialmen and suppliers relating to the Project.

5

5.    All documents relating to communications between St. Paul and NDK, Bob Kahan or Contract Completion, Inc. (CCI) relating to the Project.

6.    All documents relating to communications between St. Paul and anyone relating to the Project.

7.    All internal St. Paul documents, including without limitation, all communications, notes, logs, diaries, calendars, memos and e-mail relating to the Project.

8.    All documents relating to any inspection, monitoring, evaluation, and/or supervision of work on the Project.

9.    All documents relating to the status of work on the Project, stage of completion, payments made to contractors and sub-contractors, and the contract balance.

10.    All documents relating to the takeover and completion of the Project, including without limitation the bidding and/or selection process for a completion contractor.

11.    All policies, procedures, handbooks and/or training manuals used by St. Paul relating to supervision, monitoring, inspection and/or evaluation of the status of construction projects and/or the work of bonded contractors.

12.    All policies, procedures, handbooks and/or training manuals used by St. Paul relating to the decision to take possession or control of contract payments to a bonded contractor, and/or to take possession of all or any part of the work and complete that work.

13.    All videotapes, pictures, diagrams, models, CD-Roms and/or photographs relating to the Project.

14.    All documents demonstrating any efforts by St. Paul to mitigate its damages.

6

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2003, Defendant's First Request for Production of Documents were served by facsimile and first-class mail, postage prepaid, upon counsel as follows:

> James A. Dunbar, Esquire
> Venable, Baetjer and Howard, LLP
> 210 Allegheny Avenue
> P.O. Box 5517
> Towson, MD  21285-5517

DANIEL E. RHYNHART