# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    CIVIL ACTION NO. 02-CV-3511 |
| | : |
| PHILADELPHIA HOUSING AUTHORITY, | : |
| | : |
| | : |
| Defendant. | : |
| | : |

## RESPONSE OF DEFENDANT PHILADELPHIA HOUSING AUTHORITY TO PLAINTIFF ST. PAUL'S MOTION TO PRECLUDE TESTIMONY OF CERTAIN WITNESSES

Defendant, Philadelphia Housing Authority ("PHA"), by its undersigned counsel, opposes Plaintiff St. Paul Mercury Insurance Company's (St. Paul's) Motion to Preclude Testimony of Certain Witnesses on the grounds that:

(1)    under Federal Rule of Civil Procedure 26(e); PHA had no obligation to supplement its initial disclosures and discovery responses inasmuch as St. Paul knew in any event from discovery that two of the three witnesses, James Conlin and George Gomez, had knowledge relevant to this action;

(2)    under Federal Rule of Civil Procedure 37(c), sanctions are inappropriate where, as here, the alleged failure to supplement earlier responses was harmless and not prejudicial; and

100847.00610/11241224v1

(3)    the practice followed by PHA with respect to disclosing witnesses
was exactly the same as that used by St. Paul.

By way of further Response, because his testimony would be redundant of that
provided by other witnesses, PHA hereby withdraws the designation of Vince Mancini as
a witness in this action.

Defendant PHA therefore requests that the Court deny Plaintiff St. Paul's Motion.


Dated: August 14, 2003                    Respectfully submitted,

                                          BLANK ROME LLP


                                          By: _____
                                              DENIS JAMES LAWLER
                                              Attorney I.D. No. 17154
                                              CHRISTOPHER A. LEWIS
                                              Attorney I.D. No. 29375
                                              DANIEL RHYNHART
                                              Attorney I.D. No. 78248
                                              One Logan Square
                                              Philadelphia, PA 19103-6998
                                              (215) 569-5500

                                              *Attorneys for Defendant*
                                              *Philadelphia Housing Authority*

100847.00610/11241224v1

## CERTIFICATE OF SERVICE

I, Christopher A. Lewis, hereby certify that on this 14th day of August, 2003, I did

cause to be served a true and correct copy of the foregoing Response of Defendant

Philadelphia Housing Authority to Plaintiff St. Paul's Motion to Preclude Testimony of

Certain Expert Witnesses by Federal Express, upon counsel of record as follows:

> William J. Devlin, Jr. Esquire
> Devlin & Devlin
> 100 West Elm Street, Suite 200
> Conshohocken, PA 19428
>
> Paul F. Strain, Esquire
> James A. Dunbar, Esquire
> Venable Baetjer & Howard, LLP
> 18900 Merchantile Bank &Trust B
> 2 Hopkins Plaza
> Baltimore, MD 21201-2978

Christopher A. Lewis

100847.00610/11241224v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 02-CV-3511 |
| | : | |
| PHILADELPHIA HOUSING AUTHORITY, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### ORDER

AND NOW, this ___ day of August, 2003, upon consideration of Plaintiff St. Paul Mercury Insurance Company's Motion to Preclude Testimony of Certain Witnesses and Defendant Philadelphia Housing Authority's ("PHA's") response thereto, and Defendant PHA having withdrawn the designation of Vince Mancini as a witness for trial in this action, IT IS HEREBY ORDERED that said Motion be, and the same hereby is, DENIED.

_____
Shapiro, S.J.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 02-CV-3511 |
| | : | |
| PHILADELPHIA HOUSING AUTHORITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO PRECLUDE TESTIMONY OF CERTAIN WITNESSES
## OF PLAINTIFF ST. PAUL

Defendant, Philadelphia Housing Authority ("PHA"), by its undersigned attorneys, hereby submits this Memorandum of Law in Opposition to the Motion to Preclude Testimony of Certain Witnesses filed by Plaintiff, St. Paul Mercury Insurance Company ("St. Paul").

### PRELIMINARY STATEMENT

At the Court's direction, PHA filed its Pretrial Memorandum in this action more than a month ago, on June 23, 2003. Now, with the case scheduled to be placed in the civil jury trial pool on August 20, 2003, St. Paul has at the eleventh hour sought to achieve a strategic advantage at trial by moving to preclude the testimony of three

100847.00610/11241870v3

individuals identified by defendant PHA as prospective witnesses: James Conlin, George

Gomez and Vince Mancini.

Because his testimony would be redundant, PHA withdraws the designation of

Vince Mancini as a trial witness in this matter. As regards the other two, however—

James Conlin and George Gomez, St. Paul's feigned surprise is wholly unfounded. In its

Rule 26(a)(1) Initial Disclosure, St. Paul itself identified Mr. Gomez, a foreman for San

Lucas Construction Company, Inc. ("San Lucas"), as an individual likely to have

discoverable information regarding this matter. Similarly, St. Paul cannot claim

ignorance of Mr. Conlin's knowledge, for it was Mr. Conlin who verified PHA's

Answers and Objections to Plaintiff's Interrogatories.

PHA has at all times complied in good faith with its disclosure obligations under

Rules 26(a) and 26(e) of the Federal Rules of Civil Procedure. But even if PHA were

blameworthy, which it is not, under the well-settled precedent in the Third Circuit, the

testimony of Messrs. Gomez and Conlin could not be precluded where, as here, there is

no prejudice or surprise because the witnesses were known to St. Paul all along. *Newman*

*v. GHS Osteopathic, Inc. v. Parkview Hosp. Div.,* 60 F. 3d 153, 156 (3d Cir. 1995)

(holding that, in the Third Circuit, although Rule 37(c) is written in mandatory terms, the

testimony of a prospective witness should not be excluded where the failure to

supplement earlier discovery responses was harmless). *See also, Quinn v. Consolidated*

*Freightways Corp. of Delaware*, 283 F. 3d 572, 576 (3d Cir. 2002), *quoting Meyers v.*

*Pennypack Woods Home Ownership Ass'n.* 559 F. 2d 894, 904 (3d Cir. 1977), *rev'd. on*

*other grounds* (opining that "[T]he exclusion of critical evidence is an 'extreme'

sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.").

Indeed, as turnabout is fair play, were St. Paul's position accepted by the Court, it would also be appropriate to preclude the testimony of one of St. Paul's witnesses--Mr. Andrew Ruck-- whom St. Paul has identified as a trial witness and who, like Messrs. Gomez and Conlin, was never identified by St. Paul in its Initial Disclosure or Answers to Interrogatories.

For the foregoing reasons, and consistent with the facts and argument set forth below, St. Paul's Motion to Preclude the Testimony of Certain Witnesses should be denied.

## STATEMENT OF FACTS

This civil action is the second of two lawsuits arising out of the January 2000 termination for default of San Lucas as the general contractor for PHA's construction of the Richard Allen Homes Construction Project (the "Project"). Following the termination, San Lucas brought suit against St. Paul and PHA, among others, in the Court of Common Pleas of Philadelphia County. *San Lucas Construction Company, Inc. vs. St. Paul Mercury Insurance Company, d/b/a The St. Paul Surety, Philadelphia Housing Authority, Bob Kahan, d/b/a Contract Completion, Inc.,* Court of Common Pleas, Philadelphia County, February Term, 2000, No. 002190.

During the course of discovery in the state court action, St. Paul naturally inquired as to the identity of individuals who were involved with the Project. As early as November 20, 2000, when the defendants deposed Galo Gutierrez, the President of San

Lucas, George Gomez was identified as one of three project superintendents for the

Project:

> "Q.  They are both full-time?
>
> A.  Yes.
>
> Q.  And who else was there?
>
> A.  And I have, of course, I had a project superintendent and –
>
> Q.  Who was the project superintendent?
>
> A.  A project superintendent was Clinton Biddle, quality control individual Luis Guiterrez, and George Gomez, actually. There were three of them.
>
> Q.  Luis Gutierrez?
>
> A.  Yes, and they would be assigned to projects.
>
> Q.  Any relationship to you?
>
> A.  Yes, he's my nephew.
>
> Q.  And those are all full-time employees?
>
> A.  Basically, yes."

(See **Exhibit A,** Gutierrez Deposition Transcript, p. 19, lines 16-24; p. 20, lines 1-8).

On May 31, 2002, St. Paul commenced this lawsuit. Not surprisingly, armed with

the information gained in the earlier litigation, in its Rule 26(a)(1) Initial Disclosure filed

on September 13, 2002, St. Paul itself identified Mr. Gomez as an individual "likely to

have discoverable information that may be used to support its claims…" (See **Exhibit B**,

Plaintiff's Rule 26(a)(1) Initial Disclosures, at p. 3).

When discovery then ensued in this federal action, St. Paul again inquired as to the

identity of San Lucas' on-site supervisors. During the deposition of Timothy Trzaska,

former PHA Project Engineer, Mr. Trzaska identified George Gomez as one of San

Lucas' site supervisors:

100847.00610/11241870v3

"By Mr. Dunbar:

  Q. Who else did he use as site supervisor?

  A. I think in the beginning Clinton Biddle was the supervisor and Louis was like his assistant. And then when Clinton left, Louis kind of took over and another guy named George was there for a while helping out supervising, getting things done."

(See **Exhibit C**, Trzaska Deposition Transcript, p. 67, lines 22-24; p. 68, lines 1-7).

St. Paul served Interrogatories on PHA on October 30, 2002. Although the parties had already obtained a vast body of information from the discovery in the Common Pleas Court litigation, St. Paul's Interrogatories contained a blanket request for the identity of all employees of PHA who were in any way involved with the Project, and all persons who had personal knowledge of facts relating in any way to the case. Thus, Interrogatory No. 8 stated:

> "8. Identify the names and positions of all of your past and present employees who were at any time present at the Project or otherwise involved with the Project, state the nature and extent of each such person's involvement, and provide the dates when each such person was physically present at the Project, together with a brief description of each such person's activities at the Project on the dates when he or she was there."

Similarly, Interrogatory No. 16 stated:

> "16. Identify all persons who have personal knowledge of facts relating in any way to this case, including, but not limited to, San Lucas's work on the Project, NDK's completion of the Project, and/or any and all payments made in connection with any and all work done on the Project, and state the nature and extent of each such person's knowledge."

PHA objected to both of these Interrogatories on the grounds, among other things, that they were overly broad and unduly burdensome. (See Answers and Objections of

Defendant, Philadelphia Housing Authority, to Plaintiff's Interrogatories, Response Nos. 8 and 16.)[1] In objecting to Interrogatory No. 8, PHA pointed out that "PHA had numerous employees involved in the Project, including without limitation employees involved in: the HOPE VI grant proposal and application; design and planning for the Project; relocation of Richard Allen Homes tenants; contract administration; and the demolition and construction phases of the Project." Similarly, in objecting to Interrogatory No. 16, PHA explained that "[N]umerous persons have personal knowledge regarding San Lucas' work on the Project, NDK's work completing the contract, and payments made in connection with the Project, who cannot be identified."

Nevertheless, PHA made a good faith attempt to supply responsive information. In response to Interrogatory No. 8, in addition to persons who had been identified in PHA's Rule 26(a)(1) Initial Disclosures, PHA identified ten individuals who were involved in the construction phase of the Project, including contract administration and payments. Similarly, in response to Interrogatory No. 16, in addition to the ten individuals who had been identified in response to Interrogatory No. 8, PHA identified another 12 individuals who had personal knowledge relevant to the Project. The verification of these Answers, which was sent to St. Paul by cover letter dated April 3, 2003, was signed by James Conlin, one of PHA's Contract Administrators. (See **Exhibit D**, Cover Letter dated April 3, 2003.)

---

[1] This pleading is attached as Exhibit B to the Memorandum of Law Supporting Plaintiff St. Paul Mercury Insurance company's Motion to Preclude Testimony of Certain Witnesses.

100847.00610/11241870v3

Although Mr. Conlin was the PHA employee who personally attested that all of the information supplied in PHA's Answers was true and correct, St. Paul never noticed his deposition. Thereafter, discovery closed on May 22, 2003, and the parties submitted Pretrial Memoranda on May 22, 2003 and June 23, 2003, respectively.

In its Pretrial Memorandum, PHA identified both Mr. Gomez and Mr. Conlin as potential fact witnesses, together with eight other individuals who were not specifically identified in the Rule 26 disclosures and interrogatory answers, but who nonetheless were known to St. Paul from the documents produced and depositions taken during discovery.

St. Paul did exactly the same. Although he was not identified in St. Paul's Initial Disclosures or St. Paul's Answers to PHA's Interrogatories, St. Paul identified Andrew J. Ruck, as a potential fact witness "expected to testify about his involvement in the Project as legal counsel to St. Paul, including but not limited to communications and agreements with PHA and subcontractors, and the bidding process for completion of the contract." St. Paul's Pretrial Memorandum, at p. 9.

## ARGUMENT

In seeking to preclude the testimony of Messrs. Gomez and Conlin as witnesses at trial, St. Paul relies on a deceptive syllogism:  from the erroneous premise that PHA violated its obligation under Rule 26(e) to supplement its Initial Disclosures and Answers to Interrogatories, St. Paul leaps to the equally erroneous conclusion that under Rule 37(c), preclusion of the testimony is an appropriate sanction.

In fact, neither prong of this argument is correct.

I.     **PHA Complied in Good Faith with Federal Rule of Civil Procedure 26(e)**

Federal Rule of Civil Procedure 26 (e) provides, in relevant part:

> "A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> > (1)    A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing....
> >
> > (2)    A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect in complete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Fed. R. Civ. P. Rule 26(e) (2003).

Under Rule 26(e), a party has a duty to supplement "or correct" earlier disclosures or discovery responses to "include information thereafter acquired." But this duty is not unlimited or unqualified. On the contrary, "emphasizing the need to guard against undue precision in scrutinizing further disclosures," the rule only requires further disclosure if the original response was incomplete or incorrect "in some material respect," and then, only when the omitted or after-acquired material information "has not otherwise been made known to the other parties during the discovery process or in writing." Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §2049.1. To be sure, "[t]his is not an invitation to hold back material items and disclose them at the last moment. *Id.*

Page 8 of 14

"It does, however, recognize that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery." *Id.*

In the instant case, as explained above, the identity of Messrs. Gomez and Conlin was known to St. Paul through deposition testimony and the verification of PHA's Answers to St. Paul's Interrogatories. In these circumstances, Rule 26(e) did not require PHA to tell St. Paul what the latter already knew. Inasmuch as the material information had been revealed otherwise during the course of the lawsuit, there was no duty of supplementation or correction,[2] and the premise of St. Paul's syllogism is false.

## II.    Exclusion of the Testimony is Inappropriate Under Federal Rule of Civil Procedure 37

Even if PHA had been remiss in its obligation to disclose information required by Rule 26(a) or 26(e)(1), which it was not, the extreme sanction of excluding testimony would not be appropriate.

Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part, that a party who:

> "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to

---

[2] In its Motion, St. Paul complains that it was provided with an inaccurate address and no telephone number for George Gomez. PHA, in its Pretrial Memorandum, provided the latest—and only—information that it had—and still has--for Mr. Gomez. Inasmuch as he was an employee of San Lucas, the terminated General Contractor, and not of PHA, Mr. Gomez is not within the control of PHA. PHA listed him as a witness to preserve the right to call him to testify at trial if he can be located. Thus, whatever prejudice may exist for St. Paul having inaccurate and incomplete information similarly exists for PHA.

> or in lieu of this sanction, the court, on motion and after affording an
> opportunity to be hard, may impose other appropriate sanctions."

Fed. R. Civ. P. Rule 37(c)(1) (2003). Although Rule 37 is written in mandatory terms

and is designed to provide a strong inducement for disclosure of Rule 26(a) material, it is

well-settled in the Third Circuit that the Rule does not leave district courts without

discretion and that sanctions should <u>not</u> be imposed if substantial justification exists for

the failure to disclose, or if the failure to disclose was harmless:

> "Rule 37 is written in mandatory terms, and 'is designed to provide a
> strong inducement for disclosure of Rule 26(a) material.' *Harlow v.
> Eli Lilly & Co.,* 1995 WL 319728 at *2, 1995 U.S. Dist. LEXIS
> 7162 at *7 (N.D. Ill. May 26, 1995). Nonetheless, the rule expressly
> provides that sanctions should not be imposed if substantial
> justification exists for the failure to disclose, or if the failure to
> disclose was harmless. Thus, the rule does not leave district courts
> without discretion. *See, generally,* Fed.R.Civ.P. 37(c) (Advisory
> Committee Notes). In fact, one court has held that
> '[n]otwithstanding Rule 37(c), the district court may be found to
> have abused its discretion if [its] *exclusion of testimony* results in
> fundamental unfairness in the trial of the case.' *Orjias v. Stevenson,*
> 31 F.3d 995, 1005 (10th Cir.) (emphasis added), *cert. Denied,* ____
> U.S. ___, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994); *see also Bronk v.
> Ineichen,* 54 F.3d 425, 432 (7th Cir. 1995) (interpreting Rule
> 37(c)(1)) (In ruling on motion to call witness not previously
> identified, ''district court should consider prejudice or surprise to
> opposing party, ability of party to cure prejudice, likelihood of
> disruption, and moving party's bad faith or unwillingness to
> comply.' '') (citation omitted).

*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F. 3d at 156 (affirming

district court's refusal to exclude testimony where the party knew the names of the

witnesses and the scope of their relevant knowledge well before trial).

   The Third Circuit Court of Appeals has repeatedly admonished trial courts that,

while trial judges are afforded wide discretion in making rulings on the admissibility of

evidence, "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F. 3d 572, 576 (3d Cir. 2002), *quoting Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F. 2d 894, 904 (3d Cir. 1977), *rev'd. on other grounds*. Consistent with these tenets, in exercising their discretion to impose or refuse the extreme sanction of exclusion, district courts must carefully weigh several factors, including, along with the importance of the excluded testimony: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order. *Quinn, supra,* 283 F. 3d at 577, *Meyers, supra,* 559 F. 2d at 904-905; *Gant v. Klenzade,* 155 F.R.D. 102, 103 (E.D. Pa. 1994). The Third Circuit Court of Appeals first articulated these considerations in *Meyers, supra,* and reflecting this provenance, they have become known as the "*Meyers* factors."

Here, applying the *Meyers* factors, and as in *Quinn* and *Meyers*, it would be an abuse of discretion for the district court to exclude the testimony of the identified witnesses. There is obviously no bad faith on the part of PHA, as the witnesses were listed in PHA's Pretrial Memorandum which was filed approximately two months before the case was scheduled to be placed in the civil jury trial pool. St. Paul cannot claim prejudice or surprise, since it knew all along that these particular individuals had

Page 11 of 14

knowledge relevant to the case. The decision not to take their depositions was one made by St. Paul alone <u>before</u> the close of discovery. St. Paul did not depose all potential witnesses. Instead, St. Paul deposed only four of the numerous persons involved in the Project, including the more than 20 individuals whom PHA had identified earlier as having knowledge relevant to the action.

This case is wholly distinguishable from *Gant, supra,* on which St. Paul places its principal reliance.[3] There, the identity of the proposed fact witnesses was <u>not</u> known to the defendants before plaintiff's counsel submitted plaintiff's pretrial order. The court rejected plaintiff's argument that defendants could, or should, have learned of these witnesses by combing through documents supplied to them in response to a subpoena that had been served upon plaintiff's place of employment. *See Gant,* 155 F.R.D. at 103. Here, by contrast, the names of the two witnesses whose testimony is sought to be excluded were not buried in documents and were known to St. Paul before the discovery deadline.

There is thus no surprise or prejudice to St. Paul, and any inadvertent omission of the names from the earlier disclosures or answers to interrogatories is harmless. Under *Meyers, Quinn* and *Newman,* the Court should permit PHA to call Messrs. Gomez and Conlin as witnesses at trial.

---

[3] St. Paul also relies on *Taggart v. Vermont Transp. Co.,* 32 F.R.D. 587 (E.D. Pa. 1963), but *Taggart* was decided before Rule 37(c) was amended in 1993 to provide a framework for imposing the discovery sanction and before the Third Circuit laid out the applicable principles to be followed by district courts in *Meyers, Quinn* and *Newman.*

## **CONCLUSION**

For all the foregoing reasons, Defendant PHA respectfully requests that the Court

deny St. Paul's Motion to Preclude Testimony of Certain Witnesses.


Dated:   August 14, 2003                    Respectfully submitted,

                                            BLANK ROME LLP


                                            By: _____
                                                DENIS JAMES LAWLER
                                                Attorney I.D. No. 17154
                                                CHRISTOPHER A. LEWIS
                                                Attorney I.D. No. 29375
                                                DANIEL RHYNHART
                                                Attorney I.D. No. 78248
                                                One Logan Square
                                                Philadelphia, PA 19103-6998
                                                (215) 569-5500

                                                *Attorneys for Defendant*
                                                *Philadelphia Housing Authority*

## **CERTIFICATE OF SERVICE**

I, Christopher A. Lewis, hereby certify that on this 14th day of August, 2003, I did

cause to be served a true and correct copy of the foregoing Memorandum of Law in

Opposition to Motion to Preclude Expert Witnesses of Plaintiff St. Paul by Federal

Express, upon counsel of record as follows:

> William J. Devlin, Jr. Esquire
> Devlin & Devlin
> 100 West Elm Street, Suite 200
> Conshohocken, PA 19428
>
> Paul F. Strain, Esquire
> James A. Dunbar, Esquire
> Venable Baetjer & Howard, LLP
> 18900 Merchantile Bank &Trust B
> 2 Hopkins Plaza
> Baltimore, MD 21201-2978

_____
Christopher A. Lewis

100847.00610/11241870v3

# EXHIBIT A

1

```
 1        IN THE COURT OF COMMON PLEAS

 2       PHILADELPHIA COUNTY, PENNSYLVANIA

 3              - - -

 4    SAN LUCAS CONSTRUCTION  :
      COMPANY, INC.           :
 5         Plaintiff          :
           Vs.                :
 6    ST. PAUL MERCURY        :
      INSURANCE COMPANY, d/b/a:
 7    THE ST. PAUL SURETY,    :
      PHILADELPHIA HOUSING    :
 8    AUTHORITY and BOB KAHAN,:
      D/b/a CONTRACT          :
 9    COMPLETION, INC.        :
           Defendants     :002190
10              Oral deposition of

11    Galo Gutierrez, taken pursuant to Notice,

12    held at the offices of Esquire

13    Deposition Services, 1800 JFK Boulevard,

14    Suite 1100, Philadelphia, PA, on Tuesday,

15    November 20, 2000, at 10:10 a.m., before

16    John W. Begley, a Federally Approved

17    Registered Professional Reporter - Notary

18    Public in and for the Commonwealth of

19    Pennsylvania.

20         ESQUIRE DEPOSITION SERVICES

21            15th Floor

22       1880 John F. Kennedy Boulevard

23       Philadelphia, Pennsylvania 19103

24            215 - 988-9191
```

19

```
 1        A.    Meghan.

 2        Q.    And what is her position

 3   there?

 4        A.    She was basically like a, in

 5   this case, an administrator.  An

 6   administrator.

 7        Q.    Who else?

 8        A.    Of course we had a

 9   secretary.

10        Q.    And who was the secretary?

11        A.    I believe her name is

12   Tawana.

13        Q.    They are both full-time?

14        A.    Yes.

15        Q.    And who else was there?

16        A.    And I have, of course, I had

17   a project superintendent and --

18        Q.    Who was the project

19   superintendent?

20        A.    A project superintendent was

21   Clinton Biddle, quality control

22   individual Luis Gutierrez, and George

23   Gomez, actually.  There were three of

24   them.
```

20

```
 1         Q.    Luis Gutierrez?

 2         A.    Yes, and they would be

 3   assigned to projects.

 4         Q.    Any relationship to you?

 5         A.    Yes, he's my nephew.

 6         Q.    And those are all full-time

 7   employees?

 8         A.    Basically, yes.

 9         Q.    Now, you mentioned that you

10   had at any time employees in the field.

11   Were those laborers?

12         A.    We had laborers, carpenters.

13         Q.    Those were not full-time

14   employees; those were seasonal employees

15   for specific projects?

16         A.    Correct.

17         Q.    Today how many people are

18   employed in the office at San Lucas

19   Construction Company?

20         A.    Basically just me.

21         Q.    Just you?

22         A.    Yes.

23         Q.    And do you have any projects

24   ongoing currently?
```

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE<br>  COMPANY<br>385 Washington Street<br>St. Paul, Minnesota  55102 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | CIVIL ACTION NO. 02-3511 |
| | ) | |
| v. | )<br>) | |
| PHILADELPHIA HOUSING<br>AUTHORITY<br>2012 Chestnut Street<br>Philadelphia, Pennsylvania  19154 | )<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |
| | )<br>) | |
| Defendants. | ) | |

**PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1), Fed. R. Civ. P., Plaintiff St. Paul Mercury

Insurance Company ("St. Paul") respectfully submits its initial disclosures to

Defendant, Philadelphia Housing Authority ("PHA") as follows:

I.      **Preliminary Statement**

This disclosure statement includes responsive information currently

available to Plaintiff.  At this stage in the proceedings, it is impossible to ensure

that these disclosures identify all individuals and categories of documents that are

likely to be relevant to disputed facts plead with particularity in the pleadings, that

the disclosed individuals actually have relevant knowledge concerning the case, or

PHA's failure to pay St. Paul in accordance with the terms of the April 6, 2000

Takeover Agreement:

1.    Ulise Rivera, Project Manager (deceased)
      Carl Greene, Executive Director
      Sheila A. Maxwell, Contracting Officer
      James M. Herman, Contracting Officer
      Jim Fratoni, Project Engineer
      Larry C. Woods, Contract Representative
      Joyce Freeman, Contract Specialist
      Neil I. Wortman, Contracts Coordinator
      Albert Novak, Contracts Director
      Anthony Alveano, Prequalification Supervisor, Dept. of Modernization
      Greg Hampson
      Len Trower

      Philadelphia Housing Authority
      12 South 23rd Street
      Philadelphia, PA  19103-4497

2.    Galo A. Gutierrez, President
      Meghan K. Gutierrez, Project Administrator
      Clinton Biddle, Contracting Manager
      George Gomez

      San Lucas Construction Company, Inc.
      534 South 15th Street
      Philadelphia, PA  19146

3.    Christine T. Alexander, Esquire

      St. Paul Mercury Insurance Company
      P.O. Box 1138
      Baltimore, MD 21203-1138

4.    William A. Manginelli, President (expert retained by St. Paul)

      Trauner Consulting Services, Inc.
      One Penn Center
      1617 JFK Boulevard, Suite 600
      Philadelphia, PA  19103

# EXHIBIT C

1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3                 -   -   -

4   ST. PAUL MERCURY     :   CIVIL ACTION
    INSURANCE CO.        :
5                            :
                             :
6           v.               :
                             :
7   PHILADELPHIA HOUSING :
    AUTHORITY            :   NO. 02-3511
8                 -   -   -
            May, 14, 2003
9                 -   -   -

10

11            Oral deposition of TIMOTHY

12  TRZASKA taken pursuant to notice, was

13  held at the offices of Esquire Deposition

14  Services, 1880 John F. Kennedy Boulevard,

15  15th Floor, Philadelphia, Pennsylvania

16  19103 beginning at 3:07 p.m., on the

17  above date, before Raezelle J. Hadley, a

18  Commissioner of Deeds in the Commonwealth

19  of Pennsylvania.

20

21                -   -   -

22          ESQUIRE DEPOSITION SERVICES
                   15th Floor
23      1880 John F. Kennedy Boulevard
        Philadelphia, Pennsylvania 19103
24             (215) 988-9191

67

1    left.  I think Louis Gutierrez took over.

2        Q.    That was Mr. Gutierrez's

3    nephew; correct?

4        A.    I don't know.  Maybe.

5        Q.    And then who else was a site

6    supervisor for San Lucas?

7        A.    Directly for San Lucas those

8    are the only ones I'm really aware of.

9    That I remember.

10        Q.    You said earlier that he

11    didn't have enough people on site to do

12    site supervision.  How many more people

13    did he need than he actually had on the

14    job?

15        A.    In my opinion?

16        Q.    Yes.

17        A.    At least three or four.

18        Q.    And he was trying to get by

19    with one?

20            MR. RHYNHART:  Objection.

21            THE WITNESS:  One or two.

22    BY MR. DUNBAR:

23        Q.    Who else did he use as site

24    supervisor?

68

1      A.   I think in the beginning
2  Clinton Biddle was the supervisor and
3  Louis was like his assistant.  And then
4  when Clinton left, Louis kind of took
5  over and another guy named George was
6  there for a while helping out
7  supervising, getting things done.
8      Q.   What other problems did he
9  have besides the labor problems and site
10  supervision problems?
11     A.   Getting his materials on the
12  site.  I know he was having problems with
13  his materials.
14     Q.   What do you mean by having
15  problems with his materials?
16     A.   He would order a lot of
17  materials and leave them sitting outside
18  and they got ruined.  He did that a lot.
19     Q.   Ruined by the rain?
20     A.   By weather, yes.
21     Q.   Okay.
22     A.   Buildings, he'd start
23  something in a building and it wasn't
24  completed all the way and it would sit

# EXHIBIT D

# BLANK ■ ROME LLP
COUNSELORS AT LAW

*Phone:*      *(215) 569-5371*
*Fax:*        *(215) 832-5371*
*Email:*      *rhynhart@blankrome.com*

April 3, 2003

Jennifer Horn, Esquire
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Towson, MD  21285-5517

**Re:**   **St. Paul Mercury Insurance Co. v. Philadelphia Housing Authority
Civil Action No. 02-3511**

Dear Jennifer:

Enclosed please find the original verification of James Conlin for PHA's Answers to
Plaintiff's Interrogatories.

Very truly yours,

DANIEL E. RHYNHART

DER:rs
cc:    Denis James Lawler, Esquire (w/encl.)
Enclosure

bcc:    Marc Woolley (w/encl.)
        Robert Sullivan (w/encl.)