THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 02-CV-3511 |
| PHILADELPHIA HOUSING AUTHORITY, | : : : | |
| Defendant. | : : | |

## DEFENDANT PHILADELPHIA HOUSING AUTHORITY'S
## TRIAL MEMORANDUM (AS TO COUNT II)

By Order dated August 20, 2003, the Court severed the claim asserted by plaintiff St. Paul Mercury Insurance Company ("St. Paul") in Count II of the Complaint from the remaining counts and scheduled it for trial commencing on September 15, 2003.[1]

Defendant Philadelphia Housing Authority ("PHA"), by its undersigned counsel, respectfully submits this Trial Memorandum to familiarize the Court with the facts underlying Count II (which are, for the most part, undisputed) and to explain PHA's contentions regarding the applicable law.

---

[1] By letter dated September 8, 2003, Plaintiff's counsel advised the Court that the parties agreed to waive their right to a jury trial with respect to Count II.

## PRELIMINARY STATEMENT

In the original Construction Contract with San Lucas Construction Company ("San Lucas"), PHA agreed to a scheduled value of $158,000 for work to be performed in renovating a management office. PHA will establish at trial that San Lucas began this work, but never completed it. Instead, after San Lucas had performed work with a value of $74,490, PHA removed the remaining work from the scope of the contract and demolished the building in which the management office was to be located. In Count II of the Complaint, St. Paul seeks to be paid for this deleted work that neither San Lucas, nor the Completion Contractor, NDK, performed.

As explained more fully below, none of the evidence to be adduced by St. Paul can overcome the fundamental legal maxim governing this case: "no work, no pay."

For three reasons, judgment should be entered in favor of PHA on Count II of the Complaint. First, under the Takeover Agreement, PHA is required to pay St. Paul the remaining Contract Balance only "as and when such sums or amounts shall become due under the Contract." Because the remaining work on the management office was deleted and never performed, that part of the Contract Price applicable to it never became "due under the Contract" and therefore is not owed to St. Paul under the Takeover Agreement.

Second, while St. Paul has attempted to disavow its acceptance of Contract Modification No. 11, it is undisputed that on December 11, 2000, Ms. Christine Alexander, with full authority from St. Paul to approve contract modifications and periodic estimates, executed the proposed Contract Modification No. 11 and delivered it

2

via fax back to PHA.  Only when PHA subsequently sent to St. Paul revised paperwork to correct an eight cent mathematical error, which proposed no change at all to the amount of the deduction and which increased the amount of the remaining Contract Balance (albeit, if only by eight cents), did St. Paul refuse to sign the documentation.  It is hornbook law that an offer cannot be revoked after it has been accepted.  St. Paul did, in fact, accept Contract Modification No. 11, and it cannot now escape that acceptance.

Finally, under paragraph 8 of the Takeover Agreement, St. Paul may not take refuge in an arbitrary refusal to agree to a deductive modification to the construction contract.  To the contrary, paragraph 8 of the Takeover Agreement provides that the Surety's consent to deductive modifications will not be "unreasonably withheld." Consequently, even if the Court were to find that St. Paul never accepted Contract Modification No. 11, PHA would still be entitled to an adjustment decreasing the remaining Contract Balance.

Consistent with the facts and argument set forth below, the Court should enter judgment in favor of PHA and against St. Paul on Count II of the Complaint.

## STATEMENT OF FACTS

St. Paul's claims arise out of a Contract for Construction ("Construction Contract") relating to a project owned and managed by PHA, the Richard Allen Homes public housing project ("the Project").  See Complaint, ¶¶5, 6.  (A copy of the Construction Contract is attached to Plaintiff's Complaint as Exhibit "1.")  Under the terms of the Construction Contract, San Lucas was to renovate certain existing single-

3

family units and construct or renovate other buildings in the Project, for the fixed price of

$11,890,000.  See Complaint, ¶¶6, 7.

In connection with the Project, San Lucas requested that St. Paul, as surety, issue

payment and performance bonds.  *Id.* at ¶19.  On or about October 16, 1997, in exchange

for payment of a $108,588 premium, St. Paul issued a Performance Bond and a

Materialmen's Bond.  *Id.* at ¶¶23, 24.  (A copy of the Performance Bond is attached to

Plaintiff's Complaint as Exhibit "6.")  Pursuant to those bonds, St. Paul held itself out as

jointly and severally bound with San Lucas to PHA for the entire amount of the

$11,890,000 contract.

On January 24, 2000, after St. Paul demanded that PHA freeze all contract

payments to San Lucas, and after San Lucas abandoned the Project, PHA terminated the

construction contract with San Lucas.  *Id.* at ¶ 39.  PHA and St. Paul then entered into

negotiations regarding a Takeover Agreement that would ensure completion of the

project while preserving all of the parties' rights and claims arising out of the

Construction Contract and the Performance and Payment Bonds.

On March 17, 2000, David Lebor, Esquire, counsel for PHA, wrote to Andrew

Ruck, Esquire, counsel for St. Paul, enclosing Mr. Lebor's mark-up of the Proposed

Takeover Agreement.[2]  In both its draft and final forms[3], the Takeover Agreement recited

that St. Paul was "willing to undertake the completion of the remaining Contract work"

---

[2] A true and correct copy of that March 17, 2000 letter with enclosure is attached hereto and marked Exhibit "A."
[3] On March 21, 2000, Mr. Ruck wrote back to Mr. Lebor, enclosing a blacklined version of the Takeover Agreement.  A true and correct copy of that March 21, 2000 facsimile transmission cover sheet with attachment is attached hereto as Exhibit "B."

4

provided the "entire unpaid balance of the Contract Price (as hereinafter defined)" was

paid to it:

> WHEREAS, Surety is willing to undertake the completion of the remaining Contract work in the manner hereinafter related, provided the entire unpaid balance of the Contract Price (as hereinafter defined), including undisbursed retainage, together with any additional amount of money added to the Contract Price after the date hereof on account of extra work or changes agreed to by Owner in writing pursuant to the terms and provisions of the Contract is paid to Surety or its designee…

The unpaid balance of the Contract Price was thereafter defined as the "Contract

Balance," which the Takeover Agreement noted was the amount of $2,711,413.84 as of

Requisition No. 23 and Change Orders 1 through 8 through December 6, 1999:

> WHEREAS, as of Requisition No. 23, the adjusted contract price, including Change Orders 1 thru 8 through 12/6/99 is $12,068,944.92 (hereinafter called the "Contract Price") and as of the date hereof there remains a balance including retainage still held and unpaid by Owner, in the amount of $2,711,413.84 (hereinafter called the "Contract Balance") of which $90,414.72 per Requisition No. 24 has been approved for payment but has not been paid by the Owner. Therefore, upon execution of this Agreement, Owner will pay over to Surety the amount of $90,414.72. (Exhibit D).

The Takeover Agreement was finalized and signed by the parties on April 6, 2000.[4]  It is

clear from a cursory reading of the Takeover Agreement that the parties contemplated the

Contract Balance could increase, if extra work was added.  Thus, with respect to

additions, the fourth recital stated that the unpaid balance of the Contract Price would be

paid "…together with any additional amount of money added to the Contract Price on

account of extra work or changes…"  Similarly, in Paragraph 2, PHA agreed to pay St.

Paul the remaining Contract Balance "plus any amounts for extra work performed

pursuant to the terms and provisions of the Contract under written change orders

approved and assigned by Owner."

It was equally clear that the remaining Contract Balance would be <u>decreased</u> in the

event work was not completed or deleted from the scope of the Contract.  Paragraph 8 of

the Takeover Agreement expressly authorized deductive Change Orders.  Paragraph 8

stated that such deductive change orders could only be made with the Surety's prior

written approval.  At the request of Mr. Lebor, counsel for PHA, language was inserted in

the Takeover Agreement which provided that the Surety's approval could not be

unreasonably withheld or delayed:

> The Authorized Individual has no authority to negotiate deductive
> Change Orders, credits, back charges or net deductions from the Original
> Contract or the Contract Balance of any nature whatsoever without the
> Surety's prior written approval.  Approvals which are to be made by Surety
> shall not be unreasonably withheld or delayed and if not given within four
> (4) days from its receipt therefor, shall be deemed to have been approved.

The Contract Balance to be paid by PHA to St. Paul would only include payment

for work actually performed.  Thus, in the fourth recital, at the request of Mr.

Lebor, language was included confirming that the unpaid balance of the Contract

Price would be paid to St. Paul only "…as and when such sums or amounts shall

become due under the Contract."  Similarly, in paragraph 2, again at the request of

Mr. Lebor, the parties provided that "[T]he parties hereto agree that all such

payments shall only be made to Surety or the Completion Contractor to the extent

the Contract balance is due and payable under, and pursuant to the terms and

---

[4] A true and correct copy of the executed Takeover Agreement (without exhibits) is attached hereto as

provisions of, the Contract." Indeed, the very fact that the parties used the term

"Contract Balance" rather than a fixed numerical sum is itself compelling proof

that they intended that the amount would vary, rising or falling, as the demands of

the Project required.

On December 11, 2000, Tim Trzaska, PHA's Project Engineer, faxed Christine

Alexander, Equire, Surety Claims Attorney for St. Paul, a proposed deductive change

order titled "Contract Modification No. 11."[5]  On the same day, December 11, 2000, Mr.

Trzska also faxed Ms. Alexander a copy of the progress payment request, Periodic

Estimate #32 ("PE #32"), for work completed by NDK for the period 11/1/00 through

11/30/00.[6]  An Excel spreadsheet showing the detail of the 37 items that comprised the

payment request was included with PE #32.  For the management office, the spreadsheet

reflected that out of the scheduled value of $158,000, $74,940 was completed, and

retainage of $3,747 was being held, leaving a balance to be finished of $83,060.  Contract

Modification No. 11 proposed a credit of $83,060 because this remaining work had been

deleted from the contract scope.  Thus, in the section entitled "Description of Change,"

Contract Modification No. 11 stated:

> This modification is for a credit for work deleted from the contract
> scope.  Management office renovations stopped due to the default of the
> General Contractor for construction.  Due to the construction delay, PHA
> deleted the balance of the renovations from the contract scope.  The credit
> is the balance left on the approved schedule of values.

---

Exhibit "C."

[5] A true and correct copy of that December 11, 2000 facsimile transmission cover sheet from Mr. Trzaska
to Ms. Alexander, with attached proposed Contract Modification No. 11, is attached hereto as Exhibit
"D."

[6] A true and correct copy of that December 11, 2000 facsimile transmission cover sheet from Mr. Trzaska
to Ms. Alexander, with attachments, is attached hereto as Exhibit "E."

7

Accordingly, any deductive change order would require the Surety's approval and such approval could not be unreasonably withheld or delayed. You approved the deductive change on behalf of the Surety pursuant to your execution of change order number 11 on December 11, 2000 (copy enclosed). Because of an insignificant $1 accounting discrepancy increasing the final revised contract sum from $12,035,816 to $12,035,817 a revised modification/change order was submitted to you for signature which you denied because of the $83,060 which you had already approved and which, in any event pursuant to the Takeover Agreement, you could not unreasonably deny. Accordingly, please confirm that PHA is, in fact, not due to the Surety and will not be required to be paid to Surety.

In response to this communication, on September 26, 2001, counsel for St. Paul, Mr. James A. Dunbar, sent a letter to Mr. Lebor, again disputing Contract Modification No. 11, but this time advancing a different theory for rejecting the credit.[13] Mr. Dunbar said it was St. Paul's understanding that San Lucas had actually completed the work on the administrative office, but, at PHA's request, the office was subsequently demolished:

Your letter asserts that PHA is entitled to have St. Paul approve a deductive change order in the amount of $83,060 relating to the cost associated with an administrative office on the Richard Allen Homes site, apparently because PHA no longer wants the administrative office. While we continue to look into the matter, it is our present understanding that San Lucas Construction Co., Inc., St. Paul's principal, actually completed the work on the administrative office but, at PHA's request, the office was subsequently demolished.

Under the circumstances, there is no basis for the deductive change order PHA seeks, and there is no valid approval by St. Paul of that change order.

On August 14, 2003, Mr. Trower faxed Ms. Aleander various contract completion documents, including Contract Modification No. 11 as executed by Ms. Alexander, executed by Vernon Cooney on behalf of PHA.[14]

---

[13] A true and correct copy of that September 26, 2001 letter is attached hereto as Exhibit "M."

[14] A true and correct copy of that August 14, 2003 letter is attached hereto as Exhibit "N."

100847.00610/11249384v1

## ARGUMENT

**I.    The Takeover Agreement Does Not Authorize Payment For Work That Was Not Performed**

Under Pennsylvania law, the purpose of contract interpretation is to ascertain and effectuate the objectively manifested intentions of the contracting parties. *Pacitti v. Macy's,* 193 F.3d 766, 773 (3d Cir. 1999). If the contract as a whole is susceptible to more than one reading, the Court, sitting non-jury as the factfinder, must resolve the matter. *Id.* If, however, the contract is unambiguous, and can be interpreted only one way, the court interprets the contract as a matter of law. *Id.* The standard for determining whether a contract is ambiguous is well-settled:

> In determining whether a contract is ambiguous, the court 'assumes the intent of the parties to an instrument is ''embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'' *Id.* (citing *County of Dauphin v. Fidelity & Deposit Co.,* 770 F.Supp. 248, 251 (M.D.Pa.), *aff'd,* 937 F.2d 596 (3d Cir. 1991)). This does not mean, however, that the court is confined to the '' four corners of the written document.'' *Hullett,* 38 F.3d at 111 (citing *Mellon Bank,* 619 F.2d at 1011). Rather, the court reads the contract in the context in which it was made. *See Hullett,* 38 F.3d at 111 (citing *Stewart v. McChesney,* 498 Pa. 45, 444 A.2d 659,662 (1982)). Therefore, to determine the parties' intentions, the court may consider, among other things, "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Hullett,* 38 F.3d at 111 (quoting *Mellon Bank,* 619 F.2d at 1011).

*Id.*

In the instant case, the parties entered into the Takeover Agreement so that the balance remaining on the price of the Construction Contract could be paid to St. Paul, as surety, in connection with St. Paul's completion of the Project. This Contract Balance was not payable in one lump sum. Instead, the parties agreed that it would be paid only "as and when such sums shall become due under the Contract." *See* Takeover Agreement, Recitals and ¶2. Even though a Completion Contractor, NDK, was engaged by St. Paul to complete the Project, the payments made by PHA to St. Paul followed the Schedule of Values contained in the original Construction Contract between PHA and San Lucas, as demonstrated by the Periodic Estimates, including Periodic Estimate No. 32, reflecting that the management office was only 47% complete.

Regardless of whether St. Paul accepted Contract Modification No. 11, it would not be entitled to payment of the $83,060 attributable to the remaining work associated with renovating the management office absent proof that the work was actually performed. Inasmuch as neither San Lucas nor NDK ever submitted a progress payment request showing that the work was completed, PHA had no obligation to pay St. Paul that part of the Contract Price attributable to this scheduled value.

In short, no payment is due under the Takeover Agreement because that part of the Contract Balance was never earned.

12

## II.    St. Paul Could Not Unreasonably Withhold Its Approval of Deductive Contract Modifications

St. Paul will undoubtedly argue that it rejected the second, revised tender of Contract Modification No. 11. Whatever superficial appeal this argument may have, it suffers from two glaring flaws. First, as noted above, regardless of the <u>amount</u> of the Contract Balance, payments were due under the Takeover Agreement only if they were earned. This one was not. Second, at the request of PHA's attorney, language was included in the Takeover Agreement which both authorized deductive modifications and provided that the surety's approval of them could not be unreasonably withheld:

> The Authorized Individual has no authority to negotiate deductive Change Orders, credits, back charges or net deductions from the Original Contract or the Contract Balance of any nature whatsoever without the Surety's prior written approval. Approvals which are to be made by Surety shall not be unreasonably withheld or delayed and if not given within four (4) days from its receipt therefor, shall be deemed to have been approved.

Where, as here, the work was deleted from the Contract and never performed, St. Paul's refusal to approve a deductive modification is patently unreasonable. Indeed, in Periodic Estimate No. 32, which was submitted by St. Paul the same day, St. Paul agreed and represented to PHA that $83,060 worth of work remained to be finished in connection with the management office. Consequently, PHA is entitled to a reduction in the Contract Balance, even if St. Paul refused to agree to it.

13

**III.    St. Paul Accepted Contract Modification No. 11.**

Finally, St. Paul's protests to the contrary notwithstanding, it is clear that St. Paul

actually did accept Contract Modification No. 11.

The hoary law of offer and acceptance provides that acceptance is complete upon

dispatch, while a revocation occur only after it has been received by the other party:

> "Was the revocation of the offer effective or did it come too late?
> While an acceptance is complete where a letter is deposited in the mail, a
> retraction of an offer can have no effect until it is communicated to the
> person to whom the offer is made and the revocation can take effect only if
> it is communicated to the other party before its acceptance. 'An offer to
> contract, communicated by post must be considered as continually made
> until it reaches the other party. If he accepts before knowledge of a
> retraction of the offer, the contract is binding.'" *(Citations omitted.)*

*Owen M. Bruner Co. v. Standard Lumber Co.,* 63 Pa. Super. 283 (1915). *See also,* 17

C.J.S. §63d.[15]  In this case, PHA proposed Contract Modification No. 11 via fax on

December 11, 2000, and St. Paul executed and delivered it back to PHA via fax on the

same day.  At this point, a valid and binding contract existed with respect to the

modification.  Having communicated its acceptance of PHA's proposal, St. Paul lost the

power to revoke its acceptance.

That PHA subsequently tendered a revised Contract Modification No. 11—two

months later—to correct an eight cent mathematical error, is of no aid to St. Paul.  Under

Pennsylvania law, a reply which suggests changes or additions to the terms of an offer

---

[15] Generally, "[b]efore concluding that there is a valid contract under Pennsylvania law, the court must 'look to:  (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.'" *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603 (3d Cir. 2002), *citing ATACS Corp. v. Trans World Communications, Inc.,* 155 F.3d 659,666 (3d Cir. 1998).  These elements are easily established in the case of Contract Modification No. 11.

100847.00610/11249384v1

may be either an acceptance or a counteroffer, and this question is typically for the factfinder to decide.  *See Honeywell, Inc. v. American Standards Testing Bureau, Inc.,* 851 F. 2d 652, (3rd Cir. 1998), *cert. denied,* 488 U.S. 1010 (1999).  Here, there was no change suggested to the substantive terms of the proposed modification itself.  Both the scope of the work to be deleted and the price of the credit were the same.

## **CONCLUSION**

For all of the foregoing reasons, the Court should enter judgment in favor of PHA and against St. Paul on Count II of the Complaint.

Dated: September 12, 2003

Respectfully submitted,

BLANK ROME LLP

By: _____

DENIS JAMES LAWLER
Attorney I.D. No. 17154
CHRISTOPHER A. LEWIS
Attorney I.D. No. 29375
DANIEL RHYNHART
Attorney I.D. No. 78248
One Logan Square
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Defendant*
*Philadelphia Housing Authority*

EXHIBIT A

# BLANK ROME COMISKY & MCCAULEY LLP

*Counselors at Law*

Direct Dial Phone:  (215) 569-5658

Direct Dial Fax:    (215) 569-5692

Email Address:    lebor@blankrome.com

*Pennsylvania*
*New Jersey*
*Delaware*
*Maryland*
*Washington, DC*
*Florida*

March 17, 2000

*HAND DELIVERY*
Andrew J. Ruck, Esquire
Duane, Morris & Heckscher LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103

> Re:   *Takeover Agreement between The Philadelphia Housing Authority*
> *and St. Paul Mercury Insurance Company*

Dear Andy:

As we discussed, I am enclosing herewith a mark-up of the revised Takeover Agreement received yesterday. The enclosure has not been reviewed by my client and, accordingly, it is subject to any changes they may request. I look forward to hearing from you.

Very truly yours,

DAVID LEBOR

DL/dmb
Enclosure

cc:   M. Kevin Hubbard, Esquire (w/enc., hand delivery)

K:\LEBOR\Philadelphia Housing\ruck andrew letter March 16 2000.wpd



DEFENDANT'S
EXHIBIT
D-74

**DRAFT**
3/15/00

## TAKEOVER AGREEMENT

THIS AGREEMENT ("Agreement"), made and entered into this _____ day of March, 2000, by and between THE PHILADELPHIA HOUSING AUTHORITY ("Owner") and ST. PAUL MERCURY INSURANCE COMPANY ("Surety").

## WITNESSETH

WHEREAS, on or about November 6, 1997, Owner entered into a contract (herein called the "Contract") with San Lucas Contracting Co., Inc. ("Contractor") for all general construction work at the Richard Allen Homes ("Project"), as more fully described in the contract attached hereto as Exhibit "A", and

WHEREAS, Surety, executed the required Performance and Payment Bonds (Bond No. JX9663, herein called the "Bonds") each in the penal sum of $11,890,000 Exhibit "B", and

WHEREAS, Owner declared Contractor in default in performance of the Contract and on January 24, 2000, Owner terminated Contractor's right to proceed thereunder prior to the full completion of the work required, and Owner has made demand on Surety, under the provisions and conditions of the Performance Bond, to ensure completion of all required work that remains to be performed. Exhibit "C," and

WHEREAS, Surety is willing to undertake the completion of the remaining Contract work in the manner hereinafter related, provided the entire unpaid balance of the Contract Price (as hereinafter defined), including retainage, together with any additional amount of money added to the Contract Price on account of extra work or changes (pursuant to Paragraph 29, Changes, General Conditions, U.S. Department of Housing and urban Development) is paid to Surety or its designee; and

*[handwritten annotations: "after the date hereof", "undisbursed", "agreed to by Owner pursuant to the terms", "and", "provisions of the Contract"]*

WHEREAS, as of Requisition No. 23, the adjusted contract price, including Change Orders 1 thru 8 through 12/6/99 is $12,068,944.92 (hereinafter called the "Contract Price") and there remains a balance including retainage still held and unpaid by Owner, in the amount of $2,711,413.84 (hereinafter called the "Contract Balance") of which $90,414.72 per Requisition No. 24 has been approved for payment but has not been paid by the Owner. Therefore, upon execution of this Agreement, Owner will pay over to Surety the amount of $90,414.72. "Exhibit "D".

*[handwritten annotations: "as of the date hereof", "as and when such sums or amounts shall become due under the Contract"]*

*[handwritten annotation: "All subject to verification by client"]*

PH2\393154.1

NOW THEREFORE, in consideration of Surety agreeing to complete the work required by Contract and for other valuable considerations, the receipt of which is hereby acknowledged, the parties to this agreement do covenant and agree as follows:

1.    The preceding recitals are incorporated by reference as if fully set forth herein.

2.    Owner will pay to the Surety the remaining Contract Balance which as of Requisition No. 23 is $2,711,413.84, together with any additional amounts of money added to the Contract Price on account of extra work or changes to the scope of work ~~as authorized by the~~ ~~Contracting Officer, in accordance with Paragraph 27, Payments, and Paragraph 29, Changes,~~ ~~General Conditions, U.S. Department of Housing and Urban Development.~~ The amount to be ~~paid includes~~ all monies due or to become due Contractor arising out of or incidental to the performance of the Contract, including, but not limited to, the unpaid Contract Balance, including unpaid monies relating to approved change orders, retained percentages, ~~and monies~~ ~~relating to pending or subsequently submitted change orders approved by the Owner.~~ Owner will not withhold any amounts for any alleged damages caused or alleged to have been caused by Contractor's failure to substantially complete the Contract on time.  The Owner will pay the Contract Balance to Surety, or its designee upon the Surety's written directive (1) in accordance with ~~the terms of this Agreement; and (2)~~ the terms of the Contract as to time, amounts and methods of payment.

*[handwritten margin annotations:]* property agreed to by Owner / pursuant to the terms and provisions of the Contract. / This is repeat of first sentence i.e. all sums owed under the Contract will be paid when owed. / as and when such sums shall become due under the Contract.

*[handwritten, below paragraph 2:]* Provided that completion occurs by 10/1/00

3.    Insofar as Owner has any right, title or interest therein, Owner agrees that Surety, the Completion Contractor (as hereinafter defined) and/or its subcontractors will have the right to use, without charge, any of the materials, supplies, equipment or personal property furnished or supplied to or by Contractor that may be stored on the premises of the Project or which may have been fabricated for use in connection with the Project, whether or not presently upon the Project.

4.    Surety shall cause to be performed, with reasonable speed, all of the remaining work required by the Contract, as defined in the above-referenced scope, in accordance with the terms and conditions of said Contract, except as to the time of completion.  The terms of this Agreement and the Contract shall govern performance of the work, provided, however, that in the event of a conflict between the terms of this Agreement and the terms of the Contract, this Agreement shall take precedence.  Owner agrees that nothing in this Agreement taken by itself shall increase or expand Surety's liability to cover any sums, amounts, claims, liquidated or unliquidated damages, compensations, actual or punitive damages, penalties, assessments, fees or fines, whether claimed or imposed for any reason by any person, comptroller, entity, or Federal, State, County or Municipal governmental agency or political subdivision thereof, ~~for which~~ ~~Surety is not subject to liability~~ under the terms of the Performance Bond, nor shall Surety be liable in any event for any sum in excess of the penal amount of the Performance Bond, $11,890,000 ~~due to~~ its election to undertake to complete the work, as reduced by the aggregate amount of any sums expended by Surety in performance of this Agreement.

*[handwritten, which extended completion date clause:]* which is hereby extended to October 1 2000

*[handwritten below paragraph 4:]* Solely by virtue of

5.    Owner and Surety agree that any and all agreements, judgments, decisions, and any other matters pertaining to the day-to-day coordination of the work to be performed under

*If Surety elects to provide an on site representative, such representative shall not interfere with the production of the work under the Contract and shall agree to indemnify, defend and hold Owner harmless from any and all claims at the site arising

this Agreement will be made between Surety's/designated representative, and the Owner's out of engineer/architect in charge or a designated representative of the Owner as provided in the such Contract. Surety shall designate a third-party to represent its interests as provided in paragraph 8 representative of this Agreement, and Owner agrees to cooperate with Owner's designated representative in negligence providing any information concerning the performance of this Agreement. Surety may provide a or both the representative on the job site, but in the event Surety has not designated a representative to actions or receive oral or written communications, all communications from Owner to Surety are to be omissions. made to Christine Alexander, Esquire. It is agreed that in the event Surety exercises its right to Upon Owner's procure a new contractor (herein called the "Completion Contractor") to complete the Contract request work, that the parties shall engage in mutual cooperation in order to ensure a smooth transition of such work. ⌐selection of such contractor shall be subject to the written consent of Owner

6.    Surety will be entitled to time extensions in accordance with the terms and representative conditions of the Contract allowing same, as modified by this Agreement.    shall provide Owner with —to be completed

7.    The Surety shall use its best efforts to cause substantial completion of the work evidence required under this Agreement on or before October 1, 2000 ((the "Completion Date"). The of insurance Surety is hereby granted a non-compensatory time extension from the original completion date in to the Contract until the Completion Date. The assessment of any liquidated damages under the cover such Original Contract and this Agreement may begin on the day after the Completion Date; provided, representat however, that any such assessment of liquidated damages shall not include any alleged delays of acts, the Contractor which occurred at any time during the Contractor's performance of the work under omission the Original Contract, and that the calculation and assessment of any such liquidated damages negligence shall include the recognition of any excusable delays by the Surety in the performance of this in such Agreement. ↱to the extent, if at all, provided in the Contract    amounts as Owner shall

8.    The Surety shall be represented at the Project by the Completion Contractor. require Prior to commencement of the completion of the work and the issuance of the Notice to Proceed, naming the Surety shall specifically authorize in writing an individual with the Completion Contractor to Owner as be its representative (the "Authorized Individual") solely for the purposes set forth in this an paragraph. The Authorized Individual will represent the Surety in dealing with the Owner on additional day-to-day construction issues with respect to the Project. The Surety hereby designates the insured Authorized Individual to prepare and process pay requisitions on the Original Contract. thereunder. However, the Surety will sign all pay requisitions submitted to the Owner. Payments from the Owner shall be made payable to the Surety and transmitted to the Surety at the following address, unless and until the Owner is notified in writing of any different addresses:

to be covered by payein No Contractor employe

Christine Alexander, Esquire
St. Paul Mercury Insurance Company
5801 Centennial Way
Baltimore, MD  21209

The Authorized Individual shall have, on behalf of the Surety, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the

PH2\393154.1

work required by the Original Contract) requested or required by the Owner (hereinafter "Change Order") without the Surety's prior written approval, provided the Change Order does not exceed $70,000, and the Completion Contractor is given such additional time to perform the Change Order as is provided under the terms of the Contract. If the Change Order does exceed $70,000, or no additional time or an insufficient amount of time is given to the Completion Contractor to perform the Change Order, then the Surety's prior written approval is required to negotiate the Change Order and the final Change Order must be signed by the Surety and not the Authorized Individual. If the total of all of the approved Change Orders exceeds the sum of $100,000, then the Surety, not the Authorized Individual, must approve in writing all additional or subsequent Change Orders regardless of the amount of each such Change Order. The Authorized Individual has no authority to negotiate deductive Change Orders, credits, back charges or net deductions from the Original Contract or the Contract Balance of any nature whatsoever without the Surety's prior written approval. *Approvals which are to be made by Surety shall not be unreasonably withheld or delayed and if not given within 5 days of request therefor*

9.    Regardless of any claim or contentions which Contractor has made or may make against the Owner or which the Owner has made or may make against Contractor, the Owner will *it shall* fully perform all of the obligations undertaken by it in the Contract and among other things, will *be deemed to have been approved* make payment to Surety of all amounts due or to become due in relation to the Contract as if Surety were the original "Contractor" under the Contract.

10.    Neither this Agreement nor any provision hereof shall be deemed or construed to be an admission or concession of liability of any kind or nature by Contractor, Surety or the Owner or a waiver of any of the rights or claims of Contractor, Surety or the Owner in relation to *which the parties may have with respect to each other which* the Contract or the Bonds, including, but not limited to: (a) the claim that Owner prejudiced Surety by reducing the Contract Balance from 82% to 55% contrary to the terms of the Contract; (b) the claim that the Owner prejudiced Surety by not mitigating Surety's damages; and (c) the claims for pending change orders and extensions of time, all of which rights and claims Contractor, Surety and the Owner specifically reserve[ it being the understanding and intention of the parties that these claims and Owner's defenses thereto are in no way affected by this Agreement, and that in entering into this Agreement, the parties recognize these claims that Contractor or Surety may have against the Owner]. *to themselves any and all* The parties acknowledge and agree that by this Agreement, the Bonds and or by operation of law, Surety succeeds to all rights of the Contractor against the Owner whether by assignment, subrogation or otherwise, including but not limited to payment and compensation under the Contract and the right to assert any and all *it is their intention that* claims of the Contractor arising out of performance of the Contract.

*as permitted by the Contract,*

11.    Except for non-conforming or unapproved work, the Owner shall not withhold any of the Contract Balance from the Surety because of or on account of any claims, liens, suits or demands by any person or entity furnishing or alleged to have furnished labor and/or materials to the Project per Paragraph 27(k), Payments, page D-18, General Conditions, U.S. Department of Housing and Urban Development. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions. The total liability of the Surety under the Payment Bond is limited to and shall not exceed the penal sum of the Payment Bond, of $11,890,000. All Payment Bond payments properly made by the Surety shall be credited against the penal sum of *shall not be expanded by virtue of its entering into this Agreement*

*[handwritten: Surety's rights]*

the Payment Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of the Surety under the Payment Bond.

12.    This Agreement is solely for the benefit of the Owner and the Surety. The Owner and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise, upon anyone other than the Owner and the Surety. Specifically, the Owner and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

13.    This Agreement constitutes the whole of the understanding and agreement by and between the Owner and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Owner and the Surety acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

14.    This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Owner and Surety.

15.    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

16.    This Agreement shall be governed by and controlled by the laws of the Commonwealth of Pennsylvania.

17.    Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

        As to the Owner:
        Via certified mail, return receipt requested,
        postage prepaid to:

        _____
        _____
        _____

        With a copy to:

        _____
        _____
        _____

As to the Surety:
Via certified mail, return receipt requested,
postage prepaid to:

Christine Alexander, Esquire
St. Paul Mercury Insurance Company
(The St. Paul Companies)
5801 Centennial Way
Baltimore, MD 21209

With a copy to:

Gary A. Wilson, Esquire
Andrew J. Ruck, Esquire
Duane, Morris & Heckscher LLP
One Liberty Place
Philadelphia, PA 19103-7396

18.    This Agreement is effective as of the date first written above.

19.    This Agreement shall be binding upon the parties and their respective successors and assigns.

20.    In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegal or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected.

21.    It is understood and agreed by the Owner and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

22.    ~~The total liability~~ of the Surety under this Agreement and the Performance Bond upon its election to undertake to cause the remaining work to be completed after the expenditure of the Contract ~~Balance~~, is limited to and shall not exceed the penal sum of the Performance Bond in the ~~amount of $11,890,000~~. All payments properly made by the Surety for the performance of this Agreement shall be credited against the penal sum of the Performance Bond. Nothing in this Agreement constitutes a waiver of ~~such penal sum~~ or an increase in the liability of the Surety under the Performance Bond due to its election to cause the remaining work to be completed hereunder.

*This is the third time this is written in this Agreement!  |  any of Surety's rights*

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

**THE PHILADELPHIA HOUSING AUTHORITY**

By: _____
Title: _____

**ST. PAUL MERCURY INSURANCE COMPANY**

By: _____
Title: _____

PH2\393154.1                                    -8-

EXHIBIT B

03/21/00  11:26 FAX 00000000000 0000                                      ⓘ001/009



# DUANE, MORRIS & HECKSCHER LLP

ONE LIBERTY PLACE
PHILADELPHIA, PA 19103-7396
(215) 979-1000
(215) 979-1020 - FAX

## FACSIMILE TRANSMITTAL SHEET

**TO:**            See List Below

**FROM:**          Andrew J. Ruck

**DIRECT DIAL:**   (215) 979-1360

**DATE:**          March 21, 2000

**USER NUMBER:**   8452

**FILE NUMBER:**   D6476-1

**TOTAL # OF PAGES:**   9
(INCLUDING COVER SHEET)

**Message:**   The black line changes are those which you have requested. The
pencilled notations on paragraphs 4, 5, 6, 8, 10 and 22 are the
current editions. Please review and advise so that I can clear this
with my client and hopefully conclude this Takeover Agreement
with PHA.

| **RECIPIENT** | **PHONE NUMBER** | **FAX NUMBER** |
|---|---|---|
| David Lebor, Esquire | | (215) 569-5658 |



DEFENDANT'S
EXHIBIT
D-75

**NOTE:**  Original will NOT follow.

### CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE
REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN
ERROR, PLEASE IMMEDIATELY TELEPHONE THE SENDER ABOVE TO ARRANGE FOR ITS RETURN, AND IT
SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE.

If there is a problem with this transmission, please call us as soon as possible at (215) 979-1021.

03/21/00  11:26 FAX 000000000000000000                                        ☑002/009

# DRAFT
## ~~3/15/00~~ 3/17/00

### TAKEOVER AGREEMENT

THIS AGREEMENT ("Agreement"), made and entered into this _____ day of March, 2000, by and between THE PHILADELPHIA HOUSING AUTHORITY ("Owner") and ST. PAUL MERCURY INSURANCE COMPANY ("Surety").

### WITNESSETH

WHEREAS, on or about November 6, 1997, Owner entered into a contract (herein called the "Contract") with San Lucas Contracting Co., Inc. ("Contractor") for all general construction work at the Richard Allen Homes ("Project"), as more fully described in the contract attached hereto as Exhibit "A", and

WHEREAS, Surety, executed the required Performance and Payment Bonds (Bond No. JX9663, herein called the "Bonds") each in the penal sum of $11,890,000 Exhibit "B", and

WHEREAS, Owner declared Contractor in default in performance of the Contract and on January 24, 2000, Owner terminated Contractor's right to proceed thereunder prior to the full completion of the work required, and Owner has made demand on Surety, under the provisions and conditions of the Performance Bond, to ensure completion of all required work that remains to be performed.  Exhibit "C," and                          *discuss w/ Kevin*

WHEREAS, Surety is willing to undertake the completion of the remaining Contract work in the manner hereinafter related, provided the entire unpaid balance of the Contract Price (as hereinafter defined), including undisbursed retainage, together with any additional amount of money added to the Contract Price ~~after the date hereof~~ on account of extra work or changes ~~(pursuant to Paragraph 29, Changes, General Conditions, U.S. Department of Housing and urban Development)~~ agreed to by Owner pursuant to the terms and provisions of the Contract is paid to Surety or its designee as and when such sums or amounts shall become due under the Contract, and                *in writing*              *what is the retainage*
                                                                                    *what it is*
                                                                                    *for*

WHEREAS, as of Requisition No. 23, the adjusted contract price, including Change Orders 1 thru 8 through 12/6/99 is $12,068,944.92 (hereinafter called the "Contract Price") and as of the date hereof there remains a balance including (retainage) still held and unpaid by Owner, in the amount of $2,711,413.84 (hereinafter called the "Contract Balance") of which $90,414.72 per Requisition No. 24 has been approved for payment but has not been paid by the Owner. Therefore, upon execution of this Agreement, Owner will pay over to Surety the amount of $90,414.72. "Exhibit "D".

*payable to whom - existing Contractor*

PH2/393154.2

2. Owner will pay to Surety, which payment(s) will be paid by Surety to the Completion Contractor (defined below), the remaining Contract Balance as and when due under the Contract, which Control Balance Owner and Surety agree is $2,711,413.84 as of Requisition No. 23 (the last requisition made), plus any amounts for extra work performed pursuant to the terms and provisions of the Contract under written change orders approved and signed by Owner (collectively, the "Remaining Balance").  The parties hereto agree that all such payments shall only be made to Surety or the Completion Contractor to the extent the Remaining Balance is due and payable under, and pursuant to the terms and provisions of, the Contract.  Without limiting the generality of the foregoing or the waiver by Owner of any claims, suits, counterclaims, defenses or actions Owner may have against Contractor, Owner agrees that it will not offset from payment of the Remaining Balance to Completion Contractor or Surety any amount which is due or Owner believes is due to Owner by Contractor pursuant to any claim, suit, action or counterclaim Owner may have against Contractor under the Contract or otherwise whether at law or in equity.

k:\lebor\philadelphia housing\surety language.wpd

NOW THEREFORE, in consideration of Surety agreeing to complete the work required by Contract and for other valuable considerations, the receipt of which is hereby acknowledged, the parties to this agreement do covenant and agree as follows:

1.    The preceding recitals are incorporated by reference as if fully set forth herein.

2.    ~~Owner will pay to the Surety the remaining Contract Balance which~~ as of Requisition No. 23 is $2,711,413.84, together with any additional amounts of money added to the Contract Price on account of extra work or changes to the scope of work ~~as authorized by the Contracting Officer, in accordance with Paragraph 27, Payments, and Paragraph 29, Changes, General Conditions, U.S. Department of Housing and Urban Development. The amount to be paid includes all monies due or to become due Contractor arising out of or incidental to the performance~~ agreed to by Owner pursuant to the terms and provisions of the Contract, ~~including, but not limited to, the unpaid Contract Balance, including unpaid monies relating to approved change orders, retained percentages, and monies relating to pending or subsequently submitted change orders approved by the Owner.~~ as and when such sums shall become due under the Contract.  Provided that completion occurs by 10/1/00, Owner will not withhold any amounts for any alleged damages caused or alleged to have been caused by Contractor's failure to substantially complete the Contract on time.  The Owner will pay the Contract Balance to Surety, or its designee upon the Surety's written directive ~~(1)~~ in accordance with ~~the terms of this Agreement; and (2) the terms of the Contract as to time, amounts and methods of payment.~~

3.    Insofar as Owner has any right, title or interest therein, Owner agrees that Surety, the Completion Contractor (as hereinafter defined) and/or its subcontractors will have the right to use, without charge, any of the materials, supplies, equipment or personal property furnished or supplied to or by Contractor that may be stored on the premises of the Project or which may have been fabricated for use in connection with the Project, whether or not presently upon the Project.

4.    Surety shall cause to be performed, with reasonable speed, all of the remaining work required by the Contract, as defined in the above-referenced scope, in accordance with the terms and conditions of said Contract, except as to the time of completion which is hereby extended to October 1, 2000.  The terms of this Agreement and the Contract shall govern performance of the work, provided, however, that in the event of a conflict between the terms of this Agreement and the terms of the Contract, this Agreement shall take precedence.  Owner agrees that nothing in this Agreement taken by itself shall increase or expand Surety's liability to cover any sums, amounts, claims, liquidated or unliquidated damages, compensations, actual or punitive damages, penalties, assessments, fees or fines, whether claimed or imposed for any reason by any person, comptroller, entity, or Federal, State, County or Municipal governmental agency or political subdivision thereof, ~~for which Surety is not subject to liability~~ under the terms of the Performance Bond, nor shall Surety be liable in any event for any sum in excess of the penal amount of the Performance Bond, $11,890,000 ~~due to~~ solely by virtue of its election to undertake to complete the work, as reduced by the aggregate amount of any sums expended by Surety in performance of this Agreement.

PHZ393154.2                                      -2-

5.      Owner and Surety agree that any and all agreements, judgments, decisions, and any other matters pertaining to the day-to-day coordination of the work to be performed under this Agreement will be made between Surety's designated representative, and the Owner's engineer/architect in charge or a designated representative of the Owner as provided in the Contract. Surety shall designate a third-party to represent its interests as provided in paragraph 8 of this Agreement, and Owner agrees to cooperate with Surety's designated representative in providing any information concerning the performance of this Agreement. ~~Surety may provide a representative on the job site, but in the event Surety has not designated a representative to receive oral or written communications, all communications from Owner to Surety are to be made to Christine Alexander, Esquire.~~ If Surety elects to provide an on-site representative, such representative shall not interfere with the prosecution of the work under the Contract, and shall agree to indemnify, defend and hold Owner harmless from any and all claims at the site arising out of such representatives' acts, omissions or negligence in such amounts as owner shall require ~~naming Owner as an additional injured insureds.~~ It is agreed that in the event Surety exercises its right to procure a new contractor (herein called the "Completion Contractor") to complete the Contract work, that the ~~parties~~ selection of such Contractor shall be subject to the written consent of Owner ~~parties~~, shall engage in mutual cooperation in order to ensure a smooth transition of work. *(which consent shall not be unreasonably withheld)*

*omit*

6.      Surety will be entitled to time extensions in accordance with the terms and conditions of the Contract allowing same, as modified by this Agreement.

7.      The Surety shall ~~use its best efforts to~~ cause substantial completion of the work required under this Agreement to be completed on or before October 1, 2000 ((the "Completion Date"). The Surety is hereby granted a non-compensatory time extension from the original completion date in the Contract until the Completion Date. The assessment of any liquidated damages under the Original Contract and this Agreement may begin on the day after the Completion Date; provided, however, that any such assessment of liquidated damages shall not include any alleged delays of the Contractor which occurred at any time during the Contractor's performance of the work under the Original Contract, and that the calculation and assessment of any such liquidated damages shall to the extent, if at all, provided in the Contract, include the recognition of any excusable delays by the Surety in the performance of this Agreement.

8.      The Surety shall be represented at the Project by the Completion Contractor. Prior to commencement of the completion of the work and the issuance of the Notice to Proceed, the Surety shall specifically authorize in writing an individual with the Completion Contractor to be its representative (the "Authorized Individual") solely for the purposes set forth in this paragraph. The Authorized Individual will represent the Surety in dealing with the Owner on day-to-day construction issues with respect to the Project. The Surety hereby designates the Authorized Individual to prepare and process pay requisitions on the Original Contract. However, the Surety will sign all pay requisitions submitted to the Owner. Payments from the Owner shall be made payable to the Surety and transmitted to the Surety at the following address, unless and until the Owner is notified in writing of any different addresses:

PHI393154.2                                -3-

Christine Alexander, Esquire
St. Paul Mercury Insurance Company
5801 Centennial Way
Baltimore, MD 21209

The Authorized Individual shall have, on behalf of the Surety, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the work required by the Original Contract) requested or required by the Owner (hereinafter "Change Order") without the Surety's prior written approval, provided the Change Order does not exceed $70,000, and the Completion Contractor is given such additional time to perform the Change Order as is provided under the terms of the Contract. If the Change Order does exceed $70,000, or no additional time or an insufficient amount of time is given to the Completion Contractor to perform the Change Order, then the Surety's prior written approval is required to negotiate the Change Order and the final Change Order must be signed by the Surety and not the Authorized Individual. If the total of all of the approved Change Orders exceeds the sum of $100,000, then the Surety, not the Authorized Individual, must approve in writing all additional or subsequent Change Orders regardless of the amount of each such Change Order. The Authorized Individual has no authority to negotiate deductive Change Orders, credits, back charges or net deductions from the Original Contract or the Contract Balance of any nature whatsoever without the Surety's prior written approval. Approvals which are to be made by Surety shall not be unreasonably withheld or delayed and if not given within four (4) days ~~of~~ *from its receipt*, ~~request therefor,~~ shall be deemed to have been approved.

9.    Regardless of any claim or contentions which Contractor has made or may make against the Owner or which the Owner has made or may make against Contractor, the Owner will fully perform all of the obligations undertaken by it in the Contract and among other things, will make payment to Surety of all amounts due or to become due in relation to the Contract as if Surety were the original "Contractor" under the Contract.

10.    Neither this Agreement nor any provision hereof shall be deemed or construed to be an admission or concession of liability of any kind or nature by Contractor, Surety or the Owner or a waiver of any of the rights or claims of Contractor, Surety or the Owner in relation to the Contract or the Bonds, ~~including, but not limited to: (a) the claim that Owner prejudiced Surety by reducing the Contract Balance from 82% to 55%, contrary to the terms of the Contract; (b) the claim that the Owner prejudiced Surety by not mitigating Surety's damages; and (c) the claims for pending change orders and extensions of time, all of which rights and claims,~~ Contractor, Surety and the Owner specifically reserve, ~~it being the understanding and intention of the parties that these~~ to themselves any and all claims and ~~Owner's~~ defenses thereto which the parties may have with respect to each other and which are in no way affected by this Agreement, and that in entering into this Agreement, ~~the parties recognize these claims that Contractor or Surety may have against the Owner.~~ The parties acknowledge and agree that it is their intention that by this Agreement, the Bonds and or by operation of law, Surety succeeds to all rights of the Contractor against the Owner whether by assignment, subrogation or otherwise, including but not limited to payment and compensation under the Contract and the right to assert any and all claims of the Contractor arising out of performance of the Contract *and that to the extent Surety asserts any such rights Owner may also assert any of its rights, claims, or counterclaims or defenses that Owner has or may have against Contractor against Surety*

P020931542

*prior to the date hereof*

11. Except ~~for non-conforming or unapproved work, the~~ as permitted by the Contract, Owner shall not withhold any of the Contract Balance from the Surety because of or on account of any claims, liens, suits or demands by any person or entity furnishing or alleged to have furnished labor and/or materials to the Project per Paragraph 27(k), Payments, page D-18, General Conditions, U.S. Department of Housing and Urban Development. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions. The total liability of the Surety under the Payment Bond ~~is limited to and~~ shall not ~~exceed the penal sum of the Payment Bond, of $11,890,000~~ be expanded by virtue of its entering into this Agreement. All Payment Bond payments properly made by the Surety shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement constitutes a waiver of ~~such penal sum~~ Surety's rights or an increase in the liability of the Surety under the Payment Bond.

12. This Agreement is solely for the benefit of the Owner and the Surety. The Owner and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise, upon anyone other than the Owner and the Surety. Specifically, the Owner and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

13. This Agreement constitutes the whole of the understanding and agreement by and between the Owner and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Owner and the Surety acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

14. This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Owner and Surety.

15. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

16. This Agreement shall be governed by and controlled by the laws of the Commonwealth of Pennsylvania.

17. Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

> As to the Owner:
> Via certified mail, return receipt requested,
> postage prepaid to:
>
> _____
> _____
> _____

With a copy to:

_____
_____
_____

As to the Surety:
Via certified mail, return receipt requested,
postage prepaid to:

Christine Alexander, Esquire
St. Paul Mercury Insurance Company
(The St. Paul Companies)
5801 Centennial Way
Baltimore, MD 21209

With a copy to:

Gary A. Wilson, Esquire
Andrew J. Ruck, Esquire
Duane, Morris & Heckscher LLP
One Liberty Place
Philadelphia, PA 19103-7396

18.    This Agreement is effective as of the date first written above.

19.    This Agreement shall be binding upon the parties and their respective successors
and assigns.

20.    In the event that one or more provisions of this Agreement shall be declared to be
invalid, illegal or unenforceable in any respect, unless such invalidity, illegal or unenforceability
shall be tantamount to a failure of consideration, the validity, legality and enforceability of the
remaining provisions contained in this Agreement shall not in any way be affected.

21.    It is understood and agreed by the Owner and the Surety that this Agreement shall
be construed without regard to any presumption or other rule requiring construction against the
party causing this Agreement to be drafted.

22.    ~~The total liability of~~ All payments properly made by the Surety ~~under~~ for the
performance of this Agreement shall be credited against ~~and the Performance Bond
upon its election to undertake to cause the remaining work to be completed after the expenditure
of the Contract Balance, is limited to and shall not exceed~~ the penal sum of the Performance
Bond ~~in the amount of $11,890,000. All payments properly made by the Surety for the
performance of this Agreement shall be credited against the penal sum of the Performance Bond.~~
Nothing in this Agreement constitutes a waiver of ~~such penal sum~~ any of Surety's rights or an

*-6- Leave in*        *omitt*

PH2\393154.2

03/21/00  11:30 FAX 0000000000000000                                    ☑009/009

*undertake to*

increase in the liability of the Surety under the Performance Bond due to its election to cause the remaining work to be completed hereunder.

     IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

**THE PHILADELPHIA HOUSING AUTHORITY**

By: _____
Title: _____

**ST. PAUL MERCURY INSURANCE COMPANY**

By: _____
Title: _____

PHZ\393154.2                              -7-

EXHIBIT C

## TAKEOVER AGREEMENT

THIS AGREEMENT ("Agreement"), made and entered into this 6 <u>th</u> day of April, 2000, by and between THE PHILADELPHIA HOUSING AUTHORITY ("Owner") and ST. PAUL MERCURY INSURANCE COMPANY ("Surety").

### WITNESSETH

WHEREAS, on or about November 6, 1997, Owner entered into a contract (herein called the "Contract") with San Lucas Contracting Co., Inc. ("Contractor") for all general construction work at the Richard Allen Homes ("Project"), as more fully described in the contract attached hereto as Exhibit "A", and

WHEREAS, Surety, executed the required Performance and Payment Bonds (Bond No. JX9663, herein called the "Bonds") each in the penal sum of $11,890,000 Exhibit "B", and

WHEREAS, Owner declared Contractor in default in performance of the Contract and on January 24, 2000, Owner terminated Contractor's right to proceed thereunder prior to the full completion of the work required, and Owner has made demand on Surety, under the provisions and conditions of the Performance Bond, to ensure completion of all required work that remains to be performed.  Exhibit "C," and

WHEREAS, Surety is willing to undertake the completion of the remaining Contract work in the manner hereinafter related, provided the entire unpaid balance of the Contract Price (as hereinafter defined), including undisbursed retainage, together with any additional amount of money added to the Contract Price after the date hereof on account of extra work or changes agreed to by Owner in writing pursuant to the terms and provisions of the Contract is paid to Surety or its designee as and when such sums or amounts shall become due under the Contract, and

WHEREAS, as of Requisition No. 23, the adjusted contract price, including Change Orders 1 thru 8 through 12/6/99 is $12,068,944.92 (hereinafter called the "Contract Price") and as of the date hereof there remains a balance including retainage still held and unpaid by Owner, in the amount of $2,711,413.84 (hereinafter called the "Contract Balance") of which $90,414.72 per Requisition No. 24 has been approved for payment but has not been paid by the Owner. Therefore, upon execution of this Agreement, Owner will pay over to Surety the amount of $90,414.72.  "Exhibit "D".

NOW THEREFORE, in consideration of Surety agreeing to complete the work required by Contract and for other valuable considerations, the receipt of which is hereby acknowledged, the parties to this agreement do covenant and agree as follows:

1.    The preceding recitals are incorporated by reference as if fully set forth herein.

PHJ13911528

00000734

2.     Owner will pay to the Surety the remaining Contract Balance as and when due under the Contract, which Contract Balance Owner and Surety agree is $2,711,413.84 as of Requisition No. 23 (the last requisition paid), plus any amounts for extra work performed pursuant to the terms and provisions of the Contract under written change orders approved and signed by Owner. The parties hereto agree that all such payments shall only be made to Surety or the Completion Contractor to the extent the Contract Balance is due and payable under, and pursuant to the terms and provisions of, the Contract. Without limiting the generality of the foregoing and without Owner waiving any claims, suits, counterclaims, defenses or actions Owner may have against Contractor, Owner agrees that it will not offset from the payment of the Contract Balance to Surety any amount which is due or Owner believes is due to Owner by Contractor pursuant to any claim, suit, action or counterclaim Owner may have against Contractor under the Contract or otherwise whether at law or in equity.

3.     Insofar as Owner has any right, title or interest therein, Owner agrees that Surety, the Completion Contractor (as hereinafter defined) and/or its subcontractors will have the right to use, without charge, any of the materials, supplies, equipment or personal property furnished or supplied to or by Contractor that may be stored on the premises of the Project or which may have been fabricated for use in connection with the Project, whether or not presently upon the Project.

4.     Surety shall cause to be performed, all of the remaining work required by the Contract, in accordance with the terms and conditions of said Contract, except as to the time of substantial completion which is hereby extended to October 1, 2000. The terms of this Agreement and the Contract shall govern performance of the work, provided, however, that in the event of a conflict between the terms of this Agreement and the terms of the Contract, this Agreement shall take precedence. Owner agrees that nothing in this Agreement taken by itself shall increase or expand Surety's liability to cover any sums, amounts, claims, liquidated or unliquidated damages, compensations, actual or punitive damages, penalties, assessments, fees or fines, whether claimed or imposed for any reason by any person, comptroller, entity, or Federal, State, County or Municipal governmental agency or political subdivision thereof, under the terms of the Performance Bond, nor shall Surety be liable in any event for any sum in excess of the penal amount of the Performance Bond, $11,890,000 solely by virtue of its election to undertake to complete the work, as reduced by the aggregate amount of any sums expended by Surety in performance of this Agreement.

5.     Owner and Surety agree that any and all agreements, judgments, decisions, and any other matters pertaining to the day-to-day coordination of the work to be performed under this Agreement will be made between Surety's designated representative, and the Owner's engineer/architect in charge or a designated representative of the Owner as provided in the Contract. Surety shall designate a third-party to represent its interests as provided in paragraph 8 of this Agreement, and Owner agrees to cooperate with Surety's designated representative in providing any information concerning the performance of this Agreement. It is agreed that in the event Surety exercises its right to procure a new contractor (herein called the "Completion Contractor") to complete the Contract work, that the selection of such Contractor shall be subject to the written consent of Owner(which consent shall not be unreasonably withheld) and Owner,

00000735

Surety and Completion Contractor, shall engage in mutual cooperation in order to ensure a smooth transition of work.

6.      Surety will be entitled to time extensions in accordance with the terms and conditions of the Contract allowing same, as modified by this Agreement.

7.      The Surety shall cause substantial completion of the work required under this Agreement to be completed on or before October 1, 2000 ((the "Completion Date"). The Surety is hereby granted a non-compensatory time extension from the original completion date in the Contract until the Completion Date. The assessment of any liquidated damages under the Original Contract and this Agreement may begin on the day after the Completion Date; provided, however, that (i) any such assessment of liquidated damages shall not include any alleged delays by the Contractor which occurred at any time during the Contractor's performance of the work under the Original Contract, and that the calculation and assessment of any such liquidated damages shall to the extent, if at all, provided in the Contract, include the recognition of any excusable delays by the Surety in the performance of this Agreement; and (ii) the extension granted hereby shall not be deemed to be a waiver or preclude Owner from making a claim for delay or liquidated damages arising out of delays occurring prior to the date hereof as against the Contractor only.

8.      The Surety shall be represented at the Project by the Completion Contractor. Prior to commencement of the completion of the work and the issuance of the Notice to Proceed, the Surety shall specifically authorize in writing an individual employed by the Completion Contractor to be its representative (the "Authorized Individual") solely for the purposes set forth in this paragraph. The Authorized Individual will represent the Surety in dealing with the Owner on day-to-day construction issues with respect to the Project. The Surety hereby designates the Authorized Individual to prepare and process pay requisitions on the Original Contract. However, the Surety will sign all pay requisitions submitted to the Owner. Payments from the Owner shall be made payable to the Surety and transmitted to the Surety at the following address, unless and until the Owner is notified in writing of any different addresses:

> Christine Alexander, Esquire
> St. Paul Mercury Insurance Company
> 5801 Centennial Way
> Baltimore, MD 21209

The Authorized Individual shall have, on behalf of the Surety, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the work required by the Original Contract) requested or required by the Owner (hereinafter "Change Order") without the Surety's prior written approval, provided the Change Order does not exceed $70,000, and the Completion Contractor is given such additional time to perform the Change Order as is provided under the terms of the Contract. If the Change Order does exceed $70,000, or no additional time or an insufficient amount of time is given to the Completion Contractor to perform the Change Order, then the Surety's prior written approval is required to negotiate the Change Order and the final Change Order must be signed by the Surety and not the Authorized Individual. If the total of all of the approved Change Orders exceeds the sum of

00000736

$100,000, then the Surety, not the Authorized Individual, must approve in writing all additional or subsequent Change Orders regardless of the amount of each such Change Order. The Authorized Individual has no authority to negotiate deductive Change Orders, credits, back charges or net deductions from the Original Contract or the Contract Balance of any nature whatsoever without the Surety's prior written approval. Approvals which are to be made by Surety shall not be unreasonably withheld or delayed and if not given within four (4) days from its receipt therefor, shall be deemed to have been approved.

9.    Regardless of any claim or contentions which Contractor has made or may make against the Owner or which the Owner has made or may make against Contractor, the Owner and Surety will each fully perform all of their respective obligations undertaken by them in the Contract and among other things, will make payment to Surety of all amounts due or to become due in relation to the Contract and this Agreement as if Surety were the original "Contractor" under the Contract.

10.    Neither this Agreement nor any provision hereof shall be deemed or construed to be an admission or concession of liability of any kind or nature by Contractor, Surety or the Owner or a waiver of any of the rights or claims of Contractor, Surety or the Owner in relation to the Contract or the Bonds. Contractor, Surety and the Owner specifically reserve to themselves any and all claims and defenses thereto which the parties may have with respect to each other and which are in no way affected by this Agreement.

11.    Except as permitted by the Contract, Owner shall not withhold any of the Contract Balance from the Surety because of or on account of any claims, liens, suits or demands by any person or entity furnishing or alleged to have furnished labor and/or materials to the Project prior to the date hereof. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions. The total liability of the Surety under the Payment Bond shall not be expanded by virtue of its entering into this Agreement. All Payment Bond payments properly made by the Surety shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement shall constitute a waiver of Surety's rights or an increase in the liability under the Payment Bond.

12.    This Agreement is solely for the benefit of the Owner and the Surety. The Owner and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise, upon anyone other than the Owner and the Surety. Specifically, the Owner and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

13.    This Agreement constitutes the whole of the understanding and agreement by and between the Owner and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Owner and the Surety acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

00000737

14.    This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Owner and Surety.

15.    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

16.    This Agreement shall be governed by and controlled by the laws of the Commonwealth of Pennsylvania.

17.    Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

> As to the Owner:
> Via certified mail, return receipt requested,
> postage prepaid to:
>
> Sheila Maxwell, Contracting Officer
> The Philadelphia Housing Authority
> 12 South 23rd Street, 5th Floor
> Philadelphia, PA  19103
>
> With a copy to:
>
> Debra Sandifer, General Counsel
> The Philadelphia Housing Authority
> 12 South 23rd Street, 6th Floor
> Philadelphia, PA  19103
>
> As to the Surety:
> Via certified mail, return receipt requested,
> postage prepaid to:
>
> Christine Alexander, Esquire
> St. Paul Mercury Insurance Company
> (The St. Paul Companies)
> 5801 Centennial Way
> Baltimore, MD  21209
>
> With a copy to:
>
> Gary A. Wilson, Esquire
> Andrew J. Ruck, Esquire
> Duane, Morris & Heckscher LLP
> One Liberty Place
> Philadelphia, PA 19103-7396

00000738

-5-

18.     This Agreement is effective as of the date first written above.

19.     This Agreement shall be binding upon the parties and their respective successors and assigns.

20.     In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected.

21.     It is understood and agreed by the Owner and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

22.     All payments properly made by the Surety for the performance of this Agreement shall be credited against the penal sum of the Performance Bond.  Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of the Surety under the Performance Bond due to its election to undertake to cause the remaining work to be completed hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

THE PHILADELPHIA HOUSING
AUTHORITY

By: _____
        Carl R. Greene
Title: __Executive Director__

ST. PAUL MERCURY INSURANCE
COMPANY

By: _____
Title: _____

00000739

EXHIBIT D



# PHILADELPHIA HOUSING AUTHORITY

HOPE VI Construction Office
Richard Allen Homes
829 Alder Place
Philadelphia PA 19123
Telephone Number (215) 684 - 8650
Fax Number (215) 684 - 8653

## FACSMILE TRANSMISSION COVER SHEET

DATE: _12/11/00_  TIME: _____     NUMBER OF PAGES INCLUDING COVER: _3_

TO: ___Christine Alexander_____     FAX #: _410 205 0605_

FROM: ___T - TRZASKA_____

Please sign attached modification to delete unrequired office work as previously discussed. Please sign both pages.

thanks.
Tim.

**Contract Modification**

Contract Number: _____ 9589 _____    Change Order Number: _____ 11 _____    Date: December 11, 2000
Contractors Name: __ Saint Paul Mercury Insurance Company _____
Address: __ 5801 Centennial Way, Baltimore, MD 21209 _____
Site Name: __ Richard Allen - Hope VI _____    Project Architect: __ Wallace Roberts & Todd ____

THE FOLLOWING CHANGES ARE MADE TO THE CONTRACT DOCUMENTS

**A. ADJUSTMENT IN CONTRACT PRICE:**

(1) Original Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,890,000.00
(2) Net Change By Previous Contract Modification: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $228,876.92
(3) Contract Amount Prior To This Contract Modification: . . . . . . . . . . . . . . . . . . . . . . . . . $12,118,876.92
(4) Contract Will Be **Decreased** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ($83,060.00)
(5) New Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $12,035,816.92

**B. ADJUSTMENTS IN CONTRACT TIME:**    In accordance with the takeover Agreement dated 4/6/00.

(1) The Contract Time from Addendum 1 Page E-3, #2 in the Agreement
(2) Net change in Contract Time by previous Contract Modification(s):
(3) Contract Time prior to this Contract Modification:
(4) Net Increase in contract Time by this Contract Modification:
(5) New Contract Time of Completion:
(6) The Work will be substantially complete on or before:
(7) The work will be completed and ready for final payment on or before:

**C.** This CHANGE ORDER incorporates Change Authorization Number: _____ 11 _____ Dated: _____ 12/11/00 _____

**D. OTHER ADJUSTMENTS IN CONTRACT PRICE OR CONTRACT TIME** - Adjustments for separable parts of the work referenced in paragraph _____ of the Agreement are detailed in the following documents:

**E. WORK SEQUENCING CONDITIONS** - The contractor shall complete the work changed and affected by this Contract Modification on or before __ 12/11/00 __ , in accordance with the progress schedule.

**F.** Only the Contracting Officer may execute a Contract Modification on behalf of the Authority.

**G.** This modification and all work affected thereby is subject to all contract terms, conditions and covenants.

**H. RECOMMENDED:**                     **APPROVED:**


_____          _____
By the Architect                Date      By PHA                      Date

**I. CERTIFICATION, ACCEPTANCE & WAIVER OF FUTURE CLAIMS BY THE CONTRACTOR:**
This is to certify to the best of my knowledge and belief that the cost and pricing data described in page 2 of this Contract Modification ("CM") entitled " Contractors Proposal for Adjustment" is complete and accurate as of ____ 12/11 ____ , 2000 and that a financial management capability exists to account folly and accurately for the financial transactions under this Contract. I further certify that I understand the Contract Price may be subject to downward re-negotiation where the above cost and pricing data have been determined, as a result of audit, not to have been complete, current and accurate as of the above date. The undersigned Contractor also acknowledges and agrees that the adjustment in Contract Price and Contract Time stipulated in this CM represents full compensation for all increases or decreases in the cost or the time required to perform the entire work under the contract arising from this CM. Acceptance of this waiver by the contractor provides for an all inclusive settlement for all changes, any delay, and all costs, and represents a waiver of any and all rights to file a claim on account of this CM.


_____          _____
By the Contractor - Print Name             Signature                    Date

**Contract Modification**

| DISTRIBUTION: Contractor, Finance, Wage Compliance, Mod Coordinator, HOPE VI, Capital Projects, Contract File |
|---|

**DESCRIPTION OF CHANGE:**

      This modification is for a credit for work deleted from the contract scope.  Management office renovations stopped due to the default of the General Contractor for construction.  Due to the construction delay, PHA deleted the balance of the renovations from the contract scope.  The credit is the balance left on the approved schedule of values.

The credit of $83,060.00 is considered fair and reasonable according to the approved schedule of values.

| AUTHORIZED CONTRACTOR REPRESENTATIVE (Typed/Printed): | SIGNATURE: | DATE: |
|---|---|---|
| | | |

EXHIBIT E



# PHILADELPHIA HOUSING AUTHORITY

HOPE VI Construction Office
Richard Allen Homes
829 Alder Place
Philadelphia PA 19123
Telephone Number  (215) 684 - 8650
Fax Number  (215) 684 - 8653

## FACSMILE TRANSMISSION COVER SHEET

DATE: 12/11/06 ____ TIME: _____      **NUMBER OF PAGES INCLUDING COVER:** 6 ___

TO: Christie Alexander _____ FAX #: 410 . 205 . 0605 ___

FROM: ___ T TRZASKA. _____

PE # 32

Please fax back to me At   215 - 684 . 8653.

thanks.
  Tim

HOPE VI Construction Office
Richard Allen Homes
829 Alder Place
Philadelphia PA 19123
Telephone Number (215) 684 - 8650
Fax Number (215) 684 - 8685



PHILADELPHIA HOUSING AUTHORITY

*PROVIDING QUALITY HOUSING EFFICIENTLY,
EFFECTIVELY AND WITH INTEGRITY*

2012 CHESTNUT STREET
PHILADELPHIA, PENNSYLVANIA 19103-4497
215-684-4000 (VOICE), 215-684-4070TTY

December 11, 2000

Saint Paul Fire & Marine Insurance Company
P.O. Box 1138
Baltimore, MD 21203-1138
Attn: Ms. Christine Alexander, Esq.

RE:    PHA Contract # 9589 - Completion of Quadrant B3 & B2
       Periodic Estimate # 32 - Work in Place

Dear Ms. Alexander:

In accordance with the take over agreement dated 4/6/00 between PHA and St Paul, enclosed is a
copy of the progress payment request, Periodic Estimate # 32 (PE # 32) for work completed by
St. Paul's General Contractor, NDK, for the period 11/1/00 through 11/30/00.   This is in
accordance with NDK's request to PHA, copy enclosed  of NDK's letter dated 4/24/00.

St Paul  must request  payment for Periodic Estimate # 32  by using the enclosed copy of form
HUD-51001, pages 1 and 2, or by filling the data on a blank copy of the form HUD-51001.

I have enclosed a copy of the Excel spread sheet,  pages 1 through 19, (and the two page
summary of the spread sheet) that shows the details that make up the 37 items listed on the form
HUD-51001.    St. Paul does not have to submit the 19 page detailed breakdown with your
request for payment.

Sincerely,
The Philadelphia Housing Authority

Timothy Trzaska
Project Engineer

cc:    A. Brown     C. Moseley   L. Trower     Gabe Caputo(NDK)
Attachments
Periodic Estimate for Partial Payment - form HUD-51001, PE#32
Excel spreadsheet for PE#32

SP001003.P30

**Periodic Estimate for
Partial Payment**

U. S. Department of Housing
and Urban Development
Office of Public and Indian Housing

Submit original and one copy to the Public Housing Agency

Complete instructions are on the back of this form                                    OMB Approval No. 2577-0025 (exp 9/30/97)

Public reporting for this collection of information is estimated to average 3.5 hours per response, including the time for reviewing instructions, searching existing
data sources, gathering and maintaining the data needed, and completing the collection of information.  Send comments regarding this burden estimate
or any other aspect of this collection of information, including suggestions for reducing this burden, to the Report s Management Officer, Office of Information Policies
and Systems, U. S. Deparment of Housing and Urban Development, Washington, D. C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction
Project (2577-0025), Washington, D. C. 20503.   Do not send this completed form to either of the above addresses.

| Name of Public Housing Agency | Periodic Estimate Number | Period |
|---|---|---|
| **Philadelphia Housing Authority** | **32** | **11/01/00 to 11/30/00** |

| Location of Project | Project Number |
|---|---|
| **Richard Allen Homes - HOPE VI Site - B2 and B3** | **003** |

| Name of Contractor | Contract Number |
|---|---|
| **St. Paul Mercury Insurance Company** | **9589** |

| Item Number (1) | Description of Item (2) | | Completed to Date (3) | |
|---|---|---|---|---|
| 1 | Bond | | $ | 108,588.00 |
| 2 | Building Permit | | $ | 150,395.00 |
| 3 | Start up / Mobilization | | $ | 100,000.00 |
| 4 | Security | | $ | 288,000.00 |
| 5 | Project Supervision | | $ | 165,017.00 |
| 6 | Management Office | | $ | 74,940.00 |
| 7 | Building | 41 | $ | 917,000.00 |
| 8 | Building | 42 | $ | 1,056,000.00 |
| 9 | Building | 43 | $ | 986,000.00 |
| 10 | Building | 44 | $ | 628,000.00 |
| 11 | Building | 45 | $ | 608,000.00 |
| 12 | Building | 46 | $ | 827,000.00 |
| 13 | Landscape Quadrant B-3 | | $ | 69,000.00 |
| 14 | Ornamental Fence B-3 | | $ | 25,000.00 |
| 15 | Building | 27 East | $ | 300,000.00 |
| 16 | Building | 27 West | $ | 300,000.00 |
| 17 | Building | 28 | $ | 600,000.00 |
| 18 | Building | 29 | $ | 680,000.00 |
| 19 | Building | 30 East | $ | 210,000.00 |
| 20 | Building | 30 West | $ | 300,000.00 |
| 21 | Building | 31 | $ | 605,000.00 |
| 22 | Building | 32 | $ | 605,000.00 |
| 23 | Building | 33 | $ | 705,000.00 |
| 24 | Building | 34 | $ | 705,000.00 |
| 26 | Landscape Quadrant B-2 | | $ | 69,000.00 |
| 27 | Ornamental Fence B-2 | | $ | 25,000.00 |
| 25 | Infill Units | | $ | 700,000.00 |
| 28 | Value of Original Contract Completed | | | $ 11,806,940.00 |
| 29 | Change Order No. | 1 | $ | 30,768.00 |
| 30 | Change Order No. | 2 | $ | 68,220.00 |
| 31 | Change Order No. | 3 | $ | (27,383.00) |
| 32 | Change Order No. | 4 | $ | (7,424.00) |
| 33 | Change Order No. | 5 | $ | 11,407.00 |
| 34 | Change Order No. | 6 | $ | 56,705.00 |
| 35 | Change Order No. | 7 | $ | 20,592.00 |
| 36 | Change Order No. | 8 | $ | 26,059.92 |
| 37 | Value of Change Orders Completed | | | $ 178,944.92 |
| | **Value of Work Completed to Date** | | **$ 11,985,884.92** | **$ 11,985,884.92** |

PE # 32

## Instructions

**Headings.** Enter all identifying data as required. Periodic estimates must be numbered in sequence beginning with the number 1.

**Columns 1 and 2.** The "Item Number" and "Description of Item" must correspond to the number and descriptive title assigned to each principal division of work in the "Schedule of Amounts for Contract Payments" form HUD-51000.

**Column 3.** Enter the accumulated value of each principal division of work completed as of the closing date of the periodic estimate. Enter the total in the space provided.

**Certifications.** The certification of the contractor includes the analysis amounts used to determine the net balance due. In the first paragraph, enter the name of the Public Housing Agency, the Contractor, and the date of the contract. Enter the calculations used in arriving at the "Balance due This Payment" on lines 1 through 15.

Enter the contractor's name and signature in the certification following line 16.

The latter portion of this certification relating to payment of legal rates of wages is required by the contract before any payment may be made. However, if the contractor does not choose to certify on behalf of his subcontractors to wage payments made by them, he may modify the language to cover only himself and attach a list of all subcontractors who employed labor on the site during the period covered by the Periodic Estimate, together with the individual certifications of each.

---

### Certification of the Contractor or his Duly Authorized Representative

According to the best of my knowledge and belief, I certify that all items and amounts shown on the other side of this form are correct, that all work has been performed and material supplied in full accordance with the items and conditions of the contract between the (name of owner) __Philadelphia Housing Authority__ and (contractor) __St. Paul Mercury Insurance Company__ dated ____April 6, 2000,____ and duly authorized deviations, substitutions, alterations, and additions: that the following is a true and correct statement of the Contract Account up to and including the last day of the period by this estimate, that no part of the "Balance Due This Payment" has been received.

| | | |
|---|---|---:|
| 1. Original Contract Amount................................................................ | | $ 11,890,000.00 |
| Approved Change Orders | | |
| 2. Additions (Total from Col. 3, form HUD -51002).... | $ 178,944.92 | |
| 3. Deductions (Total from Col. 5, form HUD-51002) | (net) | |
| 4. Current Adjusted Contract Amount (line 1 plus or minus net) | | $ 12,068,944.92 |
| Computation of Balance Due this Payment | | |
| 5. Value of Original Contract completed to date (from other side of this form) | | $ 11,806,940.00 |
| Completed Under Approved Change Orders | | |
| 6. Additions (from Col. 4, form HUD-51002) | $ 178,944.92 | |
| 7. Deductions (from Col. 5, form HUD-51002) | (net) | |
| 8. Total Value of Work in Place (Line 5 plus or minus net line 7) | | $ 11,985,884.92 |
| 9. Less: Retainage, __5%__ ........................................................... | | $ 599,294.25 |
| 10. Net amount earned to date (line 3 less line 9)........................... | | $ 11,386,590.67 |
| 11. Less: Previously earned (line 10 last Periodic Estimate)..................... | | $ 11,357,445.23 |
| 12. Net Amount due, work in place (line 10 less line 11)................................ | | $ 29,145.44 |
| Value of material stored | | |
| 13. At close of this period (from HUD-51004)........ | $ - | |
| 14. Less: Allowed last period | $ - | |
| 15. Increase (decrease) from amount allowed last period............................. | $ - | |
| **16. Balance Due This Payment**................................................ | | $ 29,145.44 |

I further certify that all just and lawful bills against the undersigned and his subcontractors for labor, material, and equipment employed in the performance of this contract have been paid in full accordance with the terms and conditions of this contract, and that the undersigned and his subcontractors have complied with, or that there is an honest dispute with the respect to, the labor provisions of this contract.

| Name of Contractor | Signature of Authorized Representative | Title | Date |
|---|---|---|---|
| St. Paul Mercury Insurance Company | | | |

---

**Certificate of authorized Project Representative and of Contracting Officer**

Each of us certifies that he has checked and verified this Periodic Estimate No. **32** : that to the best of his knowledge and belief it is a true statement of the value of work performed and material supplied by this contractor; that all work and material included in this estimate has been inspected by him or by his authorized assistants; and that such work has been performed or supplied in full accordance with the drawings and specifications, the terms and conditions of the contract and duly authorized deviations, substitutions, alterations, and additions, all of which have been duly approved.

We, therefore, approve as the "Balance Due" this Payment" the amount of        $ 29,145.44

| Authorized Project Representative: | Date: | Contracting Officer: | Date: |
|---|---|---|---|
| | | | |

---

St. Paul Mercury Insurance Company  
General Construction  
PHA Contract No. 9589

Progress Payment Request  
PE : 32

Print Date:  11/30/2000  
Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | GA | Total | | 812,000.00 | 807,469.83 | 4,530.17 | 812,000.00 | 100% | - | 40,600.00 |
| | MO | Total | | 158,000.00 | 74,940.00 | - | 74,940.00 | 47% | 83,060.00 | 3,747.00 |
| | 41 | Total | | 917,000.00 | 917,000.00 | - | 917,000.00 | 100% | - | 45,850.00 |
| | 42 | Total | | 1,056,000.00 | 1,056,000.00 | - | 1,056,000.00 | 100% | - | 52,800.00 |
| | 43 | Total | | 986,000.00 | 986,000.00 | - | 986,000.00 | 100% | - | 49,300.00 |
| | 44 | Total | | 628,000.00 | 628,000.00 | - | 628,000.00 | 100% | - | 31,400.00 |
| | 45 | Total | | 608,000.00 | 608,000.00 | - | 608,000.00 | 100% | - | 30,400.00 |
| | 46 | Total | | 827,000.00 | 827,000.00 | - | 827,000.00 | 100% | - | 41,350.00 |
| | SW | Total | | 94,000.00 | 87,100.00 | 6,900.00 | 94,000.00 | 100% | - | 4,700.00 |
| | 27E | Total | | 300,000.00 | 300,000.00 | - | 300,000.00 | 100% | - | 15,000.00 |
| | 27W | Total | | 300,000.00 | 300,000.00 | - | 300,000.00 | 100% | - | 15,000.00 |
| | 28 | Total | | 600,000.00 | 600,000.00 | - | 600,000.00 | 100% | - | 30,000.00 |
| | 29 | Total | | 680,000.00 | 674,847.50 | 1,717.50 | 680,000.00 | 100% | - | 34,000.00 |
| | 30E | Total | | 210,000.00 | 206,078.25 | 1,801.75 | 210,000.00 | 100% | - | 10,500.00 |
| | 30W | Total | | 300,000.00 | 296,025.00 | 3,975.00 | 300,000.00 | 100% | - | 15,000.00 |
| | 31 | Total | | 605,000.00 | 605,000.00 | - | 605,000.00 | 100% | - | 30,250.00 |
| | 32 | Total | | 605,000.00 | 605,000.00 | - | 605,000.00 | 100% | - | 30,250.00 |
| | 33 | Total | | 705,000.00 | 705,000.00 | - | 705,000.00 | 100% | - | 35,250.00 |
| | 34 | Total | | 705,000.00 | 705,000.00 | - | 705,000.00 | 100% | - | 35,250.00 |
| | SW | Total | | 94,000.00 | 89,300.00 | 4,700.00 | 94,000.00 | 100% | - | 4,700.00 |
| | IU10 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |
| | IU11 | Total | | 175,000.00 | 173,500.00 | 1,500.00 | 175,000.00 | 100% | - | 8,750.00 |
| | IU12 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |
| | IU9 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |

SP_PE32.xls PE_32

St. Paul Mercury Insurance Company
General Construction
PHA Contract No. 9589

Progress Payment Request
PE : 32

Print Date:  11/30/2000
Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Grand Total | 11,890,000.00 | 11,776,260.58 | 25,124.42 | 11,806,940.00 | 99% | 83,060.00 | 590,347.00 |
| | | | | | | | | | | |
| 18000 | B3 | M1 | Tubs enclosures | 30,768.00 | 30,768.00 | - | 30,768.00 | 100% | - | 1,538.40 |
| 18100 | B3 | M2 | Windows soffits | 68,220.00 | 68,220.00 | - | 68,220.00 | 100% | - | 3,411.00 |
| 18200 | B3 | M3 | Ductbank Accident | (27,383.00) | (27,383.00) | - | (27,383.00) | 100% | - | (1,369.15) |
| 18300 | B3 | M4 | Temporary toilets by Gory | (7,424.00) | (7,424.00) | - | (7,424.00) | 100% | - | (371.20) |
| 18300 | B3 | M5 | Infill 11 | 11,407.00 | 11,407.00 | - | 11,407.00 | 100% | - | 570.35 |
| 18300 | B3 | M6 | Window openings | 56,705.00 | 56,705.00 | - | 56,705.00 | 100% | - | 2,835.25 |
| 18300 | B3 | M7 | Infill 10 changes | 20,592.00 | 20,592.00 | - | 20,592.00 | 100% | - | 1,029.60 |
| 18300 | B3 | M8 | Drywall work associated with smok | 26,059.92 | 26,059.92 | - | 26,059.92 | 100% | - | 1,303.00 |
| | | | | - | - | - | - | | - | - |
| 11900 | B3 | Total | Modifications | 178,944.92 | 178,944.92 | - | 178,944.92 | 100% | - | 8,947.25 |
| | | | | | | | | | | |
| | | | Revised Grand Total | 12,068,944.92 | 11,955,205.50 | 25,124.42 | 11,985,884.92 | 99.31% | 83,060.00 | 599,294.25 |

|  |  | PE 31 | PE 32 |
|---|---|---|---|
| To form HUD- 51001, Periodic Estimate | | | |
| Line 8 | Total Value of Work in Place | 11,955,205.50 | 11,985,884.92 |
| Line 9 | Less Retainage 5% | 597,760.28 | 599,294.25 |
| Line 10 | Net amount earned | 11,357,445.23 | 11,386,590.67 |
| Line 11 | Less Previous earned line 10, last PE | 11,303,038.09 | 11,357,445.23 |
| Line 12 | Net amount Due, Work in Place | 54,407.14 | 29,145.45 |

_SP_PE32.xls PE_32

EXHIBIT F

DEC 11 2000 15:16 FR ST PAUL CO       410 205 0605 TO 912156848653       P.01/09
DEC 11 '00  01:15PM PHA HOPE VI

# PHILADELPHIA HOUSING AUTHORITY

**HOPE VI Construction Office**
**Richard Allen Homes**
**829 Alder Place**
**Philadelphia PA 19123**
**Telephone Number (215) 684 - 8650**
**Fax Number (215) 684 - 8653**

## FACSMILE TRANSMISSION COVER SHEET

DATE: __12/1/00__ TIME: _____    NUMBER OF PAGES INCLUDING COVER: __3__

FROM:

TO: __Christine Alexander__            FAX #: __410 205 0605__

TO:

FROM: __T. Trzcin__

To be sign attached modification to delete unexpired

office work as previously discussed. Please sign both pages.

thanks.
Tim.


DEFENDANT'S
EXHIBIT
D - 104

DEC 11 2000 15:16 FR ST PAUL CO          410 205 0605 TO 912156848653          P.02/09
DEC 11 '00  01:19PM PHA HOPE VI                                                P.2/3

## Contract Modification

Contract Number: _____9589_____    Change Order Number: _____11_____    Date: December 11, 2000
Contractors Name: __Saint Paul Mercury Insurance Company__
Address: __5801 Centennial Way, Baltimore, MD 21209__
Site Name: __Richard Allen - Hope VI__          Project Architect: __Wallace Roberts & Todd__

### THE FOLLOWING CHANGES ARE MADE TO THE CONTRACT DOCUMENTS

**A. ADJUSTMENT IN CONTRACT PRICE:**

(1) Original Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,890,000.00
(2) Net Change By Previous Contract Modification: . . . . . . . . . . . . . . . . . . . . . . . . . $228,876.92
(3) Contract Amount Prior To This Contract Modification: . . . . . . . . . . . . . . . . . . . . $12,118,876.92
(4) Contract Will Be Decreased . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ($83,060.00)
(5) New Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $12,035,816.92

**B. ADJUSTMENTS IN CONTRACT TIME:**          In accordance with the takeover Agreement dated 4/6/00.

(1) The Contract Time from Addendum 1 Page E-3. #2 in the Agreement
(2) Net change in Contract Time by previous Contract Modification(s):
(3) Contract Time prior to this Contract Modification:
(4) Net Increase in contract Time by this Contract Modification:
(5) New Contract Time of Completion:
(6) The Work will be substantially complete on or before:
(7) The work will be completed and ready for final payment on or before:

**C. This CHANGE ORDER incorporates Change Authorization Number:** _____11_____ **Dated:** _____12/11/00_____

**D. OTHER ADJUSTMENTS IN CONTRACT PRICE OR CONTRACT TIME** - Adjustments for separable parts of the work referenced in paragraph _____ of the Agreement are detailed in the following documents:

**E. WORK SEQUENCING CONDITIONS** - The contractor shall complete the work changed and affected by this Contract Modification on or before __12/11/00__, in accordance with the progress schedule.

**F.** Only the Contracting Officer may execute a Contract Modification on behalf of the Authority.

**G.** This modification and all work affected thereby is subject to all contract terms, conditions and covenants.

**H. RECOMMENDED:**                                    **APPROVED:**

_____          _____
By the Architect          Date                     By PHA          Date

**I. CERTIFICATION, ACCEPTANCE & WAIVER OF FUTURE CLAIMS BY THE CONTRACTOR:**
This is to certify to the best of my knowledge and belief that the cost and pricing data described in page 2 of this Contract Modification ("CM") entitled " Contractors Proposal for Adjustment" is complete and accurate as of ___12/11___, 2000 and that a financial management capability exists to account fully and accurately for the financial transactions under this Contract. I further certify that I understand the Contract Price may be subject to downward re-negotiation where the above cost and pricing data have been determined, as a result of audit, not to have been complete, current and accurate as of the above data. The undersigned Contractor also acknowledges and agrees that the adjustment in Contract Price and Contract Time stipulated in this CM represents full compensation for all increases or decreases in the cost or the time required to perform the entire work under the contract arising from this CM. Acceptance of this waiver by the contractor provides for an all inclusive settlement for all changes, any delay, and all costs, and represents a waiver of any and all rights to file a claim on account of this CM.

St. Paul                                        12/11/00
_____          _____
y the Contractor - Print Name                     Signature          Date

DEC 11 2000 12:25                        215 684 6653          PAGE.02

DEC 11 2000 15:17 FR ST PAUL CO        410 205 0605 TO 912156848653        P.03/09

## Contract Modification

**DISTRIBUTION:** Contractor, Finance, Wage Compliance, Mod Coordinator, HOPE VI, Capital Projects, Contract File

**DESCRIPTION OF CHANGE:**

This modification is for a credit for work deleted from the contract scope. Management office renovations stopped due to the default of the General Contractor for construction. Due to the construction delay, PHA deleted the balance of the renovations from the contract scope. The credit is the balance left on the approved schedule of values.

The credit of $83,060.00 is considered fair and reasonable according to the approved schedule of values.

| AUTHORIZED CONTRACTOR REPRESENTATIVE (Typed/Printed): | SIGNATURE: | DATE: |
|---|---|---|
| Christine T. Alexander | | 12/11/00 |

DEC 11 2000 10:17 FR ST PAUL CO    410 203 0003 TO 912150040053    P.03/09

DEC 11 '00  12:56PM PHA HOPE VI    P.02



HOPE VI Construction Office
Richard Allen Homes
829 Alder Place
Philadelphia PA 19123
Telephone Number (215) 684 - 8650
Fax Number (215) 684 - 8653    PROVIDING QUALITY HOUSING EFFICIENTLY,
EFFECTIVELY AND WITH INTEGRITY

## PHILADELPHIA HOUSING AUTHORITY

2012 CHESTNUT STREET
PHILADELPHIA, PENNSYLVANIA 19103-4497
215-684-4000 (VOICE), 215-684-4070TTY

December 11, 2000

Saint Paul Fire & Marine Insurance Company
P.O. Box 1138
Baltimore, MD 21203-1138
Attn: Ms. Christine Alexander, Esq.

RE:    <u>PHA Contract # 9589 - Completion of Quadrant B3 & B2</u>
       <u>Periodic Estimate # 32 - Work in Place</u>

Dear Ms. Alexander:

In accordance with the take over agreement dated 4/6/00 between PHA and St Paul, enclosed is a copy of the progress payment request, Periodic Estimate # 32 (PE # 32) for work completed by St. Paul's General Contractor, NDK, for the period 11/1/00 through 11/30/00.  This is in accordance with NDK's request to PHA, copy enclosed of NDK's letter dated 4/24/00.

St Paul  must request  payment for Periodic Estimate # 32  by using the enclosed copy of form HUD-51001, pages 1 and 2, or by filling the data on a blank copy of the form HUD-51001.

I have enclosed a copy of the Excel spread sheet,  pages 1 through 19, (and the two page summary of the spread sheet)  that shows the details that make up the 37 items listed on the form HUD-51001.    St. Paul does not have to submit the 19 page detailed breakdown with your request for payment.

Sincerely,
The Philadelphia Housing Authority

Timothy Trzaska
Project Engineer

cc:    A. Brown    C. Moseley    L. Trower    Gabe Caputo(NDK)
Attachments
Periodic Estimate for Partial Payment - form HUD-51001, PE#32
Excel spreadsheet for PE#32

SP001003.P30

DEC 11 2000 15:18 FR ST PAUL CO          410 205 0605 TO 912156848653      P.06/09

# Periodic Estimate for
# Partial Payment

U. S. Department of Housing
and Urban Development
Office of Public and Indian Housing

Submit original and one copy to the Public Housing Agency

Complete instructions are on the back of this form          OMB Approval No. 2577-0025 (exp 9/30/87)

Public reporting for this collection of information is estimated to average 3.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Report & Management Officer, Office of Information Policies and Systems, U. S. Department of Housing and Urban Development, Washington, D. C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2577-0025), Washington, D. C. 20503.  Do not send this completed form to either of the above addresses.

| Name of Public Housing Agency | Periodic Estimate Number | Period |
|---|---|---|
| Philadelphia Housing Authority | 32 | 11/01/00 to 11/30/00 |

| Location of Project | Project Number |
|---|---|
| Richard Allen Homes - HOPE VI Site - B2 and B3 | 003 |

| Name of Contractor | Contract Number |
|---|---|
| St. Paul Mercury Insurance Company | 9589 |

| Item Number (1) | Description of Item (2) | Completed to Date (3) |
|---|---|---|
| 1 | Bond | $ 108,588.00 |
| 2 | Building Permit | $ 150,395.00 |
| 3 | Start up / Mobilization | $ 100,000.00 |
| 4 | Security | $ 258,000.00 |
| 5 | Project Supervision | $ 165,017.00 |
| 6 | Management Office | $ 74,940.00 |
| 7 | Building 41 | $ 917,000.00 |
| 8 | Building 42 | $ 1,056,000.00 |
| 9 | Building 43 | $ 996,000.00 |
| 10 | Building 44 | $ 628,000.00 |
| 11 | Building 45 | $ 608,000.00 |
| 12 | Building 46 | $ 627,000.00 |
| 13 | Landscape Quadrant B-3 | $ 69,000.00 |
| 14 | Ornamental Fence B-3 | $ 25,000.00 |
| 15 | Building 27 East | $ 300,000.00 |
| 16 | Building 27 West | $ 300,000.00 |
| 17 | Building 28 | $ 600,000.00 |
| 18 | Building 29 | $ 680,000.00 |
| 19 | Building 30 East | $ 210,000.00 |
| 20 | Building 30 West | $ 300,000.00 |
| 21 | Building 31 | $ 605,000.00 |
| 22 | Building 32 | $ 605,000.00 |
| 23 | Building 33 | $ 705,000.00 |
| 24 | Building 34 | $ 705,000.00 |
| 25 | Landscape Quadrant B-2 | $ 69,000.00 |
| 26 | Ornamental Fence B-2 | $ 25,000.00 |
| 25 | Infill Units | $ 700,000.00 |
| 28 | Value of Original Contract Completed | $ 11,806,940.00 |
| 29 | Change Order No. 1 | $ 30,768.00 |
| 30 | Change Order No. 2 | $ 68,220.00 |
| 31 | Change Order No. 3 | $ (27,383.00) |
| 32 | Change Order No. 4 | $ (7,424.00) |
| 33 | Change Order No. 5 | $ 11,407.00 |
| 34 | Change Order No. 6 | $ 56,705.00 |
| 35 | Change Order No. 7 | $ 20,592.00 |
| 36 | Change Order No. 8 | $ 26,059.92 |
| 37 | Value of Change Orders Completed | $ 178,944.92 |
| | Value of Work Completed to Date | $ 11,985,884.92   $ 11,985,884.92 |

Page 1

DEC 11 2000 15:18 FR ST PAUL CO        410 205 0605 TO 912156848653        P.07/09

PE # 32

## Instructions

Readings. Enter  all identifying data as required. Periodic estimates must be numbered in sequence beginning with the number 1.

Columns 1 and 2. The "Item Number" and "Description of Item" must correspond to the number and description title assigned to each principal division of work in the "Schedule of Amounts for Contract Payments" form HUD-51000.

Column 3. Enter the accumulated value of each principal division of work completed as of the closing date of the periodic estimate. Enter the total in the space provided.

Certifications. The certification of the contractor includes the analyzed amounts used to determine the net balance due. In the first paragraph, enter the name of the Public Housing Agency, the Contractor, and the date of the contract. Enter the calculations used in arriving at the "Balance Due This Payment" on lines 1 through 16.

Enter the contractor's name and signature in the certification following line 16.

The latter portion of this certification relating to payment of legal rates of wages is required by the contract before any payment may be made. However, if the contractor does not choose to certify on behalf of his subcontractors to wage payments made by them, he may modify the language to cover only himself and attach a list of all subcontractors who employed labor on the site during the period covered by the Periodic Estimate, together with the individual certifications of each.

### Certification of the Contractor or his Duly Authorized Representative

According to the best of my knowledge and belief, I certify that  all items and amounts shown on the other side of this form are correct; that all work has been performed and material supplied in full accordance with the items and  conditions of the contract between the

(name of owner) __Philadelphia Housing Authority__ and (contractor) __St. Paul Mercury Insurance Company__

dated __April 6, 2000__ and duly authorized deviations, substitutions, alterations, and additions; that the following is a true and correct statement of the Contract Account up to and including the last day of the period by this estimate, that no part of the "Balance Due This Payment" has been received.

| | | | |
|---|---|---|---|
| 1. | Original Contract Amount | | $ 11,890,000.00 |
| **Approved Change Orders** | | | |
| 2. | Additions (Total from Col. 3, form HUD-51002) | $ 178,944.92 | |
| 3. | Deductions (Total from Col. 5, form HUD-51002) | (net) | |
| 4. | Current Adjusted Contract Amount (line 1 plus or minus net) | | $ 12,068,944.92 |
| **Computation of Balance Due this Payment** | | | |
| 5. | Value of Original Contract completed to date (from other side of this form) | | $ 11,806,940.00 |
| **Completed Under Approved Change Orders** | | | |
| 6. | Additions (from Col. 4, form HUD-51002) | $ 178,944.92 | |
| 7. | Deductions (from Col. 5, form HUD-51002) | (net) | |
| 8. | Total Value of Work in Place (Line 5 plus or minus net line 7) | | $ 11,985,884.92 |
| 9. | Less: Retainage, __5%__ | | $ 599,294.25 |
| 10. | Net amount earned to date (line 3 less line 9) | | $ 11,386,590.67 |
| 11. | Less: Previously earned (line 10 last Periodic Estimate) | | $ 11,357,445.23 |
| 12. | Net Amount due, work in place (line 10 less line 11) | | $ 29,145.44 |
| **Value of material stored** | | | |
| 13. | At close of this period (from HUD-51004) | $ — | |
| 14. | Less: Allowed last period | $ — | |
| 15. | Increase (decrease) from amount allowed last period | | $ — |
| 16. | Balance Due This Payment | | $ 29,145.44 |

I further certify that all past and lawful bills against the undersigned and his subcontractors for labor, material, and equipment employed in the performance of the contract have been paid in full accordance with the terms and conditions of this contract, and that the undersigned and his subcontractors have complied with, or that there is an honest  dispute with the respect to, the labor  provisions of this contract.

Name of Contractor

**St. Paul Mercury Insurance Company**

Signature of Authorized Representative

Title **Claim Atty.**    Date **12/11/00**

Certificate of authorized Project Representative and of Contracting Officer

Each of us  certifies that we have checked and verified this Periodic Estimate No. **32** ; that to the best of his knowledge and belief it is a true statement of the value  of work performed  and material supplied by this contractor; that all work and material included in this estimate has been inspected by him or by his authorized assistants; and that such work has been  performed or supplied in full accordance with the drawings and specifications, the terms and conditions of the contract and duly authorized deviations, substitutions, alterations, and additions, all of which have been duly approved.

We, therefore, approve as the "Balance Due" this Payment" the amount of    $    29,145.44

| authorized Project Representative: | Date: | Contracting Officer: | Date: |
|---|---|---|---|
| | | | |

DEC 11 2000 11:57                              215 684 9653              PAGE.04

DEC 11 2000 15:18 FR ST PAUL CO       410 205 0605 TO 912156848653    P.08/09
DEC 11 '00  12:52PM PHA HOPE VI                                        P.5/6

St. Paul Mercury Insurance Company
General Construction
PHA Contract No. 9589

Progress Payment Request
PE : 32

Print Date: 11/30/2000
Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 6A | Total | 813,000.00 | 807,469.83 | 4,636.17 | 812,000.00 | 100% | | 40,600.00 |
| | | 8D | Total | 134,000.00 | 74,940.00 | . | 74,940.00 | 41% | 83,040.00 | 3,747.00 |
| | | 41 | Total | 917,600.00 | 917,000.00 | . | 917,600.00 | 100% | | 45,450.00 |
| | | 42 | Total | 1,056,000.00 | 1,056,000.00 | . | 1,056,000.00 | 100% | | 52,800.00 |
| | | 43 | Total | 986,000.00 | 986,000.00 | . | 986,000.00 | 100% | | 49,300.00 |
| | | 44 | Total | 628,000.00 | 628,000.00 | . | 628,000.00 | 100% | | 31,400.00 |
| | | 45 | Total | 608,000.00 | 608,000.00 | . | 608,000.00 | 100% | | 30,400.00 |
| | | 46 | Total | 827,000.00 | 827,000.00 | . | 827,000.00 | 100% | | 41,350.00 |
| | | 8N | Total | 94,000.00 | 87,100.00 | 6,900.00 | 94,000.00 | 100% | | 4,700.00 |
| | | 27N | Total | 300,000.00 | 300,000.00 | . | 300,000.00 | 100% | | 15,000.00 |
| | | 27N | Total | 300,000.00 | 300,000.00 | . | 300,000.00 | 100% | | 15,000.00 |
| | | 28 | Total | 600,000.00 | 600,000.00 | . | 600,000.00 | 100% | | 30,000.00 |
| | | 29 | Total | 680,000.00 | 678,347.50 | 1,737.50 | 680,000.00 | 100% | | 34,000.00 |
| | | 16N | Total | 210,000.00 | 206,078.25 | 1,801.75 | 210,000.00 | 100% | | 10,500.00 |
| | | 10N | Total | 300,000.00 | 216,025.00 | 3,975.00 | 300,000.00 | 100% | | 15,000.00 |
| | | 31 | Total | 605,000.00 | 605,000.00 | . | 605,000.00 | 100% | | 16,250.00 |
| | | 32 | Total | 605,000.00 | 605,000.00 | . | 605,000.00 | 100% | | 16,250.00 |
| | | 33 | Total | 705,000.00 | 705,000.00 | . | 705,000.00 | 100% | | 15,250.00 |
| | | 34 | Total | 705,000.00 | 705,000.00 | . | 705,000.00 | 100% | | 15,250.00 |
| | | 8W | Total | 94,000.00 | 89,300.00 | 4,700.00 | 94,000.00 | 100% | | 4,700.00 |
| | | 101S | Total | 175,000.00 | 175,000.00 | . | 175,000.00 | 100% | | 8,750.00 |
| | | 101I | Total | 175,000.00 | 173,500.00 | 1,500.00 | 175,000.00 | 100% | | 8,750.00 |
| | | 101T | Total | 175,000.00 | 175,000.00 | . | 175,000.00 | 100% | | 8,750.00 |
| | | 101 | Total | 175,000.00 | 175,000.00 | . | 175,000.00 | 100% | | 8,750.00 |

Page 1 of 2

_6P_PE32.xls PE_32

DEC 11 '00  12:58PM AAA MOPE V1

St. Paul Mercury Insurance Company
General Construction
PHA Contract No. 9589

Progress Payment Request
PE : 32

Print Date: 11/30/2000
Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Grand Total | 11,999,000.00 | 11,776,240.58 | 25,334.42 | 11,806,540.00 | 99% | 83,666.00 | 691,307.00 |
| 11000 | B1 | W1 | Tube enclosures | 20,748.00 | 20,748.00 | - | 20,748.00 | 100% | - | 1,536.40 |
| 11100 | B1 | W2 | Windows infill | 46,720.00 | 46,720.00 | - | 46,720.00 | 100% | - | 3,411.00 |
| 11200 | B1 | W3 | Dutbank Accident | (27,383.00) | (27,383.00) | - | (27,383.00) | 100% | - | (1,765.15) |
| 11300 | B1 | W3 | Temporary toilets by Gary | (7,424.00) | (7,424.00) | - | (7,424.00) | 100% | - | (591.20) |
| 11370 | B1 | W4 | Infill X1 | 11,467.00 | 11,467.00 | - | 11,467.00 | 100% | - | 534.35 |
| 11300 | B1 | W5 | Window openings | 56,765.00 | 56,765.00 | - | 56,765.00 | 100% | - | 2,835.25 |
| 11570 | B1 | W7 | Infill 10 change | 20,592.00 | 20,592.00 | - | 20,592.00 | 100% | - | 1,035.44 |
| 11630 | B1 | W8 | Drywall work associated with smol | 26,855.92 | 26,855.92 | - | 26,855.92 | 100% | - | 1,307.00 |
| 11900 | B1 | | Total Modifications | 171,944.92 | 170,344.13 | - | 170,344.93 | 100% | - | 8,947.35 |
| | | | Revised Grand Total | 11,969,161.92 | 11,955,205.50 | 25,334.42 | 11,985,844.92 | 99-33% | 83,666.00 | 691,334.35 |
| | | | To form NUD- 21051, Periodic Estimate | | PE 31 | | PE 32 | | | |
| | | | Line  8  Total Value of Work in Place | | 11,955,205.50 | | 11,915,844.92 | | | |
| | | | Line  9  Less Retainage 5% | | 597,760.28 | | 599,294.25 | | | |
| | | | Line 10  Net amount earned | | 11,357,445.23 | | 11,306,590.67 | | | |
| | | | Line 11  Less Previous earned line 10, last PE | | 11,301,038.80 | | 11,357,445.23 | | | |
| | | | Line 12  Net amount Due,Work in Place | | 56,407.14 | | 29,146.45 | | | |

Page 2 of 2

_SP_PE32.xls PE_32

EXHIBIT G

St. Paul Mercury Insurance Company
General Construction
PHA Contract No. 9589

Progress Payment Request
PE : 32

Print Date:  11/30/2000
Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | GA | Total | | 812,000.00 | 807,469.83 | 4,530.17 | 812,000.00 | 100% | - | 40,600.00 |
| | MO | Total | | 158,000.00 | 74,940.00 | - | 74,940.00 | 47% | 83,060.00 | 3,747.00 |
| | 41 | Total | | 917,000.00 | 917,000.00 | - | 917,000.00 | 100% | - | 45,850.00 |
| | 42 | Total | | 1,056,000.00 | 1,056,000.00 | - | 1,056,000.00 | 100% | - | 52,800.00 |
| | 43 | Total | | 986,000.00 | 986,000.00 | - | 986,000.00 | 100% | - | 49,300.00 |
| | 44 | Total | | 628,000.00 | 628,000.00 | - | 628,000.00 | 100% | - | 31,400.00 |
| | 45 | Total | | 608,000.00 | 608,000.00 | - | 608,000.00 | 100% | - | 30,400.00 |
| | 46 | Total | | 827,000.00 | 827,000.00 | - | 827,000.00 | 100% | - | 41,350.00 |
| | SW | Total | | 94,000.00 | 87,100.00 | 6,900.00 | 94,000.00 | 100% | - | 4,700.00 |
| | 27E | Total | | 300,000.00 | 300,000.00 | - | 300,000.00 | 100% | - | 15,000.00 |
| | 27W | Total | | 300,000.00 | 300,000.00 | - | 300,000.00 | 100% | - | 15,000.00 |
| | 28 | Total | | 600,000.00 | 600,000.00 | - | 600,000.00 | 100% | - | 30,000.00 |
| | 29 | Total | | 680,000.00 | 674,847.50 | 1,717.50 | 680,000.00 | 100% | - | 34,000.00 |
| | 30E | Total | | 210,000.00 | 206,078.25 | 1,801.75 | 210,000.00 | 100% | - | 10,500.00 |
| | 30W | Total | | 300,000.00 | 296,025.00 | 3,975.00 | 300,000.00 | 100% | - | 15,000.00 |
| | 31 | Total | | 605,000.00 | 605,000.00 | - | 605,000.00 | 100% | - | 30,250.00 |
| | 32 | Total | | 605,000.00 | 605,000.00 | - | 605,000.00 | 100% | - | 30,250.00 |
| | 33 | Total | | 705,000.00 | 705,000.00 | - | 705,000.00 | 100% | - | 35,250.00 |
| | 34 | Total | | 705,000.00 | 705,000.00 | - | 705,000.00 | 100% | - | 35,250.00 |
| | SW | Total | | 94,000.00 | 89,300.00 | 4,700.00 | 94,000.00 | 100% | - | 4,700.00 |
| | IU10 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |
| | IU11 | Total | | 175,000.00 | 173,500.00 | 1,500.00 | 175,000.00 | 100% | - | 8,750.00 |
| | IU12 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |
| | IU9 | Total | | 175,000.00 | 175,000.00 | - | 175,000.00 | 100% | - | 8,750.00 |

_SP_PE32.xls PE_32

St. Paul Mercury Insurance Company

General Construction

PHA Contract No. 9589

Progress Payment Request

PE : 32

Print Date:  11/30/2000

Period : 11/1/00 to 11/30/2000

| ACT ID | QUAD | AREA | ACTIVITY DESCRIPTION | Scheduled Value | Previous Work Completed | This Period Work Completed | To Date Total Work Completed | % Completed | To Finish Balance To Do | Retainage |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Grand Total | 11,890,000.00 | 11,776,260.58 | 25,124.42 | 11,806,940.00 | 99% | 83,060.00 | 590,347.00 |
| 18000 | B3 | M1 | Tubs enclosures | 30,768.00 | 30,768.00 | | 30,768.00 | 100% | - | 1,538.40 |
| 18100 | B3 | M2 | Windows soffits | 68,220.00 | 68,220.00 | | 68,220.00 | 100% | - | 3,411.00 |
| 18200 | B3 | M3 | Ductbank Accident | (27,383.00) | (27,383.00) | | (27,383.00) | 100% | - | (1,369.15) |
| 18300 | B3 | M4 | Temporary toilets by Gory | (7,424.00) | (7,424.00) | | (7,424.00) | 100% | - | (371.20) |
| 18300 | B3 | M5 | Infill 11 | 11,407.00 | 11,407.00 | | 11,407.00 | 100% | - | 570.35 |
| 18300 | B3 | M6 | Window openings | 56,705.00 | 56,705.00 | | 56,705.00 | 100% | - | 2,835.25 |
| 18300 | B3 | M7 | Infill 10 changes | 20,592.00 | 20,592.00 | | 20,592.00 | 100% | - | 1,029.60 |
| 18300 | B3 | M8 | Drywall work associated with smok | 26,059.92 | 26,059.92 | | 26,059.92 | 100% | - | 1,303.00 |
| | | | | | | | | | | |
| 11900 | B3 | | Total Modifications | 178,944.92 | 178,944.92 | - | 178,944.92 | 100% | - | 8,947.25 |
| | | | | | | | | | | |
| | | | Revised Grand Total | 12,068,944.92 | 11,955,205.50 | 25,124.42 | 11,985,884.92 | 99.31% | 83,060.00 | 599,294.25 |
| | | | | | | | | | | |
| | | | To form HUD- 51001, Periodic Estimate | | PE 31 | | PE 32 | | | |
| | | | Line  8  Total Value of Work in Place | | 11,955,205.50 | | 11,985,884.92 | | | |
| | | | Line  9  Less Retainage 5% | | 597,760.28 | | 599,294.25 | | | |
| | | | Line 10  Net amount earned | | 11,357,445.23 | | 11,386,590.67 | | | |
| | | | Line 11  Less Previous earned line 10, last PE | | 11,303,038.09 | | 11,357,445.23 | | | |
| | | | Line 12  Net amount Due,Work in Place | | 54,407.14 | | 29,145.45 | | | |

EXHIBIT H

## MEMORANDUM OF NEGOTIATION
## CONTRACT MODIFICATIONS

Contract Number:    __9589__

Contractor's Name & Address:      Saint Paul Mercury Insurance Company
                                        5801 Centennial Way
                                        Baltimore, MD 21209

## INTRODUCTORY SUMMARY

1.      Brief Description of the Requirement: A credit due to work deleted from the contract scope of work.

2.      

| Contractor's Proposal | PHA Objective | Negotiated Amt. |
|---|---|---|
| ($83,060.00) | ($83,060.00) | ($83,060.00) |

## PARTICULARS

1.      Dates/Places/Attendance at Fact Finding and/or Renegotiation Sessions: PHA: Timothy Trzaska. Saint Paul: Christine Alexander
2.      Dates/Attendance of Negotiation Session(s): PHA: N/A

     Identify principal negotiators for each party:

         (PHA)   Timothy Trzaska

         (Saint Paul)   Christine Alexander

## PROCUREMENT SITUATION

1.      Special Situations Influencing Negotiation:(i.e., work stoppage, PHA directed, etc.)

2.      Period of Performance: N/A

3.      Date Proposal was Requested: December 11, 2000

4.      Date Proposal Received from Contractor: December 11,2000

5.      Type of Data Used to Evaluate Offer:

         X      Direct Cost from Periodic Estimate

EXHIBIT I

2-11-01; 1:46PM;CONSTRUCTION DEPT.                           ;215 684 8234          # 1/ 1

**PHILADELPHIA HOUSING AUTHORITY**

| DEPARTMENT OF CONTRACT ADMINISTRATION | |
| --- | --- |
| 12 South 23rd Street | **Carl R. Green** |
| Philadelphia, Pennsylvania 19103 | **Executive Director** |
| Phone: 215-684-4034 | |
| Fax:    215-684-8234 | |

# MEMORANDUM

**TO: Christine Alexander, Saint Paul Mercury Insurance Co.**

**FROM: Len Trower , Offc: 215-684-4034, Fax: 684-8234**

**SUBJECT: Contract #9589, Modifications # 9, 10 & 11 and PE# 33**

**DATE: 2/ 11/01**
**CC: Phil Johnson**

The aforementioned contract modifications and PE# 33 will have to be done over on our end to correct mathematical errors. Our intention, as of this moment, is to complete these revisions by Monday and overnight mail them to you for signatures. We would appreciate you mailing them back in the same manner. The mail should be addressed to Phillip Johnson, PHA , Development, 5th Floor, 12 South 23rd Street, Philadelphia, PA 19103.

The errors on the modifications prohibit us from processing your PE# 33. Several efforts were made to have these documents processed, but the incorrect math prevented it.

If you have immediate questions or concerns, call me at 215-684-4034

SP011521

FEB 11 2001 14:19                              215 684 8234          PAGE.01


DEFENDANT'S EXHIBIT

EXHIBIT J

## CONTRACT MODIFICATION

Contract 9589 Modification #11

| | | | | |
|---|---|---|---|---|
| **Contract Number:** | 9589 | **Change Order Number:** | 11 | **Date:** 22-Feb-01 |

**Contractor Name:** Saint Paul Mercury Insurance Company

**Address:**  5801 Centenial Way, Baltimore, MD 21209

**Site Name:**  Richard Allen - HOPE VI          **Project Architect: Wallace, Robert & Todd**

THE FOLLOWING CHANGES ARE MADE TO THE CONTRACT DOCUMENTS

**A. ADJUSTMENT IN CONTRACT PRICE:**

| | | |
|---|---|---:|
| (1) | Original Contract Amount: | $ 11,890,000.00 |
| (2) | Net Change by Previous Contract Modification (s): | $ 228,877.00 |
| (3) | Contract Amount Prior to this Contract Modification: | $ 12,118,877.00 |
| (4) | Net Increased (Decreased) by this Contract Modification: | $ (83,060.00) |
| (5) | New Contract Amount: | $ 12,035,817.00 |

**B. ADJUSTMENTS IN CONTRACT TIME:**

| | | |
|---|---|---:|
| (1) | The Contract Time from paragraph _____ in the Agreement | 632 days |
| (2) | Net change in Contract Time by previous Contract Modification (s): | 361 days |
| (3) | Contract Time prior to this Contract Modification: | 993 days |
| (4) | Net Increase in Contract Time by this Contract Modification: | 0 days |
| (5) | New Contract Time of Completion: | 993 days |
| (6) | The Work will be substantially completed on or before: | 01-Oct-00 |
| (7) | The Work will be completed and ready for final payment on or before: | 01-Oct-00 |

**C.** This CHANGE ORDER incorporates Change Authorization Number: _____   Dated: _____

**D. OTHER ADJUSTMENTS IN CONTRACT PRICE OR CONTRACT TIME** - Adjustments for separable parts of the work referenced in paragraph _____ of the Agreement are detailed in the following documents:

**E. WORK SEQUENCING CONDITIONS** - The Contractor shall complete the work changed and affected by this Contract Modification on or before _____ , in accordance with the Progress Schedule dated:

**F.** Only the Contracting Officer may execute a Contract Modification on behalf of the Authority.

**G.** This modification and all work affected thereby is subject to all contract terms, conditions and covenants.

**H. RECOMMENDED:**                    **APPROVED:**

_____   _____        _____   _____
By the Architect                Date             By PHA                        Date

**I. CERTIFICATION, ACCEPTANCE & WAIVER OF FUTURE CLAIMS BY THE CONTRACTOR:**

This is to certify to the best of my knowledge and belief that the cost and pricing data described on page 2 of this Contract Modification ("CM") entitled "Contractor's Proposal for Adjustments" is complete, current and accurate as of _____, 2001 and that a financial management capability exists to account fully and accurately for the financial transactions under this Contract. I further certify that I understand the Contract Price may be subject to downward re-negotiation where the above cost and pricing data have been determined, as a result of an audit, not to have been complete, current and accurate as of the above date. The undersigned Contractor also acknowledges and agrees that the adjustment in Contract Price and Contract Time stipulated in this CM represents full compensation for all increases or decreases in the cost or the time required to perform the entire work under the contract arising from this CM. Acceptance of this waiver by the contractor provides for an all inclusive settlement for all changes, any delay, and all costs, and represents a waiver of any and all rights to file a claim on account of this CM.

_____   _____        _____   _____
By the Contractor - Print Name                  Signature                     Date

Distribution: Contractor, Finance, Authorized PHA Representative, AAO, Wage Compliance, Contract File.

**CONTRACT MODIFICATION**

**Description of Change(s):**

This contract modification is a credit for incomplete management office area renovation work. Management office area renovation work was affected by the contract default proceedings pursued by the General Construction Contractor.   PHA is canceling the remaining balance of the renovation work from this contract.  The credit amount due PHA is $83,060.00.

Processing of this Contract Modification has been primarily delayed due to San Lucas' contract default and negotiation of the 4/6/00 Takeover Agreement between Saint Paul Mercury Insurance Company and PHA.

**DEDUCT……………………..………………………………………………….($83,060.00)**

Contractor's Signature:          Print/Typed:             Date:

_____          _____          _____

EXHIBIT K

# The St Paul

# Facsimile Cover Sheet

**To:** **Len Trower, Phil Johnson**
**Company:** **PHA**
**Address:**
**Phone:**
**Fax:** **215-567-0726**

**From:** **Christine Alexander, Esquire**
**Company:** **The St. Paul Companies**
**Address:** **5801 Smith Avenue, Baltimore, Maryland 21209**
**Phone:** **410-205-0496**
**Fax:** **410-205-0605**

**Date:** **4/10/01**
**Pages including this cover page:** **3**

**\*PRIVILEDGE AND CONFIDENTIALITY NOTICE:**    This facsimile contains information which is legally privileged and which is intended only for the use of the Addressee(s) named above. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this facsimile, or the taking of any action in reliance on the contents of this telecopied information, is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the entire facsimile to us at the above address via the U.S. Postal Service.    **Thank you.**

# St Paul Surety

The St. Paul Companies
Surety Claim
5801 Smith Avenue
Baltimore, MD  21209
*Mailing address*
P.O. Box 1138
Baltimore, MD 21203-1138
www.stpaul.com

April 10, 2001

<u>**VIA FACSIMILE TRANSMISSION**</u>
<u>**NO. 215-567-0726**</u>

Len Trower and Phil Johnson
Philadelphia Housing Authority
Capital Projects
12 South 23rd Street
Philadelphia, Pennsylvania 19103

Dear Len and Phil:

I am writing to follow up our telephone conversation yesterday regarding close out of the Richard Allen Homes contract. First and foremost, I want to thank you for the $532,286.33 check we received yesterday in payment of pay estimate number 33. Second, I would like to confirm our discussion regarding the outstanding items for resolution.

As we discussed, the outstanding items for resolution are St. Paul's overpayment claim against the PHA, your deductive change order number 11, and your Certificate and Release. We will contact the PHA legal department and others for resolution of our overpayment claim. We dispute change order number 11, as it requests that St. Paul reduce the amount of contract money PHA contracted to pay St. Paul in the Takeover Agreement. As we understand it, change order number 11 seeks to deduct from the amount of contract money payable to St. Paul the sum of $83,060.00 for pre-default/termination work that San Lucas either did not perform or did not complete, but for which PHA paid San Lucas. The Certificate and Release appears to be a document that should not be executed until all contract issues are resolved.

*[handwritten note: This was a change order per ? - ie. new contractor?]*

We discussed how we can resolve some of the issues related to deductive change order number 11, pending final resolution of St. Paul's overpayment claim. I propose that PHA release the undisputed portion of remaining contract money. You have agreed to discuss this issue with the PHA legal department. If your legal department approves, we would have an additional pay estimate (pay estimate number 34) to release the undisputed portion of contract money to St. Paul.

*[handwritten note: Did this happen]*

St. Paul Fire and Marine
Insurance Company
United States Fidelity and
Guaranty Company
Seaboard Surety
Company
Fidelity and Guaranty
Insurance Company
Fidelity and Guaranty
Insurance Underwriters, Inc.
St. Paul Mercury
Insurance Company
St. Paul Guardian
Insurance Company

Although we discussed the numbers today, I want to be sure we are in agreement as to the amount of the undisputed portion of remaining contract money that St. Paul seeks.

EXHIBIT L

# BLANK ROME COMISKY & MCCAULEY LLP

*Counselors at Law*

Direct Dial:
Fax:        (215) 569-5658
Email:      (215) 569-5692
            lebor@blankrome.com

*Delaware*
*Florida*
*Maryland*
*New Jersey*
*New York*
*Ohio*
*Pennsylvania*
*Washington, DC*

August 7, 2001

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Christine T. Alexander, Esquire
The St. Paul Companies
5801 Centennial Way
Baltimore, MD  21209

> Re:    *Richard T. Allen Homes-Hope VI Takeover Agreement*
>        *dated April __, 2000 ("Takeover Agreement") by and*
>        *between The Philadelphia Housing Authority ("PHA") and*
>        *St. Paul Mercury Insurance Company ("Surety")*

Dear Ms. Alexander::

Our firm represents PHA in connection with the captioned matter. PHA disagrees with the Surety's denial of PHA's requested $83,060 net decrease of the contract sum as set forth in PHA's submission styled Contract 9589 Modification #11. Lyncoln Trower of PHA has advised me that your denial is based on your belief that under the Takeover Agreement PHA is obligated to pay Surety the balance of the underlying contract plus any approved increases thereto negotiated or authorized pursuant to the provisions of the Takeover Agreement. I am advised that it is the Surety's position that deductions from the contract sum are impermissible. Paragraph 8, at the top of page 4, of the Takeover Agreement is not consistent with that interpretation. It states, in pertinent part:

> The Authorized Individual has no authority to negotiate
> deductive Change Orders, credits, back charges or net
> deductions.. without the Surety's ... approval...(which) shall
> not be unreasonably withheld or delayed...

Accordingly, any deductive change order would require the Surety's approval and such approval could not be unreasonably withheld or delayed. You approved the deductive change on behalf of the Surety pursuant to your execution of change order number 11 on December 11, 2000 (copy enclosed). Because of an insignificant $1 accounting discrepancy increasing the final revised contract sum from $12,035,816 to $12,035,817 a revised

# BLANK ROME COMISKY & McCAULEY LLP

Christine T. Alexander, Esquire
August 7, 2001
Page 2

modification/change order was submitted to you for signature which you denied because of the $83,060 which you had already approved and which, in any event pursuant to the Takeover Agreement, you could not unreasonably deny. Accordingly, please confirm that PHA is, in fact, not due to the Surety and will not be required to be paid to Surety. Thank you. Should you have any questions, please do not hesitate to call me.

Very truly yours,

DAVID LEBOR

DL/sap

cc:    Mr. Lyncoln Trower
       M. Kevin Hubbard, Esquire
       Gary A. Wilson, Esquire
       Andrew J. Ruck, Esquire

EXHIBIT M

VENABLE, BAETJER AND HOWARD, LLP
*Including professional corporations*

210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517
(410) 494-6200, Fax (410) 821-0147
www.venable.com

OFFICES IN

MARYLAND
WASHINGTON, D.C.
VIRGINIA

**James A. Dunbar**
**(410) 494-6208**

jadunbar@venable.com

# VENABLE
ATTORNEYS AT LAW

September 26, 2001

*VIA TELECOPY TRANSMITTAL AND REGULAR MAIL*

David Lebor, Esquire
Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, Pennsylvania  19103-6998

> Re:     PHA Contract No. 9589
>           Richard Allen Homes

Dear Mr. Lebor:

Our firm represents St. Paul Mercury Insurance Company, the surety on the above contract.  This letter responds to your August 7, 2001 letter to Chris Alexander of St. Paul.

Your letter asserts that PHA is entitled to have St. Paul approve a deductive change order in the amount of  $83,060 relating to the cost associated with an administrative office on the Richard Allen Homes site, apparently because PHA no longer wants the administrative office.  While we continue to look into the matter, it is our present understanding that San Lucas Construction Co., Inc., St. Paul's principal, actually completed the work on the administrative office but, at PHA's request, the office was subsequently demolished.

Under the circumstances, there is no basis for the deductive change order PHA seeks, and there is no valid approval by St. Paul of that change order.

Rather than address the issue separately, I suggest that the parties take this issue up as part of global settlement discussions.  Please give me a call to discuss the matter further.

Very truly yours,

James A. Dunbar

JAD/cbm
TO1DOCS1#123514 v1

EXHIBIT N

# PHILADELPHIA HOUSING AUTHORITY
## DEVELOPMENT DEPARTMENT

# FAX

**To:** CHRISTINE ALEXANDER, ESQ.

**Fax #:** 410-205-0605

**Phone:**

**From:** LEN TROWER

**Fax #:** 567-0726 (215)    **Pages:** 13

**Phone:** 215-684-4034    **Date:** 8/14/03

**Re:** FINAL PAYMENT    **CC:** DENNIS LAWLOR, ESQ.
CONTRACT 9589

Aug-14-2003  04:08pm   From-PHIL HOUSING                    +12155670726          T-951   P.002   F-083



# Philadelphia Housing Authority
### Building Beyond Expectations

August 14, 2003                                          **Carl R. Greene**
                                                          Executive Director

Christine Alexander, Esquire
St. Paul Mercury Insurance Company
5801 Smith Avenue
Baltimore, MD 21209

    Re:    **St. Paul Mercury Insurance Co. v. Philadelphia Housing Authority**

Dear Ms. Alexander:

    I enclose copies of the following:

    1.    Certification of the Contractor or Duly Authorized Representative.

    2.    Certificate of Completion which has been executed by Vernon Cooney and Phillip Johnson on behalf of PHA.

    3.    Memorandum from me to Isaac Simpkins, Director, Office of Wage & Labor Standards, City of Philadelphia, dated August 13, 2003, as well as Memorandum from Mr. Simpkins to me that same day with respect to prevailing wage payments.

    4.    Certificate and Release form dated August 12, 2003

    5.    Contract Modification No. 11 executed by Vernon Cooney in behalf of the PHA

    PHA is prepared to issue its check to St. Paul in the sum of $116,940.00 upon receipt from you of the Certification of the Contractor (paragraph 1 above) and the Certificate and Release (paragraph 4 above).

                   Sincerely,

                   LEN TROWER
                   Construction Contract Coordinator

100847.00610/21182046v1

12 South 23rd Street, Philadelphia, PA 19103
p: 215.684.4000  www.pha.phila.gov

Aug-14-2003  04:09pm   From-PHIL HOUSING                    +12155670726        T-951   P.003   F-083

## Instructions

**Headings.** Enter all identifying data required. Periodic estimates must be numbered in sequence beginning with the number 1.

**Columns 1 and 2.** The "Item Number" and "Description of Item" must correspond to the number and descriptive title assigned to each principal division of work in the "Schedule of Amounts for Contract Payments", form HUD-51000.

**Column 3.** Enter the accumulated value of each principal division of work completed as of the closing date of the periodic estimate. Enter the total in the space provided.

**Certifications.** The certification of the contractor includes the analysis of amounts used to determine the net balance due. In the first paragraph, enter the name of the Public Housing Agency, the contractor, and the date of the contract. Enter the calculations used in arriving at the "Balance Due This Payment" on lines 1 through 16.

Enter the contractor's name and signature in the certification following line 16.

The latter portion of this certification relating to payment of legal rates of wages, is required by the contract before any payment may be made. However, if the contractor does not choose to certify on behalf of his/her subcontractors to wage payments made by them, he/she may modify the language to cover only himself/herself and attach a list of all subcontractors who employed labor on the site during the period covered by the Periodic Estimate, together with the individual certifications of each.

---

## Certification of the Contractor or Duly Authorized Representative

According to the best of my knowledge and belief, I certify that all items and amounts shown on the other side of this form are correct; that all work has been performed and material supplied in full accordance with the items and conditions of the contract between the (name of owner) The Philadelphia Housing Authority (and contractor) The St. Paul Surety dated (mm/dd/yyyy) 04/00/00 , and duly authorized deviations, substitutions, alterations, and additions; that the following is a true and correct statement of the Contract Account up to and including the last day of the period covered by this estimate, and that no part of the "Balance Due This Payment" has been received.

1. Original Contract Amount .................................................................................................. $ 11,890,000

**Approved Change Orders:**
2. Additions (Total from Col. 3, form HUD-51002) ........... $ 228,877
3. Deductions (Total from Col. 5, form HUD-51002) ........ $ 83,060     (net) $ 145,817     $ 12,035,817
4. Current Adjusted Contract Amount (line 1 plus or minus net)

**Computation of Balance Due this Payment**
5. Value of Original Contract work completed to date (from other side of this form) ....... $ 11,890,000

**Completed Under Approved Change Orders**
6. Additions (from Col. 4, form HUD-51002) ................. $ 228,877
7. Deductions (from Col.5, form HUD-51002) ............... $ 83,060     (net) $ 145,817     $ 12,035,817
8. Total Value of Work in Place (line 5 plus or minus net line 7)
9. Less: Retainage, ____ 0 ____ % ........................ $ 0
10. Net amount earned to date (line 8 less line 9) ........................................................ $ 12,035,817
11. Less: Previously earned (line 10, last Periodic Estimate) ....................................... $ 11,918,877
12. Net amount due, work in place (line 10 less line 11) ........................................................ 116,940

**Value of Materials Properly Stored**
13. At close of this period (from form HUD-51004) ........ $ 0
14. Less: Allowed last period ...................................... $ 0
15. Increase (decrease) from amount allowed last period ... $ 0
16. **Balance Due This Payment** .................................................................................... $ 116,940

I further certify that all just and lawful bills against the undersigned and his/her subcontractors for labor, material, and equipment employed in the performance of this contract have been paid in full in accordance with the terms and conditions of this contract, and that the undersigned and his/her subcontractors have complied with, or that there is an honest dispute with respect to, the labor provisions of this contract.

| Name of Contractor | Signature of Authorized Representative | Title | Date (mm/dd/yyyy) |
|---|---|---|---|
| St. Paul Surety | | | |

---

**Certificate of Authorized Project Representative and of Contracting Officer**
Each of us certifies that he/she has checked and verified this Periodic Estimate No. 24 ; that to the best of his/her knowledge and belief it is a true statement of the value of work performed and material supplied by the contractor; that all work and material included in this estimate has been inspected by him/her or by his/her authorized assistants; and that such work has been performed or supplied in full accordance with the drawings and specifications, the terms and conditions of the contract, and duly authorized deviations, substitutions, alterations, and additions, all of which have been duly approved.
We, therefore, approve as the "Balance Due This Payment" the amount of $ 116,940

| Authorized Project Representative | Date (mm/dd/yyyy) | Contracting Officer | Date (mm/dd/yyyy) |
|---|---|---|---|
| | 8/14/03 | | 8/14/03 |

**Warning—** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

Previous editions are obsolete          ref. Handbooks 7417.1 & 7450.1          form HUD-51001 (3/92)

VOUCHER NO # 109548

Aug-14-2003  04:08pm  From-PHIL HOUSING                    +12155670726            T-951  P.004  F-083

Submit original and one copy to the Public Housing Agency.
Complete instructions are on the back of this form.

Public reporting burden for this collection of information is estimated to average 3.5 hour per response, including the time for reviewing instructions, searching
existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  This agency may not conduct
or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

This information is collected under the authority of Section 69 of the U.S. Housing Act of 1937 and HUD regulations.  HAs are responsible for contract
administration to ensure that the work for the project development is done in accordance with State laws and HUD requirements.  The contractor/subcontractor
reports provide details and summaries on payment, change orders, and schedule of materials stored for the project.  The information will be used to ensure
that the total development costs, identified in the ACC, are kept as low as possible and consistent with HUD construction requirements.
Response to the collection of information are required to obtain a benefit or to retain a benefit.  This information request does not lend itself to confidentiality.

| Name of Public Housing Agency | Periodic Estimate Number | Period | | Project Number |
|---|---|---|---|---|
| Philadelphia Housing Authority | 34 | FINAL | | 3 |
| Location of Project | | | | |
| Richard Allen Hope VI - B2 and B3 | | | | |

| Name of Contractor | | Contract Number |
|---|---|---|
| St. Paul Mercury Insurance Company | | 9569 |
| 5801 Smith Avenue - P.O. Box 1138 | | |
| Baltimore MD 21209-1138 | | |

| Item Number (1) | Description of Item (2) | | Completed to Date (3) |
|---|---|---|---|
| 1 | Bond | $ | 108,588 |
| 2 | Building Permit | $ | 150,395 |
| 3 | Start Up/Mobilization | $ | 100,000 |
| 4 | Security | $ | 288,000 |
| 5 | Project Supervision | $ | 165,017 |
| 6 | Management Office | $ | 74,940 |
| 7 | Building 41 | $ | 917,000 |
| 8 | Building 42 | $ | 1,056,000 |
| 9 | Building 43 | $ | 995,000 |
| 10 | Building 44 | $ | 825,000 |
| 11 | Building 45 | $ | 608,000 |
| 12 | Building 46 | $ | 827,000 |
| 13 | Landscape Quadrant B-3 | $ | 69,000 |
| 14 | Ornamental Fence | $ | 25,000 |
| 15 | Building 27 East | $ | 3,000,000 |
| 16 | Building 27 West | $ | 300,000 |
| 17 | Building 28 | $ | 600,000 |
| 18 | Building 29 | $ | 680,000 |
| 19 | Building 30 East | $ | 210,000 |
| 20 | Building 30 West | $ | 300,000 |
| 21 | Building 31 | $ | 605,000 |
| 22 | Building 32 | $ | 605,000 |
| 23 | Building 33 | $ | 705,000 |
| 24 | Building 34 | $ | 705,000 |
| 25 | Infill Units | $ | 700,000 |
| 26 | Landscape Quadrant B-2 | $ | 69,000 |
| 27 | Ornamental Fence B-2 | $ | 25,000 |
| 28 | Value of Original Contract  Completed | $ | 11,596,840 |
| 29 | Change Order No. 1 | $ | 30,768 |
| 30 | Change Order No. 2 | $ | 66,220 |
| 31 | Change Order No. 3 | $ | (28,363) |
| 32 | Change Order No. 4 | $ | (7,424) |

Submit original and one copy to the Public Housing Agency.

Complete instructions are on the back of this form.

Public reporting burden for this collection of information is estimated to average 9.5 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

This information is collected under the authority of Section 6(b) of the U.S. Housing Act of 1937 and HUD regulations. Has are responsible for contract administration to ensure that the work for the project development is done in accordance with State laws and HUD requirements. The contractor/subcontractor reports provide details and summaries on payment, change orders, and schedule of materials stored for the project. The information will be used to ensure that the total development costs, identified in the ACC, are kept as low as possible and consistent with HUD construction requirements. Response to the collection of information are required to obtain a benefit or to retain a benefit. This information request does not lend itself to confidentiality.

| Name of Public Housing Agency | Periodic Estimate Number | Period | | |
|---|---|---|---|---|
| Philadelphia Housing Authority | 34 | | FINAL | |
| Location of Project | | | | Project Number |
| Richard Allen Hope VI - B2 and B3 | | | | 3 |

| Name of Contractor | | Contract Number |
|---|---|---|
| St. Paul Mercury Insurance Company | | 9569 |
| 5601 Smith Avenue - P.O. Box 1138 | | |
| Baltimore MD 21203-1138 | | |

| Item Number (1) | Description of Item (2) | Completed to Date (3) |
|---|---|---|
| 32 | Change Order No. 5 | $ 11,407 |
| 33 | Change Order No. 6 | $ 705 |
| 34 | Change Order No. 7 | $ 20,592 |
| 35 | Change Order No. 8 | $ 26,060 |
| 36 | Change Order No. 9 | $ 33,720 |
| 37 | Change Order No. 10 | $ 16,212 |
| 38 | Change Order No. 11 | $ 116,940 |

Aug-14-2003 04:10pm  From-PHIL HOUSING                    +12155670726        T-951  P.006    F-083

## CERTIFICATE OF COMPLETION - CONSOLIDATED _____ PAGE 1

THIS IS TO CERTIFY THAT ALL WORK AND MATERIALS HAVE BEEN CAREFULLY INSPECTED BY DULY AUTHORIZED AGENTS OR REPRESENTATIVES OF THE **PHILADELPHIA HOUSING AUTHORITY**, HEREINAFTER **CALLED THE PUBLIC HOUSING AGENCY**, AND THAT, **THE ST. PAUL SURETY** HEREAFTER CALLED **THE CONTRACTOR**, HAS FURNISHED ALL LABOR, MATERIALS AND SERVICES REQUIRED FOR **CONSTRUCTION SERVICES** ACCORDING TO REQUIREMENTS AND THE SPECIFICATIONS AND DRAWINGS WITH CONTRACT # 9589  DATED 4/6/00  BETWEEN THE LOCAL PHILADELPHIA HOUSING AUTHORITY AND THE CONTRACTOR.

### THIS IS TO CERTIFY

1. THAT ALL WORK COVERED BY THIS CONTRACT, ORIGINALLY REQUIRED TO BE COMPLETED 10-6-99 WAS ACTUALLY COMPLETED  ON 12-30-00

2. THAT ALL CHANGES PERMITTED OR REQUIRED TO BE MADE, EXCEPT MINOR MODIFICATIONS AND FIELD ADJUSTMENTS, HAVE BEEN AUTHORIZED BY A WRITTEN AND DULY APPROVED CHANGE ORDER, AND ALL STOP ORDERS HAVE CONFIRMED AND LIFTED IN WRITING;

3. THAT ALL PROCEED ORDERS HAVE BEEN SUPPORTED BY APPROVED CHANGE ORDERS EQUITABLY ADJUSTING THE CONTRACT PRICE AND/OR TIME WHERE ADJUSTMENTS ARE INDICATED.

4. THAT CHANGE ORDERS # 1  THRU #11 CONSTITUTE THE ONLY AMENDMENT TO THE CONTRACT PRICE AND/OR TIME, AND THAT ALL CHANGE ORDERS ISSUED IN CONNECTION WITH THIS CONTRACT ARE LISTED ON THE ATTACHED SCHEDULE;

5. THAT ALL CERTIFICATES, BONDS, QUARANTEES, WARRANTIES INSURANCE AND TESTS REQUIRED UNDER THE CONTRACT HAVE BEEN FURNISHED OR PERFORMED

6. THAT THE PHA HAS OBTAINED FROM THE CONTRACTOR THE ATTACHED CERTIFICATE AND RELEASE, RELEASING THE PHA IN FULL FROM ALL FURTHER CLAIMS UNDER THIS CONTRACT;

7. THAT ALL LABORERS AND MECHANICS HAVE BEEN PAID NOT LESS THAN THE MINIMUM WAGE RATES AS ESTABLISHED IN SAID CONTRACT, AND THAT THERE HAVE BEEN NO CLAIMS MADE FOR INFRINGEMENT OF ANY PATENT;

8. THAT NO CLAIMS OF ANY NATURE BY ANY LABORER, MECHANIC, SUBCONTRACTOR, MATERIAL MAN, OR VENDOR ARE OUTSTANDING AGAINST THE PHA; AND

## CERTIFICATE OF COMPLETION - CONSOLIDATED _____ PAGE II

9.  THAT;

DATE FOR COMPLETION FIXED IN CONTRACT: 10/6/99
DATE FOR COMPLETION AS EXTENDED: 10/30/00
ACTUAL COMPLETION DATE OF CONTRACT WORK:  11/30/00

ORIGINAL CONTRACT AMOUNT: $11,890,000.00
AUTHORIZED ADDITIONS : $228,877.00
SUBTOTAL : $12,118,877.00
AUTHORIZED DEDUCTIONS EXCLUDING LIQUIDATED DAMAGES: $83,060
ADJUSTED CONTRACT PRICE: $12,035,817.00
 LESS PAYMENTS TO CONTRACTOR: $11,918,877.00

TOTAL AMOUNT OF LIQUIDATED DAMAGES ASSESSED: 0

BALANCED DUE: $116,940.00
AND

10.  THAT VOUCHER FOR FINAL PAYMENT IN THE AMOUNT OF: $116,940.00

CONCURRED IN:

THE PHILADELPHIA HOUSING AUTHORITY

BY: _____          BY: _____
    CONTRACTING OFFICER                     PROJECT REPRESENTATIVE:

DATE:___8-14.03___                       DATE:__8/14/03__

Aug-14-2003  04:11pm   From-PHIL HOUSING                    +12155670726              T-951  P.008  F-093



**PHILADELPHIA HOUSING AUTHORITY**

DEPARTMENT OF CONTRACT ADMINISTRATION                                 Carl R. Green
12 South 23rd Street, 5th Floor                                       Executive Director
Philadelphia, Pennsylvania 19103
Phone:  215-684-4034
Fax:    215-576-0726

# MEMORANDUM

**TO:**      **Isaac Simpkins**, Director, Office of Wage & Labor Standards
             City of Philadelphia. Fax No. 686-2116

**FROM:**    Len Trower, Construction Contract Coordinator, Fax:576-0726, Offc: 684-4034
             Philadelphia Housing Authority

**SUBJECT:** Certification of Contractor's Prevailing Wage Compliance
             Contract No. 9589              Purchase Order No.: <u>Various</u>
**Title: General Construction @ Richard Allen – Hope VI**
**Vendor: The St. Paul Surety**
**DATE: 8-13-03**

**COPIES**     File: 9589

---

The contract listed above has now been completed and application has been made for final payment. It is requested that you conduct a final review of the contractor's compliance and acknowledge that compliance by signing the statement below. When completed, please return a signed copy of this memorandum to me. My fax number is 215 – 576-0726.

The City of Philadelphia's Labor Standards Unit certifies that the above named contractor, and its sub-contractors have been found in full compliance with the terms and conditions of the prevailing wage payment on this contract. All field complaints have been remedied (if any), and there are no outstanding legal prevailing wage violations.

                                                          8-13-03
                                                          Date

Isaac Simpkins
Director, Office of Wage Compliance & Labor Standards

                    *See attach.*

Aug-14-2003 04:11pm  From-PHIL HOUSING                    +12155670726        T-951  P.008  F-083



OFFICE OF THE MAYOR



## CITY OF PHILADELPHIA

JOHN F. STREET
MAYOR

LABOR STANDARDS UNIT
MUNICIPAL SERVICES BUILDING
1401 J.F.K. BLVD., 6TH FLOOR
PHILADELPHIA, PA 19102-1670
FAX (215) 686-2116

## MEMORANDUM

**TO:**       Len Trower
              Construction Contract Coordinator, PHA

**FROM:**     Isaac Simpkins
              Acting Director, PLSU

**DATE:**     August 13, 2003

**RE:**       General Construction @ Richard Allen-Hope IV – PHA Contract # 9589

Since we have no apparent wage compliance issue with this contract, Philadelphia Labor
Standard Unit will sign off on this contract, per you request.

Thank you.

DATE: 8/12/03
PAGE 1 OF 2

## CERTIFICATE AND RELEASE

FROM: The St. Paul Surety
(Name of contractor)

TO: THE PHILADELPHIA HOUSING AUTHORITY
(Name of owner)

REFERENCE: CONTRACT NO. 9589 ENTERED INTO THE 4/6/00 DAY

OF April , 20 00. BETWEEN THE PHILADELPHIA HOUSING AUTHORITY
(Name of owner)

OF PHILADELPHIA                    PENNSYLVANIA
(City)                             (State)

HEREINAFTER CALLED THE PUBLIC HOUSING AGENCY (PHA).

AND The St. Paul Surety
(Name of contractor)

OF Baltimore                        MD
(City)                              (State)

HEREINAFTER CALLED THE CONTRACTOR

FOR THE Construction
(Type of construction)

OF Richard Allen-Hope III PROJECT NO.
(Name of project)

LOCATED IN Phila.                    PA
(City)                               (State)

### KNOW ALL MEN BY THESE PRESENTS:

1. The undersigned hereby certifies that there is due and payable under the contract and duly approved Change Orders and modifications the undisputed balance of $ 116,940

2. The undersigned further certifies that in addition to the amount set forth in paragraph 1 hereof there are outstanding and unsettled the following items which he claims are just and due and owing by the PHA to the contractor:

(a) _____
(b) _____
(c) _____
(Itemize claims and amounts claimed. If none, so state.)

3. The undersigned further certifies that all work required under this contract including work required under Change Orders numbered 1 — 11 has been performed in accordance with the terms thereof, and that there are no claims of laborers or mechanics for unpaid wages arising out of the performance of this contract, and that the wage rates paid by the Contractor and all Subcontractors were in conformity with the contract provisions relating to said wage rates.

4. Except for the amounts stated in paragraph 1 and 2 hereof the undersigned has received from the PHA all sums of money payable to the undersigned under or pursuant to the aforementioned contract or any change or modification thereof.

5. That in consideration of the payment of the amount stated in pargraph 1 hereof the undersigned does hereby release the PHA from any and all claims arising under or by virtue of this contract except the amounts listed in paragraph 2 hereof; provided, however, that if for any reason the PHA does not pay in full the amount stated in paragraph 1 hereof, said deduction shall not affect the validity of this release, but the amount so deducted shall be automatically included under paragraph 2 as an amount which the Contractor has not released but will release upon payment thereof. The Contractor further certifies that upon payment of the amounts listed in paragraph 2 hereof, and of any amount which may be deducted from paragraph 1 hereof, he will release the PHA from any and all claims of any nature whatsoever arising out of said contract or modification thereof, and will execute such further releases or assurances as the PHA may request.

IN WITNESS WHEREOF, the undersigned has signed and sealed this instrument this _____ day

of _____, 20 ___ .

                                                                                    (SEAL)

                    _____
                              (Name of Contractor)

                    _____
                         (Signature and Title of Officer)

being first duly sworn on oath, deposes and says, first, his is the _____ of the

_____ , second, that he has read the foregoing Certificate and Release by him

subscribed as _____ of the _____ .

Affiant further states that the matters and things stated therein are, to the best of his knowledge and belief, true.

                    _____
                              ( Signature of Affiant)

Subscribed and sworn to before me this _____ day of _____ 20_____ .

                    _____
                                 ( Notary)

My commission expires_____ .
                              (Date)

Aug-14-2003 04:12pm From-PHIL HOUSING        +12155670726       T-951  P.012  F-083
04/25/2000 ...                                                            P.2/3

## Contract Modification

Contract Number: _____9589_____  Change Order Number: ____11____  Date: December 11, 2000
Contractor Name: __Saint Paul Mercury Insurance Company__
Address: __5801 Centennial Way, Baltimore, MD 21209__
Site Name: __Richard Allen - Hope VI__            Project Architect: __Wallace Roberts & Todd__
THE FOLLOWING CHANGES ARE MADE TO THE CONTRACT DOCUMENTS

### A. ADJUSTMENT IN CONTRACT PRICE:

(1) Original Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,890,000.00
(2) Net Change By Previous Contract Modification: . . . . . . . . . . . . . . . . . . . . . . . . . $228,876.00
(3) Contract Amount Prior To This Contract Modification: . . . . . . . . . . . . . . . . . . . . $12,118,876.00
(4) Contract Will Be Decreased . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ($83,060.00)
(5) New Contract Amount: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $12,035,816.00

### B. ADJUSTMENTS IN CONTRACT TIME:      In accordance with the takeover Agreement dated 4/8/00.

(1) The Contract Time from Addendum 1 Page E-3, #2 in the Agreement · 632 days 1/12/98
(2) Net change in Contract Time by previous Contract Modification(s): 390 days
(3) Contract Time prior to this Contract Modification: 1022 days
(4) Net Increase in contract Time by this Contract Modification: 0 days
(5) New Contract Time of Completion: 1022 days 10/30/00
(6) The Work will be substantially complete on or before: 1022 days 10/30/00
(7) The work will be completed and ready for final payment on or before:

C. This CHANGE ORDER incorporates Change Authorization Number ____11____ Dated: ____12/11/00____

D. OTHER ADJUSTMENTS IN CONTRACT PRICE OR CONTRACT TIME - Adjustments for separable parts of the work referenced in paragraph _____ of the Agreement are detailed in the following documents:

E. WORK SEQUENCING CONDITIONS - The contractor shall complete the work changed and affected by this Contract Modification on or before __12/11/00__, in accordance with the progress schedule.

F. Only the Contracting Officer may execute a Contract Modification on behalf of the Authority.

G. This modification and all work affected thereby is subject to all contract terms, conditions and covenants.

H. RECOMMENDED:                          APPROVED:

_____    _____    _____    _____
By the Architect           Date        By PHA                      Date

I. CERTIFICATION, ACCEPTANCE & WAIVER OF FUTURE CLAIMS BY THE CONTRACTOR:
This is to certify to the best of my knowledge and belief that the cost and pricing data described in page 2 of this Contract Modification ("CM") entitled " Contractors Proposal for Adjustment" is complete and accurate as of __12/11__, 2000 and that a financial management capability exists to account fully and accurately for the financial transactions under this Contract. I further certify that I understand the Contract Price may be subject to downward re-negotiation where the above cost and pricing data have been determined, as a result of audit, not to have been complete, current and accurate as of the above data. The undersigned Contractor also acknowledges and agrees that the adjustment in Contract Price and Contract Time stipulated in this CM represents full compensation for all increases or decreases in the cost or the time required to perform the entire work under the contract arising from this CM. Acceptance of this waiver by the contractor provides for an all inclusive settlement for all changes, any delay, and all costs, and represents a waiver of any and all rights to file a claim on account of this CM.

St. Paul                                  _____    12/11/00
_____                   Signature                  Date
By the Contractor - Print Name

DEC 11 2000 12:25                    215 684 6653        PAGE.02

Aug-14-2003  04:13pm   From-PHIL HOUSING                    +12155670726      T-951   P.013   F-083

## Contract Modification

**DISTRIBUTION:** Contractor, Finance, Wage Compliance, Mod Coordinator, HOPE VI, Capital Projects, Contract File

**DESCRIPTION OF CHANGE:**

This modification is for a credit for work deleted from the contract scope. Management office renovations stopped due to the default of the General Contractor for construction. Due to the construction delay, PHA deleted the balance of the renovations from the contract scope. The credit is the balance left on the approved schedule of values.

The credit of $83,060.00 is considered fair and reasonable according to the approved schedule of values.

| AUTHORIZED CONTRACTOR REPRESENTATIVE (Typed/Printed): | SIGNATURE: | DATE: |
|---|---|---|
| Christine T. Alexander | | 12/11/00 |

## CERTIFICATE OF SERVICE

I certify that on this 12th day of September, 2003, I did cause to be served a true and correct copy of the foregoing Response of Defendant Philadelphia Housing Authority to Plaintiff St. Paul's Motion to Preclude Testimony of Certain Expert Witnesses by facsimile (without exhibits) and  Federal Express (with exhibits), upon counsel of record as follows:

        Paul F. Strain, Esquire
        James A. Dunbar, Esquire
        Venable, LLP
        210 Allegheny Avenue
        P.O. Box 5517
        Towson, Maryland 21204

                        _____
                        DANIEL E. RHYNHART

100847.00610/11249384v1